UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE STATE OF NEW YORK and THE CITY
OF NEW YORK,

                            Plaintiffs,                   15 Civ. 1136 (KBF)

                -v-                                       **ECF CASE**

UNITED PARCEL SERVICE, INC.,

                            Defendant.

**DEFENDANT UNITED PARCEL SERVICE INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Mark David McPherson
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone:  (212) 468-8000
MMcPherson@mofo.com

Paul T. Friedman (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:  (415) 268-7000
PFriedman@mofo.com

Gregory B. Koltun (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone:  (213) 892-5200
GKoltun@mofo.com

*Attorneys for Defendant*
United Parcel Service, Inc

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

ALLEGATIONS OF THE AMENDED COMPLAINT ..................................................... 3

STANDARD FOR DISMISSAL........................................................................................ 5

ARGUMENT ..................................................................................................................... 6

I.      ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY FAIL TO PLEAD
        THAT UPS DELIVERED CIGARETTES......................................................... 6

II.     ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY FAIL TO PLEAD
        THAT UPS *KNOWINGLY* DELIVERED CIGARETTES.................................. 9

        A.      Each of Plaintiffs' Claims Requires a Sufficient Allegation that UPS
                *Knowingly* Delivered Cigarettes. ........................................................ 10

        B.      Plaintiffs' Allegations of UPS's Knowledge Are Insufficient............................ 11

                1.      Plaintiffs Fail To Allege Actual Knowledge. ......................................... 12

                2.      Plaintiffs' Allegations Based on The Nature Of "Indian Smoke
                        Shops" Are Insufficient................................................................... 14

        C.      Plaintiffs' Failure to Allege Facts Supporting Knowing Delivery of
                Cigarettes Compels the Dismissal of All of Their Claims................................ 16

III.    PLAINTIFFS' CLAIMS UNDER THE PACT ACT FAIL FOR ADDITIONAL,
        INDEPENDENT REASONS............................................................................... 17

        A.      The PACT Act Expressly Exempts UPS from Its Requirements. ...................... 17

        B.      Plaintiffs Do Not Adequately Allege Any Violation of the AOD, a
                Prerequisite for Any Claim Under the PACT Act. ............................................. 18

IV.     PLAINTIFFS' CLAIMS UNDER N.Y. PHL § 1399-*ll* FAIL FOR
        ADDITIONAL, INDEPENDENT REASONS............................................................... 19

        A.      The PACT Act Exempts UPS from N.Y. PHL § 1399-*ll*'s Requirements. ......... 20

        B.      Plaintiffs Lack Standing to Enforce N.Y. PHL § 1399-*ll* Against UPS for
                the Vast Majority of the Time Period at Issue in the Amended Complaint......... 20

        C.      Executive Law 63(12) Did Not Give the Attorney General Standing to
                Pursue Civil Penalties Under § 1399-*ll* Before September 27, 2013.................. 22

V.      PLAINTIFFS' CLAIMS UNDER THE CCTA FAIL FOR AN ADDITIONAL,
        INDEPENDENT REASON................................................................................. 23

CONCLUSION.................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Arista Records LLC v. Lime Grp. LLC,*
532 F. Supp. 2d 556 (S.D.N.Y. 2007)................................................................5, 6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................................6, 9

*BL Rest. Operations, LLC v. 701 Am., Inc.,*
No. 11 Civ. 6285 (KBF), 2012 WL 463826 (S.D.N.Y. Feb. 14, 2012)............................16, 17

*BWP Media USA, Inc. v. Gossip Cop Media, LLC,*
No. 13 Civ. 7574 (KPF), 2015 WL 321863 (S.D.N.Y. Jan. 26, 2015)...................8

*City of New York v. FedEx Ground Package Sys., Inc.,*
No. 13 Civ. 9173 (ER), 2015 WL 1013386 (S.D.N.Y. Mar. 9, 2015)..............................21, 24

*City of New York v. Gordon,*
1 F. Supp. 3d 94 (S.D.N.Y. 2013) ...................................................................10, 24

*City of New York v. Lasership,*
33 F. Supp. 3d 303 (S.D.N.Y. 2013)....................................................................24

*Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991)......................................................................................8

*DiFolco v. MSNBC Cable L.L.C.,*
622 F.3d 104 (2d Cir. 2010).................................................................................13

*Faulkner v. Beer,*
463 F.3d 130 (2d Cir. 2006)....................................................................................8

*Fudge v. Penthouse Int'l, Ltd.,*
840 F.2d 1012 (1st Cir. 1988)..................................................................................8

*Gold v. New York Life Ins. Co.,*
730 F.3d 137 (2d Cir. 2013)..................................................................................21

*Gordon v. Holder,*
632 F.3d 722 (D.C. Cir. 2011) ................................................................................8

ny-1187384

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009)..................................................................................6

*In re GLG Life Tech Corp. Secs. Litig.*,
    No. 11 Civ. 9150, 2014 WL 464762 (S.D.N.Y. Feb. 3, 2014) ...............................6

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
    91 N.Y.2d 577, 696 N.E.2d 978 (1998)................................................................21

*Nichols v. Mahoney*,
    608 F. Supp. 2d 526 (S.D.N.Y. 2009)...................................................................17

*Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories*,
    No. 07 Civ. 6959 (DAB), 2010 WL 4968072 (S.D.N.Y. Dec. 6, 2010) ................16

*Red Earth LLC v. United States*,
    657 F.3d 138 (2d Cir. 2011)..................................................................................8

*State by Abrams v. Solil Mgmt.Corp.*,
    128 Misc. 2d 767, 491 N.Y.S.2d 243 (Sup. Ct., New York County 1985),
    *aff'd*, 495 N.Y.S.2d 161 (1985) ..........................................................................22

*State of New York v. BB's Corner, Inc.*,
    No. 12 Civ. 1828 (KBF), 2012 WL 2402624 (S.D.N.Y. June 25, 2012) ...............24

*United States v. Khan*,
    771 F.3d 367 (7th Cir. 2014) ................................................................................24

*United States v. Morrison*,
    596 F. Supp. 2d 661 (E.D.N.Y. 2009)....................................................................24

*United States v. Wamiq*,
    No. 12-CR-88, 2013 WL 3773377 (E.D. Wis. July 17, 2013) ..............................24

*Valenti v. Penn Mut. Life Ins. Co.*,
    850 F. Supp. 2d 445 (S.D.N.Y. 2012).....................................................................10

*Ward v. New York*,
    291 F. Supp. 2d 188 (W.D.N.Y. 2003) ..................................................................11

**STATUTES AND RULES**

15 U.S.C. § 375.............................................................................................................5

15 U.S.C. § 376a.........................................................................................10, 11, 17, 20

15 U.S.C. § 377............................................................................................................17

18 U.S.C. § 1961 ...................................................................................................5

18 U.S.C. § 2341 ................................................................................................5, 23

18 U.S.C. § 2342 ................................................................................................10

49 U.S.C. § 14101(a) ........................................................................................16

2013 New York Session Laws Ch. 342 ............................................................20

New York Executive Law § 63(12) ..................................................................22

New York Public Health Law § 1399-*ll* ...........................................*passim*

N.Y. Stat. Law § 52 (McKinney) .....................................................................21

N.Y. Tax L. § 470 ...............................................................................................9

## OTHER AUTHORITIES

N.Y. Bill Jacket 2013, ch. 342 .........................................................................21

*Once Upon a Budget…*, The Times-Union, June 22, 2010 ............................14

*Smoke Shops More Exotic As Cigarette Sales Wane*,
    Rochester Democrat & Chron., Dec. 30, 2010 .........................................14

"UPS Joins Effort To Reduce Youth Smoking", *available at* http://www.ag.ny.gov/press-release/ups-joins-effort-reduce-youth-smoking (last visited May 20, 2015)............................1

iv

Defendant United Parcel Service of America, Inc. ("UPS") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' Amended Complaint, dated May 1, 2015 (the "Amended Complaint" or "Am. Compl."), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This lawsuit is an abrupt break from the long-standing cooperation between UPS and the City and State to curtail unlawful shipments of cigarettes. When UPS agreed to stop delivering cigarettes to consumers nationwide in 2005—a policy that went beyond the requirements of federal and New York law at the time—the Attorney General commended UPS:

> I commend UPS for cooperating with us in this initiative. The Internet has become a haven for illegal cigarette traffickers, and this agreement eliminates one more avenue through which these criminal enterprises had been shipping their products throughout the country … This initiative is an excellent example of law enforcement and private industry working together to stop illegal transactions from occurring, and I welcome UPS's participation in this effort.[1]

Since then, UPS has continued to work with the Attorney General's Office to identify shippers who violate UPS's policy prohibiting the shipment of cigarettes to consumers, and to terminate service to those shippers. Indeed, the very records on which plaintiffs base their allegations in this case came from UPS. UPS provided plaintiffs with those records as part of its effort not only to investigate shippers that the City and State identified as potential violators, but to proactively search for and root out other shippers that may be violating UPS policy. Now, however, instead of continuing to work with UPS in curtailing unlawful activity by third parties (independent shippers), the City and State seek substantial monetary damages and civil penalties

---

[1] *See* "UPS Joins Effort To Reduce Youth Smoking", *available at* http://www.ag.ny.gov/press-release/ups-joins-effort-reduce-youth-smoking (last visited May 20, 2015).

in an effort to hold UPS accountable for the alleged wrongdoing of its customers.

They have no legal or factual basis to do so. Every claim in the Amended Complaint rests on allegations that UPS delivered unstamped cigarettes to consumers and that UPS knew it was doing so. But plaintiffs fail to plead any facts to support these conclusory allegations. Instead, plaintiffs rely on allegations that the shippers at issue all sell untaxed cigarettes and that UPS knew or should have known that they sold such cigarettes. From those generalizations, plaintiffs draw the unsupported conclusions that UPS's deliveries for those shippers must have contained untaxed cigarettes and that UPS knew that they contained untaxed cigarettes.

The flaw in plaintiffs' logic is obvious even from their own pleading, which makes clear that the shippers at issue all ship products that may lawfully be delivered to consumers in New York—such as cigars and "little cigars"—as is evident, for example, from photographs plaintiffs include in their Amended Complaint. Because these shippers sell lawful products, plaintiffs have no factual basis to support their guesses that the packages UPS delivered for these shippers contained unstamped cigarettes, and that UPS knew as much. Indeed, out of the more than 78,000 packages plaintiffs claim UPS delivered for these shippers, plaintiffs allege facts concerning the contents of only one—a package that was marked as containing cigars but actually contained cigarettes. Moreover, plaintiffs do not contest that UPS fulfilled its obligations under its 2005 agreement with the Attorney General by: maintaining a policy prohibiting the delivery of cigarettes to consumers; identifying shippers of tobacco products and notifying shippers of that policy; terminating services to shippers who violate that policy; and training its employees to comply with that policy. Those acknowledged facts also undermine plaintiffs' conclusory allegations about UPS's knowing delivery of cigarettes.

At bottom, plaintiffs contend that "Indian smoke shops" are criminal enterprises that sell

ny-1187384

untaxed cigarettes to New York consumers. But that is not sufficient to state a claim against UPS for knowingly delivering cigarettes for the shippers identified in the Amended Complaint. There is no legal bar against carriers providing service to these shippers for the lawful products that they sell, and plaintiffs allege no facts to support the conclusion that UPS knowingly delivered anything other than lawful products. Because plaintiffs cannot allege facts supporting a plausible inference that UPS knowingly shipped cigarettes, the predicate for each of their claims, they cannot state a claim against UPS.

For these reasons, as well as additional defects in each claim, the Amended Complaint should be dismissed in its entirety. While UPS remains eager to continue its cooperation with regulators to curtail unlawful conduct by shippers, plaintiffs cannot identify any factual or legal basis for holding UPS—as opposed to the shippers themselves—liable for the shippers' activity.

## ALLEGATIONS OF THE AMENDED COMPLAINT[2]

UPS is a package delivery company. ¶ 1.[3] In October 2005, UPS made a business decision to adopt a nationwide policy prohibiting the shipment of cigarettes (whether stamped or unstamped) to consumers.[4] UPS and the Attorney General also entered into an Assurance of Discontinuance ("AOD") regarding UPS's transportation of cigarettes. ¶ 28. UPS agreed to maintain its nationwide policy and to follow strict procedures to notify its customers concerning the new ban on cigarette shipments: UPS was required to post the policy on its website, identify

---

[2] This Statement of Facts is culled from the allegations in plaintiffs' Amended Complaint, which are accepted as true solely for the purposes of the present motion to dismiss. UPS reserves its right to dispute any of the facts alleged in the Complaint.

[3] Unless otherwise noted, references to paragraph numbers are to the paragraphs of the Amended Complaint.

[4] *See* October 21, 2005 Assurance of Discontinuance, *available at* http://www.ag.ny.gov/sites/default/files/press-releases/archived/9tiupsaodfinal.oct.pdf (last visited May 20, 2015), cited in the Amended Complaint at 9 n.7 and attached as Exhibit 1 to the Declaration of Mark David McPherson, dated May 22, 2015 (the "McPherson Decl.").

likely tobacco shippers, and notify them about the new policy. *Id*. And UPS agreed to a host of other compliance measures, such as a detailed training program for UPS account executives, drivers, pre-loaders, and other employees. *Id*. The Attorney General, as well as UPS, agreed to cooperate concerning alleged violators of UPS policy: the AOD sets out a detailed procedure for the AG to notify UPS of potential violators, for UPS to investigate such shippers, and for UPS to terminate confirmed violators of its policy. *Id*.

The State and City impose excise taxes on cigarettes, which they allege must be paid before the sale of cigarettes to consumers. ¶¶ 12-13. Under New York law, "stamping agents" must purchase and affix tax stamps on all cigarettes sold to consumers in New York. ¶¶ 13-15.

Plaintiffs allege that UPS knowingly delivered unstamped cigarettes for twelve shippers they identify as alleged cigarette retailers: Post Smokes, Indian Smokes, AJ's Cigar, Seneca Cigars, Lake Erie Tobacco Co., Cloud & Co., EExpress, Smokes & Spirits, Shipping Services, Big Buffalo, Two Pine Enterprises, and FOW Enterprises. ¶¶ 31-32. The Amended Complaint contains pictures of some of these shippers' business locations that show they sell other tobacco products in addition to cigarettes. ¶¶ 44-46; *see also* ¶ 31(d) (referring to package marked "Seneca Cigars").

Based on UPS's records, plaintiffs allege that UPS delivered more than 78,000 packages for those shippers since 2010. Of those 78,000 deliveries, plaintiffs allege facts that only a single package contained cigarettes. Plaintiffs allege that in June 2012, an undercover investigator at the Office of the New York City Sheriff placed an order over the Internet for cigarettes sold by "Seneca Cigarettes," located on the Seneca Indian Nation reservation. ¶ 31(d). Plaintiffs allege that UPS delivered the package, though they concede that the package UPS delivered was

labeled "Seneca Cigars," and did not bear any indicia that the package contained cigarettes, as opposed to cigars. *Id*.

As to all other alleged deliveries, plaintiffs speculate that "[m]ost, if not all of the packages contained unstamped cigarettes." ¶ 33. Plaintiffs base this speculation on allegations that the shippers named in the Amended Complaint are engaged in tax evasion schemes regarding cigarette sales. Plaintiffs assert that "the most common and most longstanding form of tax evasion has been the sale of cigarettes by Indian reservation retailers to non-tribal members." ¶ 19. Plaintiffs then allege that the shippers for which UPS is accused of delivering cigarettes were "situated on Indian reservations throughout New York State," ¶ 30, and that "[s]moke shops on New York State Indian reservations … have sold hundreds of thousands of cartons [of cigarettes] via mail order, phone, fax, and the Internet, and shipped such unstamped cigarettes to consumers across the nation," ¶ 23.

Plaintiffs purport to assert claims under the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq*. ("CCTA") (Claims 1-2); the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO"), based on alleged violations of the CCTA as the only identified predicate act (Claims 3-6); the Prevent All Cigarette Trafficking Act, 15 U.S.C. § 375 *et seq*. ("PACT Act") (Claims 7-10); and New York Public Health Law § 1399-*ll* (Claims 11-12, with the State also invoking New York Executive Law § 63(12) in Claim 12). In addition, the State (but not the City) purports to assert a claim under the AOD (Claim 13). Plaintiffs also assert a claim for "Injunctive Relief and Appointment of a Monitor" (Claim 14).

## STANDARD FOR DISMISSAL

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead factual allegations sufficient "to state a claim to relief that is plausible on its face."

ny-1187384

*Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, where a plaintiff fails to plead facts that "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

While the court must accept as true all well-pleaded factual allegations, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009), a complaint must offer more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted). Dismissal is appropriate if a complaint offers only "'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678, or "[i]f the court can infer no more than 'the mere possibility of misconduct' from the factual averments." *In re GLG Life Tech Corp. Secs. Litig.*, No. 11 Civ. 9150, 2014 WL 464762, *3 (S.D.N.Y. Feb. 3, 2014) (internal citations omitted).

<u>**ARGUMENT**</u>

**I.      ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY FAIL TO PLEAD THAT UPS DELIVERED CIGARETTES.**

Every claim alleged in the Amended Complaint rests on the premise that UPS delivered cigarettes to unauthorized recipients.[5] The claims under the CCTA and RICO require that the

---

[5] *See, e.g.*, ¶¶ 90, 93, 99, 106, 113-15, 122-24, 130, 136, 142, 148, 153, 157, 163, 166.

cigarettes UPS allegedly delivered were unstamped, as well.[6] Yet plaintiffs allege no facts supporting their speculation that UPS delivered cigarettes or unstamped cigarettes *at all*. As a result, every claim fails and must be dismissed.

At most, plaintiffs plead facts—based on documents that UPS provided—supporting that UPS made more than 78,000 deliveries for shippers identified in the Amended Complaint. But plaintiffs do not (and cannot) allege that the records on which plaintiffs base all of their claims reveal anything about the contents of the packages delivered. Plaintiffs simply assume, without any foundation, that "[m]ost, if not all of the packages contained unstamped cigarettes." ¶ 33.

Plaintiffs base their assumption on allegations concerning sales of unstamped cigarettes from Indian reservations, but lack any facts to support a reasonable inference that UPS shipped cigarettes—as opposed to other products—for the shippers at issue. Plaintiffs allege that "[s]moke shops on New York State Indian reservations … have sold hundreds of thousands of cartons [of cigarettes] via mail order, phone, fax, and the Internet, and shipped such unstamped cigarettes to consumers across the nation," ¶ 23. They then allege that the shippers at issue are "smoke shops situated on Indian reservations throughout New York State." ¶ 30.

The fatal flaw in plaintiffs' construct is that they fail to allege any facts supporting that UPS actually *delivered cigarettes* for smoke shops on New York State Indian reservations. At most, their theory is that because the only cigarettes sold by Indian smoke shops are unstamped cigarettes, a carrier that delivers cigarettes sold by such smoke shops must know that the cigarettes are unstamped. But that theory has no relevance absent facts sufficient to establish that a carrier actually delivers cigarettes from these smoke shops.

There are no such facts alleged. Although plaintiffs refer to "smoke shops [that] deal

---

[6] *See, e.g.*, ¶¶ 37-39, 57.

exclusively in unstamped cigarettes," that full sentence alleges that the only *cigarettes* that the smoke shops sold are unstamped cigarettes, not that unstamped cigarettes are the only *products* these shippers sold. ¶ 40. This is a crucial difference, as plaintiffs fail to supply the requisite fact necessary to support their theory—that the packages UPS delivered contained cigarettes.

Plaintiffs cannot truthfully allege that the only product the shippers at issue sold were cigarettes, as their own sources concede. The very cases plaintiffs cite to describe the shippers at issue establish that the shippers sell products other than cigarettes. *See, e.g.*, ¶ 20 (citing *Red Earth LLC v. United States*, 657 F.3d 138, 142 (2d Cir. 2011) ("Red Earth and other SFTA members, as Native American retailers operating in Indian country, can purchase cigarettes and other tobacco products free of state and local excise taxes.") (citations omitted)); ¶ 23 (citing *Gordon v. Holder*, 632 F.3d 722, 723 (D.C. Cir. 2011) ("Plaintiff-Appellant Robert Gordon is a Seneca Indian and a delivery seller of tobacco products.")). The photographs of shippers' stores that plaintiffs include in the Amended Complaint show that they ship cigars and other tobacco products, in addition to cigarettes. ¶¶ 44-46. And the shippers' internet sites, which plaintiffs reference in the Amended Complaint (*see* ¶¶ 18, 23-24, 27, 28(c), 31(d)), also establish that the shippers sold cigars and other tobacco products, in addition to cigarettes.[7] Included among the other tobacco products shippers sell are "little cigars," which are similar in size and appearance

---

[7] Attached to this motion are excerpts from shippers' websites, showing that they sold products other than cigarettes. *See* Exhibit A to the Declaration of Christopher Butler, dated May 20, 2015, attached as Exhibit 2 to the McPherson Decl. The Court may consider this material on this motion because (1) plaintiffs have actual notice of the material — they refer to shippers' sales via  internet sites in their Amended Complaint, *see, e.g.*, ¶¶ 18, 23-24, 27, 28(c), 31(d); (2) there is no dispute as to the authenticity of the material, and (3) plaintiffs will not suffer prejudice from the lack of opportunity to submit additional evidentiary materials. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). For those reasons, courts have permitted various forms of media, including the content of a website that was central to the issues in the complaint. *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, No. 13 Civ. 7574 (KPF), 2015 WL 321863, at *3 (S.D.N.Y. Jan. 26, 2015); *see also Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014-15 (1st Cir. 1988) (permitting the introduction of a magazine article).

to cigarettes, but are not considered cigarettes under New York law because they are wrapped in tobacco, *see* N.Y. Tax L. § 470 (defining "cigarette" as "Any roll for smoking made wholly or in part of tobacco or of any other substance wrapped in paper or in any other substance not containing tobacco.").

These shippers' sale of products other than cigarettes prevents plaintiffs from offering any factual support for their conclusory allegation that UPS delivered cigarettes for these shippers, which is essential to every claim in the Amended Complaint. Plaintiffs fall short of offering any facts supporting the conclusion that the packages all contained cigarettes, as opposed to the other tobacco products the shippers sold. With no plausible allegation that the 78,000 deliveries UPS has allegedly made for these shippers contained cigarettes, there is no basis whatsoever to infer that UPS shipped cigarettes at all, whether stamped or not.[8] Because plaintiffs fail to plead any facts that "nudge[] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## II. ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY FAIL TO PLEAD THAT UPS *KNOWINGLY* DELIVERED CIGARETTES.

Even if plaintiffs could allege that UPS delivered packages containing cigarettes (or unstamped cigarettes for the CCTA and RICO claims), plaintiffs fail to allege facts supporting more than the "sheer possibility" that UPS *knew* the shipments contained unstamped cigarettes—an element of each of their claims.

---

[8] Plaintiffs do allege that a single package out of the more than 78,000 packages UPS allegedly delivered contained cigarettes. They allege that in June 2012, an undercover investigator placed an order for cigarettes sold by "Seneca Cigarettes." ¶ 31(d). They allege that UPS delivered the package, though they concede that the package UPS delivered was labeled "Seneca Cigars," and did not bear any indicia that the package contained cigarettes, as opposed to cigars. *Id*. Aside from that lone package, plaintiffs do not allege that cigarettes were contained in any of the other 78,000 deliveries UPS allegedly made for the shippers they identify.

9

A.    **Each of Plaintiffs' Claims Requires a Sufficient Allegation that UPS *Knowingly* Delivered Cigarettes.**

Every claim in the Amended Complaint requires proof that UPS knowingly delivered cigarettes or unstamped cigarettes.

**CCTA**. The CCTA provides that "[i]t shall be unlawful for any person *knowingly* to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a) (emphasis added); *see City of New York v. Gordon*, 1 F. Supp. 3d 94, 106 (S.D.N.Y. 2013) ("[CCTA] permits both the knowing transport of legal cigarettes and the unintentional transport of contraband cigarettes, and prohibits only the knowing transport of contraband cigarettes.").

**RICO.** Plaintiffs' claims under RICO's substantive provision, 18 U.S.C. § 1962(c), allege that UPS committed predicate acts constituting a pattern of racketeering activity through multiple violations of the CCTA. ¶¶ 50-55. Because these claims are based on the CCTA, the same requirement of knowing transportation applies. Knowledge also is required for plaintiffs' claims of a RICO conspiracy under 18 U.S.C. § 1962(d), which requires plaintiffs to allege "as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; (3) that the co-conspirator *knowingly* participated in the same." *Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2012) (emphasis added) (citations and internal quotation marks omitted).

**PACT Act.** The PACT Act provides that, subject to certain exceptions: "no person who delivers cigarettes or smokeless tobacco to consumers, shall *knowingly* complete, cause to be completed, or complete its portion of a delivery of any package for any person whose name and address are on" a list of non-compliant shippers maintained by the U.S. Attorney General (the "Non-Compliant list"). 15 U.S.C. § 376a(e)(2)(A) (emphasis added). The PACT Act explicitly

10

provides that it does not require or obligate "[a]ny common carrier … making a delivery subject to this subsection" to "(iii) open or inspect, pursuant to this chapter, any package being delivered to determine its contents." 15 U.S.C. § 376a(e)(9)(A). Accordingly, plaintiffs must allege facts from which the Court can reasonably infer that UPS knew it was delivering cigarettes or smokeless tobacco to delivery sellers that were included on the Non-Compliant list.

**New York Law.** N.Y. PHL § 1399-*ll* imposes liability on a carrier only if it "*knowingly* transport[s] cigarettes to any person in this state reasonably believed by such carrier to be" anyone other than an authorized recipient, as defined in Section 1399-*ll*(1). *See Ward v. New York*, 291 F. Supp. 2d 188, 194 n.3 & 210 (W.D.N.Y. 2003) ("Because Subdivision Two only applies to persons who 'knowingly' transport cigarettes, *transporters cannot violate the Statute unless they know that they are transporting cigarettes*.") (emphasis added). "Nothing in the plain language of the Statute requires carriers to open packages and verify the contents." *Id.* at 211.

**AOD**. The State may contend that the AOD permits liability based on constructive knowledge (*see* AOD ¶ 42 (providing that UPS shall not be held liable under the AOD for the shipment of cigarettes to an individual consumer within the State of New York if "UPS establishes to the reasonable satisfaction of the Attorney General that UPS did not know and had no reason to know that the shipment was a Prohibited Shipment ")), but as detailed below, the State cannot state a claim that UPS violated any provision of the AOD. *See infra*, at 18-19.

## B.   Plaintiffs' Allegations of UPS's Knowledge Are Insufficient.

The Amended Complaint fails to adequately allege that UPS knew it was delivering cigarettes (much less unstamped cigarettes). Plaintiffs simply assume that UPS must have known it was delivering cigarettes, based on their characterizations of the shippers as rogue tax evaders. Because plaintiffs do not, and cannot, allege that the only products sold by the shippers were untaxed cigarettes, they fail to identify any actual facts that could support an inference that UPS

11

knew the alleged contents of the packages.

### 1.      Plaintiffs Fail To Allege Actual Knowledge.

Plaintiffs do not allege that the packages or shipping records bore any indications that would have alerted UPS they might contain cigarettes. In fact, plaintiffs allege the opposite—that *none* of the packages at issue bore labeling required under the PACT Act to indicate that they contained cigarettes, let alone *unstamped* cigarettes. ¶¶ 74-76. Nor do plaintiffs allege that there were any other markings on the boxes to indicate that they contained cigarettes, or that the shippers, package recipients, or shipping records indicated that the packages contained cigarettes. Indeed, when plaintiffs' undercover investigator allegedly ordered and received cigarettes from one smoke shop, the package he received was labeled "Seneca Cigars." ¶ 31(d).

The only actual facts alleged in the Amended Complaint concerning *UPS's* conduct (as opposed to the shippers' conduct) are that:

- UPS adopted a policy prohibiting the shipment of cigarettes to unauthorized recipients. ¶ 70, 72.

- UPS notified shippers of that policy. ¶ 70.

- UPS entered into "Tobacco Delivery Contracts" (individually known as an "Agreement for Transportation of Tobacco Products" ("Tobacco Agreement")) "with all or most of the entities for which they [allegedly] shipped cigarettes." ¶ 33.

- UPS drivers had contact with the shippers at their pick-up addresses, and UPS sales executives must have conducted some due diligence on them. ¶¶ 42-46.

- UPS delivered packages for the shippers plaintiffs identify. ¶¶ 31-33.

These allegations do not support an inference that UPS knowingly delivered packages

that (plaintiffs contend) contained cigarettes. Even the allegations concerning UPS's due diligence of the shippers fails to establish that UPS knew they were shipping cigarettes, because, as discussed above, the Amended Complaint itself establishes that the shippers at issue ship tobacco products in addition to cigarettes. Any delivery by UPS of tobacco products other than cigarettes on behalf of the shippers would have been fully consistent with the AOD, permitted under the laws at issue in this case, and in line with the terms of UPS's Tobacco Agreement. Because there is no legal bar to the shipment of tobacco products other than cigarettes to consumers in New York, and because UPS complied with the AOD in notifying shippers that they may not ship cigarettes to consumers, plaintiffs offer no facts supporting the inference that UPS knew it was shipping cigarettes—as opposed to other lawful tobacco products—for the shippers they identify.

That UPS entered into Tobacco Agreements with those shippers, ¶ 33, further defeats plaintiffs' assumptions that UPS knew that the shippers were supposedly shipping cigarettes. The Tobacco Agreement[9] must be accepted by all UPS shippers seeking to transport *non-prohibited* tobacco and tobacco products to consumers. The Agreement explicitly provides that UPS will not deliver packages containing cigarettes to consumers or other unauthorized recipients, and it requires shippers to comply with all applicable laws and regulations and develop related compliance programs. It also strictly prohibits shippers from tendering any tobacco or tobacco

---

[9] *See* UPS, "Agreement for Transportation of Tobacco Products," *available at* http://www.ups.com/media/en/agreement-for-transportation-of-tobacco-products.pdf (last visited May 21, 2015), attached as Exhibit 3 to the McPherson Decl. The Court can consider the Agreement, because the Amended Complaint refers to it, ¶ 33. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.") (citations omitted).

ny-1187384

products that violate the law. The Agreement demonstrates that UPS expected that any transportation services it provided pursuant to the Agreement would *not* involve cigarettes, whether stamped or unstamped.

> **2.** **Plaintiffs' Allegations Based on The Nature Of "Indian Smoke Shops" Are Insufficient.**

Lacking any basis to allege that UPS actually knew that the packages UPS delivered supposedly contained cigarettes, and unstamped cigarettes in particular, plaintiffs rely on allegations attempting to establish that UPS knew or should have known that "Indian smoke shops" sell untaxed cigarettes. Plaintiffs allege that there is "[w]idespread public knowledge" of "Indian sales of untaxed cigarettes," ¶¶ 40-41;[10] that UPS knew from visits to and due diligence on its customers that "the business model of each smoke shop was built around providing unstamped, untaxed cigarettes to non-Indian consumers," ¶ 42; *see also* ¶ 43;[11] and that UPS must have "understood the business model of the reservation smoke shops" based on its "lengthy

---

[10] The sources plaintiffs cite—an unpublished court decision and a Lexis news search (spanning a forty-year period)—have no connection to the specific shippers at issue in this case. And some of the sources reinforce the fact that "smoke shops" on reservations deal in goods other than cigarettes, a fact plaintiffs consistently ignore. *See, e.g.*, *Once Upon a Budget…*, The Times-Union, June 22, 2010, at A8 (referring to the sale of tobacco, gas, and other products on Indian reservations, and the fact that "Indian stores appear to only be expanding their tax-free offerings on the Internet," including by selling candy online); *Smoke Shops More Exotic As Cigarette Sales Wane*, Rochester Democrat & Chron., Dec. 30, 2010 (referring to the sale of rolling papers, incense, hookahs, lottery tickets, and novelty items by "smoke shops").

[11] Plaintiffs do not offer any facts to support that UPS drivers picking up packages from a shipper divined the shipper's "business model" or acquired actual knowledge that the packages contained unstamped cigarettes (as plaintiffs assume they did)—which is inconsistent with plaintiffs' allegation that none of the packages bore labels indicating that they contained cigarettes. *See* ¶¶ 74-76. Plaintiffs' allegations that UPS sales executives would have personally visited and observed that UPS customers Indian Smokes and Seneca Cigarettes advertised themselves as smoke shops, ¶¶ 43-46, suggest only (and at most) that certain UPS employees were aware these two customers sold a variety of tobacco products. Indeed, in plaintiffs' own photograph of the exterior of Indian Smokes, an advertisement for "Cigars" is clearly visible. ¶ 45.

negotiations with the Attorney General in connection with UPS's AOD," ¶ 47.[12] But even assuming these allegations support an inference that UPS knew that the shippers at issue sell untaxed cigarettes (they do not), they fail to support an inference that the packages those shippers tendered to UPS contained unstamped cigarettes—as opposed to other tobacco products—or that UPS *knew* that they did so. Thus, the allegations concerning sales of untaxed cigarettes by Indian smoke shops are insufficient to establish UPS's knowing delivery of untaxed cigarettes.

As a variation on this theme, plaintiffs allege that some individuals or entities affiliated with some of the shippers they identify have pleaded guilty to cigarette trafficking. ¶¶ 48-49. But plaintiffs do not allege that UPS made deliveries on behalf of the entities that pleaded guilty. They allege that UPS made deliveries for AJ's Cigar, but the entity that pleaded guilty was its alleged affiliate, AJ's Candy. ¶¶ 31(c), 48. Although plaintiffs refer to the pleas of Jody Swamp and Robert Oliver, they do not identify the shippers affiliated with them for which UPS allegedly made deliveries. ¶ 49. Nor do plaintiffs allege that UPS made deliveries on behalf of the entities that pleaded guilty after the pleas became public. Moreover, even if plaintiffs could allege that UPS provided service to an entity that had pleaded guilty to cigarette trafficking, that would not establish that UPS had delivered untaxed cigarettes, rather than lawful products, for that entity.

Finally, plaintiffs note that UPS participated in debates about the passage of the PACT Act, and that "a trade association of smoke shops" contested the law after it was enacted. ¶¶ 51-52. This allegation, too, falls several steps short of establishing a plausible inference of actual knowledge. Challenging a law is not synonymous with breaking it, as plaintiffs appear to suggest. And plaintiffs fail to allege any connection between the association members' activities

---

[12] Plaintiffs do not tie this allegation to the shippers plaintiffs identify, which include Cloud & Co., EExpress, Shipping Services, Tarbells, and Action Race Parts—names that do not indicate in any way that the shippers intend to ship tobacco products.

15

and UPS, or even to allege that the association's members included the UPS customers on whose behalf UPS made deliveries.

At bottom, then, plaintiffs' allegation that UPS knew it was delivering cigarettes rests on nothing more than the facts that UPS provided service to shippers plaintiffs claim are on Indian reservations, and that, in plaintiffs' view, those shippers are tax evaders. Plaintiffs' logic is far too sweeping a generalization. They would have UPS refuse to provide service to shippers located on Indian reservations based solely on that fact, even though their names—such as such as Cloud & Co., EExpress, Shipping Services, Tarbells, and Action Race Parts—may not provide even a hint that they ship tobacco products. Plaintiffs are, in effect, asking UPS to discriminate against shippers located on Native American reservations, arguably in violation of UPS's commitment to provide service on reasonable request. *See* 49 U.S.C. § 14101(a) (requiring common carriers to "provide the transportation or service on reasonable request.").

### C.    Plaintiffs' Failure to Allege Facts Supporting Knowing Delivery of Cigarettes Compels the Dismissal of All of Their Claims.

Because knowledge is a required element of all of plaintiffs' claims, the failure to plead facts supporting the inference that UPS knowingly delivered cigarettes to unauthorized recipients defeats all of plaintiffs' claims and requires that the Amended Complaint be dismissed. *See Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories*, No. 07 Civ. 6959 (DAB), 2010 WL 4968072, at *6 (S.D.N.Y. Dec. 6, 2010) (granting dismissal because "Plaintiffs provide[d] only a 'formulaic recitation' of the knowledge element of contributory infringement claim") (citation omitted); *BL Rest. Operations, LLC v. 701 Am., Inc.*, No. 11 Civ. 6285 (KBF), 2012 WL 463826, at *6 (S.D.N.Y. Feb. 14, 2012) (dismissing tortious interference with contract claim where "there are no plausible allegations that anyone . . . acted with the requisite knowledge of the contract or state of mind," and the allegations "do not meet the basic threshold

set forth in *Twombly* and *Iqbal*") (citations omitted); *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 535-38 (S.D.N.Y. 2009) (dismissing civil RICO claims where plaintiffs failed to plead facts tending to show that defendants had actual knowledge illegal aliens they hired had been brought into the country by a third party, an element of the RICO predicate offense, where plaintiffs' knowledge allegations were based on "common knowledge").

### III.   PLAINTIFFS' CLAIMS UNDER THE PACT ACT FAIL FOR ADDITIONAL, INDEPENDENT REASONS.

#### A.   The PACT Act Expressly Exempts UPS from Its Requirements.

The Amended Complaint alleges that UPS violated § 376(e)(2)(A) of the PACT Act, which restricts deliveries of cigarettes to persons on the Non-Compliant List. ¶ 128. But because UPS entered into the AOD, it is explicitly exempt from that restriction. The Act provides that "any requirements or restrictions placed directly on common carriers under this subsection, including subparagraphs (A) and (B) of paragraph (2), shall not apply to a common carrier" that "(i) is subject to a settlement agreement described in subparagraph (B)." 15 U.S.C. § 376a(e)(3)(A). The Act defines such settlement agreements to include "the Assurance of Discontinuance entered into by the Attorney General of New York and United Parcel Service, Inc. on or about October 21, 2005… if [the agreement] is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers." 15 U.S.C. § 376a(e)(3)(B).

In addition, the penalty provisions of the PACT Act independently provide that common carriers are not subject to civil penalties for violations of Section 376a(e), which includes the provisions concerning the Non-Compliant List, if "the common carrier or independent delivery service has implemented and enforces effective policies and practices for complying with that section." 15 U.S.C. § 377(b)(3)(B)(i).

By its plain terms, then, the PACT Act's provisions "shall not apply" to UPS, and UPS is not subject to civil penalties under the Act.

### B. Plaintiffs Do Not Adequately Allege Any Violation of the AOD, a Prerequisite for Any Claim Under the PACT Act.

Anticipating this bar to their claims, plaintiffs allege that the PACT Act's exemption does not apply because UPS violated the AOD. Plaintiffs assert that "[i]t is self-evident from this complaint that UPS does not 'honor' its agreement throughout the United States to block illegal deliveries of cigarettes to consumers, and the exemption is accordingly inapplicable." ¶ 79. That allegation, like plaintiffs' other unsupported allegations regarding UPS's deliveries for the shippers at issue, is entirely conclusory.

In alleging that UPS failed to "honor" the AOD by failing to "block illegal deliveries of cigarettes," plaintiffs ignore that the AOD does not impose strict liability on UPS for any delivery of cigarettes to an unauthorized recipient in New York. Instead, the AOD requires UPS to maintain its nationwide policy prohibiting the shipment of cigarettes (whether stamped or unstamped) to consumers, post the policy on its website, identify likely tobacco shippers and notify them about the new policy, and conduct a detailed training program for UPS account executives, drivers, pre-loaders, and other employees. ¶ 28. Plaintiffs do not allege that UPS failed to adhere to any of these provisions of the AOD. Indeed, plaintiffs assert that UPS entered into "Tobacco Delivery Contracts" with the shippers at issue, ¶ 33, and the AOD specifically contemplates that UPS will enter into contracts with tobacco retailers and that those contracts "incorporate the UPS Cigarette Policy." AOD ¶ 18.

Plaintiffs' assertion that, since UPS allegedly accepted packages containing cigarettes from certain shippers, UPS must not honor the AOD's prohibition on the delivery of cigarettes to consumers, ignores the overall purpose and structure of the AOD. The AOD's stated purpose is

to "promote further and ongoing cooperation between UPS and the Attorney General concerning UPS's compliance with PHL § 1399-*ll*." AOD ¶ 15. To this end, the AOD lays out detailed procedures through which UPS and the Attorney General may cooperate to prevent the unlawful shipment of cigarettes. Under the AOD, the Attorney General or any other governmental authority can contact UPS concerning suspected violations of UPS's tobacco policy. AOD ¶¶ 39-40. If the AG provides evidence that a UPS customer is shipping cigarettes to individual consumers, UPS must subject the shipper to the progressive discipline program outlined in the AOD. *Id*. If no such evidence is provided, UPS must conduct an audit of the shipper, and discipline violators based on the results of the audit. *Id*.

Plaintiffs do not allege that UPS failed to take appropriate action after being informed about the shippers at issue here. Indeed, they do not even allege that they shared any information with UPS about most of these suspected violators of UPS policy before claiming that UPS knowingly delivered cigarettes on their behalf. Rather than notifying UPS of suspected violators—thereby enabling UPS to terminate service to shippers engaged in wrongdoing, as both the AOD and PACT Act envisioned—plaintiffs seek to extract damages and civil penalties from UPS, without any basis for their allegations that UPS knew about any alleged wrongdoing ahead of time.

Because plaintiffs cannot allege that UPS is failing to honor the AOD, they are legally barred from pursuing claims against UPS under the PACT Act.

## IV.    PLAINTIFFS' CLAIMS UNDER N.Y. PHL § 1399-*ll* FAIL FOR ADDITIONAL, INDEPENDENT REASONS.

There are two legal bars to plaintiffs' claims under N.Y. PHL § 1399-*ll*: (1) the PACT Act preempts the application of § 1399-*ll* against UPS, and (2) even if § 1399-*ll* could be applied to UPS, the City and the Attorney General have no standing to recover civil penalties under

§ 1399-*ll* for the vast majority of the deliveries alleged in the Amended Complaint.

### A.   The PACT Act Exempts UPS from N.Y. PHL § 1399-*ll*'s Requirements.

Section 376a(e)(5)(C)(ii) of the PACT Act provides that "[n]o State may enforce against a common carrier a law prohibiting the delivery of cigarettes or other tobacco products to individual consumers or personal residences without proof that the common carrier is not exempt under [§ 376a(e)(3)] of this subsection." As discussed in Section III, above, UPS is exempt from the PACT Act due to the AOD. Because N.Y. PHL § 1399-*ll* is a state law "prohibiting the delivery of cigarettes . . . to individual consumers or personal residences," UPS's exemption under the AOD extends to enforcement actions brought under § 1399-*ll*. By its plain terms, then, the PACT Act prohibits enforcement of N.Y. PHL § 1399-*ll* against UPS, and plaintiffs' claims under § 1399-*ll* should be dismissed in their entirety.

### B.   Plaintiffs Lack Standing to Enforce N.Y. PHL § 1399-*ll* Against UPS for the Vast Majority of the Time Period at Issue in the Amended Complaint.

Plaintiffs allege that UPS violated N.Y. PHL § 1399-*ll* by delivering cigarettes to unauthorized recipients in New York since 2010, and seek civil penalties under that law. ¶¶ 154, 159. But until September 27, 2013, the City and the Attorney General had no standing to enforce § 1399-*ll*, and they therefore cannot recover civil penalties based on any alleged delivery made before that date—the vast majority of the deliveries alleged in the Amended Complaint.

As originally enacted, § 1399-*ll* authorized New York's Commissioner of Health to impose a civil penalty for each violation. N.Y. PHL § 1399-*ll*(5) (McKinney 2001). On September 27, 2013, amendments to § 1399-*ll* for the first time created a civil cause of action for the Attorney General and for "the corporation counsel of any political subdivision that imposes a tax on cigarettes." *See* 2013 N.Y. Sess. Laws Ch. 342 (A. 365-B) § 1(6) (McKinney); N.Y. PHL

20

§ 1399-*ll*(6).

The 2013 amendments should not be applied retroactively to permit plaintiffs to seek recovery for alleged violations occurring before the amendments took effect. Statutes should not be construed to apply retroactively, unless the express language of the statute, or necessity, requires it. *See, e.g.*, *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584, 696 N.E.2d 978, 980 (1998) ("It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it."); N.Y. Stat. Law § 52 (McKinney) ("Generally, an amendment will have prospective application only, and will have no retroactive effect unless the language of the statute clearly indicates that it shall receive a contrary interpretation."). Against this presumption of non-retroactivity, "it 'takes a clear expression of the legislative purpose to justify a retroactive application.'" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) (quoting *Majewski*, 91 N.Y.2d at 584). "Under New York law, to determine if such a purpose exists, courts look to the text of legislation at issue … If the text is not clear, courts then look to the legislative history." 730 F.3d at 143 (citations omitted).

The text and history of the 2013 amendments compel the conclusion that they are not retroactive. Indeed, in granting a motion to dismiss these same plaintiffs' claims against FedEx under this same statute, Judge Ramos recently ruled that the 2013 amendments did not apply retroactively. *See City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2015 WL 1013386, at *11 (S.D.N.Y. Mar. 9, 2015). Following the two-step process set forth in *Gold*, Judge Ramos examined both "the text of the amendment and the legislative history." *Id.* Finding both to be "silent on retroactivity," the court concluded that it "will not retroactively apply the 2013 amendment to Section 1399-*ll*." *Id.*

There is no reason for this Court to depart from Judge Ramos's sound application of Second Circuit precedent to N.Y. PHL § 1399-*ll*. Because the 2013 amendments to § 1399-*ll* do not apply retroactively, the Court should dismiss plaintiffs' claims pursuant to § 1399-*ll*, to the extent that they are based on any deliveries before the law was amended on September 27, 2013.

### C.   Executive Law 63(12) Did Not Give the Attorney General Standing to Pursue Civil Penalties Under § 1399-*ll* Before September 27, 2013.

The Attorney General's authority under N.Y. Exec. L. § 63(12) does not permit him to circumvent his inability to pursue civil penalties under N.Y. PHL § 1399-*ll* for alleged violations occurring before September 27, 2013. ¶¶ 83, 155-159. Section 63(12) authorizes the Attorney General to initiate a special proceeding in New York State Supreme Court for an order awarding injunctive relief, or "restitution and damages" only—not to pursue *civil penalties* provided for in any underlying law or regulation. N.Y. Exec. L. § 63(12); *see, e.g.*, *State by Abrams v. Solil Mgmt. Corp.*, 128 Misc.2d 767, 773, 491 N.Y.S.2d 243, 249 (Sup. Ct., New York County 1985), *aff'd*, 495 N.Y.S.2d 161 (1985) (punitive and treble damages not available under § 63(12) because statute limits AG "to obtaining restitution or compensatory damages on behalf of the injured tenants").

If § 63(12) provided the Attorney General with authority to impose civil penalties under § 1399-*ll*, there would have been no need to amend § 1399-*ll* to create a new civil cause of action for the Attorney General. Instead, as the Attorney General's submission in support of the 2013 amendments recognized, the 2013 amendments were necessary precisely because the Attorney General had no power to enforce violations of that statute:

> [U]nder current law, only the Commissioner of Health is authorized to impose a civil penalty for violations of [section 1399-ll]. This bill amends section 1399-*ll* to authorize the Attorney General to recover civil penalties for violations of [section 1399-ll]. This amendment would allow for greater and more expeditious enforcement of section 1399-*ll* ….

22

Memorandum from Harlan A. Levy, Counsel to the Attorney General, to Mylan L. Denerstein,

Counsel to the Governor (Aug. 13, 2013), reprinted in N.Y. Bill Jacket 2013, ch. 342, at 19,

attached as Exhibit 4 to the McPherson Decl. (emphasis added). The sponsor of the amendment

took the same view:

> The addition of a new subdivision 6 to Public Health Law Section
> 1399-ll provides for more effective enforcement of the statute by
> permitting both the Attorney General and the Corporation Counsel
> of any political subdivision that imposes a tax on cigarettes to
> bring actions to recover civil penalties for statutory violations.

Sponsor's Memorandum in Support of NY A365-B (Jan. 9, 2013), reprinted in N.Y. Bill Jacket

2013, ch. 342, at 13, attached as Exhibit 5 to the McPherson Decl.

Because § 63(12) did not provide the State with the power to recover civil penalties under

§ 1399-*ll*, the State may not pursue any claims pursuant to § 1399-*ll* based on any deliveries

before the law was amended on September 27, 2013—whether directly under § 1399-*ll*, or

indirectly under § 63(12). Accordingly, the Court should dismiss the State's claims pursuant to

§ 1399-*ll*, to the extent that they are based on alleged deliveries before September 27, 2013.

## V.   PLAINTIFFS' CLAIMS UNDER THE CCTA FAIL FOR AN ADDITIONAL, INDEPENDENT REASON.

Plaintiffs' CCTA claims fail because they do not allege that UPS participated in any

single transaction in which it engaged in the shipment of more than 10,000 unstamped cigarettes.

Instead, they combine numerous, separate deliveries to allege that UPS delivered over 683,000

cartons of unstamped cigarettes in the aggregate. ¶ 34.

Under the plain language of the CCTA, only unstamped cigarettes that both exceed a

quantity of 10,000 *and* are "in the possession" of a non-exempt person constitute contraband

cigarettes. 18 U.S.C. § 2341(2). The requirement that the threshold quantity must be in the

"possession" of a non-exempt person functions as a transactional limitation: only if the requisite

23

quantity of cigarettes are in the defendant's possession at the same time can the defendant be deemed in violation of the CCTA. The statute does not provide that smaller, individual transactions can be aggregated over a period of time. *Id.*; *see, e.g.*, *United States v. Khan*, 771 F.3d 367, 376-77 (7th Cir. 2014) (CCTA "applies to *each transaction* involving contraband cigarettes" (emphasis added)); *United States v. Wamiq*, No. 12-CR-88, 2013 WL 3773377, at *4 (E.D. Wis. July 17, 2013) ("Section 2342 is most naturally read as applying to *each particular transaction* in contraband cigarettes.") (emphasis added); *United States v. Morrison*, 596 F. Supp. 2d 661, 686 n.27 (E.D.N.Y. 2009) (purchasers of unstamped cigarettes may not have violated the CCTA because their sales did not exceed the statutory threshold "per transaction").

UPS acknowledges that this Court has concluded that the CCTA permits the aggregation of multiple cigarette shipments to meet the threshold quantity. *See State of New York v. BB's Corner, Inc.*, No. 12 Civ. 1828 (KBF), 2012 WL 2402624 (S.D.N.Y. June 25, 2012); *see also City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2015 WL 1013386 (S.D.N.Y. Mar. 9, 2015); *City of New York v. Lasership, Inc.*, 33 F. Supp. 3d 303 (S.D.N.Y. 2013); *City of New York v. Gordon*, 1 F. Supp. 3d 94 (S.D.N.Y. 2013). But the Second Circuit has not ruled on the issue, leaving the issue unsettled. Respectfully, UPS submits that, based on the text of the CCTA and the other precedent cited above, the CCTA quantity requirement applies to each transaction, and plaintiffs' CCTA claim should therefore be dismissed.

## CONCLUSION

Plaintiffs are simply guessing. They allege no facts that, if proved, would establish that UPS knowingly delivered unstamped cigarettes. The Amended Complaint itself establishes that the shippers they identify sell lawful tobacco products. And there are no allegations of any facts

that would establish that any of the packages UPS delivered were marked as containing cigarettes. To the contrary, the single package plaintiffs identify as containing cigarettes was marked as containing cigars—a lawful product that the shipper was entitled to sell and that UPS could lawfully deliver. Because plaintiffs cannot allege any facts supporting their guesses, their claims should be dismissed.

Dated: New York, New York
         May 22, 2015

By: /s/  Mark David McPherson

MORRISON & FOERSTER LLP

Mark David McPherson
250 West 55th Street
New York, NY 10019
Telephone:  (212) 468-8000
MMcPherson@mofo.com

Paul T. Friedman (Admitted *Pro Hac Vice*)
425 Market Street
San Francisco, CA 94105
Telephone:  (415) 268-7000
PFriedman@mofo.com

Gregory B. Koltun (Admitted *Pro Hac Vice*)
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone:  (213) 892-5200
GKoltun@mofo.com

*Attorneys for Defendant*
United Parcel Service, Inc.

ny-1187384