UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                       :

THE STATE OF NEW YORK and THE CITY OF     :
NEW YORK,                                    :

                 Plaintiffs,             :

                                     :            15-cv-1136 (KBF)

                 -v-                       :

                                     :         OPINION & ORDER

UNITED PARCEL SERVICE, INC.,            :

                                     :

                 Defendant.           :

                                     :

------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 16, 2015

KATHERINE B. FORREST, District Judge:

     In this action, the State of New York ("State") and the City of New York ("City") allege that defendant United Parcel Service, Inc. ("UPS"), a package delivery company, has delivered and continues to deliver hundreds of thousands of contraband untaxed packs of cigarettes to persons within the State and City, in violation of federal and state law. (Am. Compl., ECF No. 14.) Plaintiffs' amended complaint ("Amended Complaint") seeks injunctive relief, damages and penalties under the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 et seq. ("CCTA"), and the Prevent All Cigarette Trafficking Act, 15 U.S.C. § 375 et seq. ("PACT Act"), as well as treble damages and attorneys' fees under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), injunctive relief and penalties under New York Executive Law § 63(12) ("N.Y. Exec. Law § 63(12)") and New York Public Health Law § 1399-ll ("N.Y. PHL § 1399-ll"), and penalties under

an Assurance of Discontinuance ("AOD") with the New York State Attorney General ("NYAG").  (Am. Compl. ¶¶ 2, 89-168.)

Pending before the Court is UPS's motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  (ECF No. 21.)  UPS raises several arguments in its motion, including that (1) all claims must be dismissed for failure to plausibly allege that UPS delivered cigarettes or that UPS knew those deliveries contained cigarettes, (2) the CCTA claims fail because there are no allegations that UPS engaged in any single transaction involving the shipment of more than 10,000 unstamped cigarettes, (3) the PACT Act claims fail because UPS is exempt from suit based on its AOD, and (4) the N.Y. PHL § 1399-ll claims fail because that statute is preempted by the PACT Act and the bulk of plaintiffs' claims nonetheless fail on retroactivity grounds.  For the reasons that follow, UPS's motion to dismiss the Amended Complaint is GRANTED IN PART and DENIED IN PART.  The Court dismisses plaintiffs' claims brought under the PACT Act and N.Y. PHL § 1399-ll.  All other claims may proceed.

I.    BACKGROUND

    A.    Factual Background[1]

        1.    New York's cigarette taxation regime.

Like the federal government, the State and the City tax the sale and use of tobacco products, such as cigarettes.  (Am. Compl. ¶ 9.)  Under New York law, all

---

[1] The following facts, which the Court accepts as true for purposes of this motion, are alleged in the Amended Complaint and documents referenced by and therefore incorporated into the Amended Complaint.  The Court here recounts only those facts relevant to resolving the pending motion to dismiss, or to providing helpful background information.

cigarettes possessed for sale or use are presumed to be taxable and therefore must bear a tax stamp, unless an exemption applies. (Id. ¶ 12.) State and City cigarette excise taxes must be pre-paid by licensed "stamping agents" who are usually wholesale cigarette dealers licensed by the State and the City to purchase and affix tax stamps to each pack of cigarettes possessed by the agent for sale within the State and/or the City. (Id. ¶¶ 13-14.) At all times relevant to this suit, the State's excise tax has been either $2.75 or $4.35 per pack and the City's excise tax has been $1.50 per pack. (Id. ¶ 16.)

The most common and longstanding form of tax evasion in the State has been the sale of untaxed cigarettes by Indian reservation retailers to non-tribal members. (Id. ¶¶ 19-21.) Such reservation sellers have long refused to participate in the tax stamping system for the collection of cigarette taxes. (Id. ¶ 19.) Although courts have upheld application of the State's cigarette taxation regime to Indian cigarette sales to the public, some reservation smoke shops continue to sell cigarettes, including through mail, telephone, and Internet orders, without affixing the tax stamps of any of the jurisdictions into which the stores make sales. (Id. ¶ 24.)

### 2. The NYAG's first investigation of UPS.

In 2004, the NYAG began investigating residential cigarette deliveries made by UPS in violation of N.Y. PHL § 1399-ll, which prohibits the delivery of cigarettes by common carriers to persons who are not licensed cigarette wholesalers and retailers or government officials. (Id. ¶ 25.) The NYAG's investigation found that UPS regularly delivered unstamped and untaxed cigarettes to New York residential customers and that such deliveries originated principally from sellers located on

New York State Indian reservations.  (Id. ¶ 27.)  Many of these sellers advertised their cigarettes as "tax-free" and accepted orders over the Internet or by telephone for later delivery by UPS to residences throughout the State.  (Id.)

   3. UPS's Assurance of Discontinuance.

  Following the NYAG's investigation, UPS and the NYAG entered into an Assurance of Discontinuance ("AOD") on October 21, 2005.[2]  (Am. Compl. ¶ 28; see McPherson Decl. Ex. 1 ("AOD"), ECF No. 23-1.)  Under the AOD, UPS agreed, inter alia, to comply with N.Y. PHL § 1399-ll by prohibiting cigarette deliveries to unauthorized recipients in the State and undertaking measures to ensure compliance among its employees.  (Am. Compl. ¶ 28.)  The AOD subjects UPS to a $1,000 stipulated penalty for each violation of its terms, provided that no penalty would be imposed if: (a) the violation involved the shipment of cigarettes to a person, located within the State of New York, who was not otherwise authorized to possess such unstamped cigarettes, and (b) UPS established to the reasonable satisfaction of the NYAG that UPS did not know and had no reason to know that the shipment was prohibited.  (AOD ¶ 42).  In the AOD, UPS also represented that in June 2003 it informed approximately 400 shippers having accounts with UPS that it would no longer accept packages containing cigarettes for delivery to unauthorized recipients in the State.  (Id. ¶ 12.)  As a result of the AOD, the NYAG declined to commence a civil action against UPS for its alleged past violations of § 1399-ll.  (Id. ¶ 15.)  In a report to the NYAG dated on or around December 20, 2005,

---

[2] The AOD is publicly available at: http://www.ag.ny.gov/sites/default/files/pressreleases/archived/9tiupsaodfinal.oct.pdf (last visited August 3, 2015).

UPS confirmed that it would give nationwide effect to the AOD and that it no longer shipped cigarettes to consumers and would only deliver tobacco products from licensed entities.  (Am. Compl. ¶ 29.)

    4.    <u>UPS's alleged ongoing delivery of cigarettes after the AOD.</u>

Plaintiffs allege that despite the assurances UPS made in the AOD, from at least 2010 through the present, UPS knowingly shipped and delivered thousands of cartons of unstamped cigarettes from manufacturers to unlicensed wholesalers and retailers, and delivered such cigarettes from smoke shops (including some shops that have been the subject of federal criminal prosecution for trafficking in contraband cigarettes) to residences in the State and the City.  (<u>E.g.</u>, Am. Compl. ¶¶ 30, 48-49.)  In 2012, an undercover City investigator placed an Internet order for cigarettes from a company located in Bason, New York, which is located on the Seneca Indian Nation Reservation.  (<u>Id.</u> ¶ 31.)  UPS delivered the order, which contained unstamped cigarettes, in a package bearing the return address of "Seneca Cigars."  (<u>Id.</u>)

UPS records obtained by plaintiffs indicate that UPS made over 17,000 deliveries to residences for four smoke shops as recently as February 2014.  (<u>Id.</u>)  In November 2014, plaintiffs obtained additional records showing that between January 2010 and September 2014, UPS made 61,000 additional deliveries to residents throughout the State and the City on behalf of several other smoke shops and illegal cigarette distributors located on New York State Indian reservations.  (<u>Id.</u> ¶ 32.)  Plaintiffs allege that based on an analysis of the weights of the delivered

packages, UPS delivered millions of packs of contraband cigarettes throughout the State over that time period.  (Id. ¶ 34.)

Plaintiffs allege that UPS knew these deliveries contained unstamped, untaxed cigarettes based on, inter alia, UPS's prior experience in connection with the NYAG investigation and the AOD, numerous court decisions regarding Indian reservation smoke shops' non-compliance with the State's cigarette tax regime, widespread media reporting, UPS's entering into tobacco delivery contracts with most or all of the Indian reservation smoke shops that UPS shipped and delivered cigarettes for, by visiting, observing, and picking up packages for Indian reservation smoke shops, and as a result of UPS's general practice of enmeshing itself deeply in its customers' businesses.  (E.g., id. ¶¶ 20, 24, 33, 40, 42-44, 47.)

B.    Procedural Background

On February 18, 2015, plaintiffs filed their original complaint against UPS (ECF No. 1), and filed the Amended Complaint on May 1, 2015 (ECF No. 14).  The Amended Complaint alleges fourteen causes of action seeking various forms of relief under federal and New York law, including under the CCTA, the PACT Act, RICO, N.Y. Exec. Law § 63(12), N.Y. PHL § 1399-ll, and pursuant to the AOD.  On May 22, 2015, UPS filed a motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  (ECF No. 21.)  The Court held oral argument on the motion on July 30, 2015.  On August 26, 2015, the Court issued an Order inviting the parties to file supplemental briefs addressing an interpretation of the PACT ACT that had not previously been raised by either party.  (ECF No. 37.)  The parties submitted supplemental briefs on September 9, 2015.  (ECF Nos. 44, 45.)

II.     LEGAL STANDARDS

    A.     <u>Motion to Dismiss</u>

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must provide grounds upon which his claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010) (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." <u>Id.</u> The Court will give "no effect to legal conclusions couched as factual allegations." <u>Port Dock & Stone Corp. v. Oldcastle Ne., Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 555). Knowledge and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant." <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010). But, if the Court

can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate.  Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).  Where necessary, the Court may supplement the allegations in the complaint with facts from documents either referenced therein or relied upon in framing the complaint.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

      B.    CCTA

The CCTA provides that "[i]t shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes . . . ."  18 U.S.C. § 2342(a).  The CCTA defines "contraband cigarettes" as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found . . . and which are in the possession of" a non-exempt person.  18 U.S.C. § 2341(2).  Thus, a violation of the CCTA requires the following elements: (1) a person must knowingly ship, transport, received, possess, sell, distribute or purchase, (2) more than 10,000 "cigarettes", (3) that do not bear stamps, (4) under circumstances in which state or local tax law requires that such cigarettes bear stamps. 18 U.S.C. §§ 2341-42; see New York v. BB's Corner, Inc., No. 12 Civ. 1828(KBF), 2012 WL 2402624, at *2 (S.D.N.Y. June 25, 2012).

C.    PACT Act

"The PACT Act regulates remote sales of cigarettes, and imposes a variety of requirements on sellers of cigarettes with the aim of ensuring that taxes are paid and cigarettes are not sold to children."  City of New York v. Wolfpack Tobacco, No. 13 Civ. 1889(DLC), 2013 WL 5312542, at *3 (S.D.N.Y. Sept. 9, 2013).  The PACT Act provides that "no person who delivers cigarettes or smokeless tobacco to consumers, shall knowingly complete, cause to be completed, or complete its portion of a delivery of any package for any person whose name and address are on the [ATF Non-Compliance] list."  15 U.S.C. § 376a(e)(2)(A).

The PACT Act contains a number of provisions exempting certain entities from suit, including one that is relevant here.  The act provides that "any requirements or restrictions placed directly on common carriers . . . shall not apply to a common carrier that . . . is subject to a settlement agreement described in subparagraph (B)."  15 U.S.C. § 376a(e)(3)(A).  It defines such settlement agreements to include "the Assurance of Discontinuance entered into by the Attorney General of New York and United Parcel Service, Inc. on or about October 21, 2005, . . . if [that agreement] is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers."  15 U.S.C. § 376a(e)(3)(B).[3]  The PACT Act also states that "[n]o State may enforce against a common carrier a law prohibiting the delivery of cigarettes or other tobacco

---

[3] Pursuant to another exemption in the PACT Act, a common carrier is not subject to civil penalties for violating § 376a(e) if "the common carrier . . . has implemented and enforces effective policies and practices for complying with [§ 376a(e)]."  Id. § 377(b)(3)(B)(i).

products to individual consumers or personal residences without proof that the common carrier is not exempt under [§ 376a(e)(3)]." Id. § 376a(e)(5)(C)(ii).

    D.    <u>N.Y. PHL § 1399-ll</u>

N.Y. PHL § 1399-<u>ll</u> makes it unlawful "for any common or contract carrier to knowingly transport cigarettes to any person in [New York] reasonably believed by such carrier to be other than a person described in [§ 1399-<u>ll</u>(1)]." N.Y. PHL § 1399-<u>ll</u>(2). Section 1399-<u>ll</u>(1) lists categories of persons to whom cigarettes may lawfully be shipped, including persons licensed as a cigarette tax agent or wholesale dealer, export warehouse proprietors, and persons who are officers, employees, or agents of the United States government or New York State (or a political subdivision thereof) acting in accordance with their official duties. Id. § 1399-<u>ll</u>(1).

As originally enacted in 2000, § 1399-<u>ll</u> authorized New York's Commissioner of Health to impose a civil penalty for each violation of the statute. See N.Y. PHL § 1399-<u>ll</u>(5) (McKinney 2001). On September 27, 2013, the statute was amended in two significant respects. First, § 1399-<u>ll</u> was amended to increase the amount of civil penalties recoverable under the statute. Id. § 1399-<u>ll</u>(5). Second, the statute was amended to explicitly provide that "[t]he attorney general may bring an action to recover the civil penalties provided by [§ 1399-<u>ll</u>(5)] and for such other relief as may be deemed necessary" and that "the corporation counsel of any political subdivision that imposes a tax on cigarettes may bring an action to recover the civil penalties provided by [§ 1399-<u>ll</u>(5)] and for such other relief as may be deemed necessary with respect to any cigarettes shipped . . . in violation of this section to any person located within such political subdivision." Id. § 1399-<u>ll</u>(6).

10

III.   DISCUSSION

    A.   <u>Sufficiency of Allegations That UPS Delivered Cigarettes and Knew of Such Deliveries</u>

UPS argues that the Amended Complaint does not adequately plead that UPS (1) delivered packages containing cigarettes to unauthorized recipients or (2) did so knowingly.  As to the CCTA and RICO claims, UPS argues these claims independently fail because the Amended Complaint does not adequately plead that the allegedly delivered cigarettes were unstamped.  The Court disagrees.

The Amended Complaint alleges that UPS knowingly delivered enormous quantities of unstamped, untaxed cigarettes to persons throughout the United States, including the State and the City.  (Am. Compl. ¶¶ 1-2, 25-168.)  That is sufficient to provide the grounds upon which plaintiffs' claims rest and allows the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678; <u>see also</u> <u>ATSI Commc'ns, Inc.</u>, 493 F.3d at 98 (A plaintiff must provide grounds upon which his claim rests through "factual allegations sufficient to raise a right to relief above the speculative level." (quotation marks omitted)).  UPS's contention that many of the more than 78,000 deliveries alleged in the Amended Complaint may have contained tobacco products other than unstamped cigarettes (such as cigars or little cigars) is a merits-based argument as to what the evidence will show.  UPS raises a factual issue not ripe for determination at this stage.  <u>See</u> <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996) (On a Rule 12(b)(6) motion, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

(quotation marks and alterations omitted)).  Furthermore, the possibility that some of the 78,000 deliveries alleged in the Amended Complaint contained tobacco products other than unstamped, untaxed cigarettes does not eliminate UPS's liability for those deliveries that did include unstamped cigarettes.

UPS also claims that the Amended Complaint does not sufficiently plead knowledge.  Rule 9(b) states that knowledge and conditions of a person's mind may be alleged generally, but "plaintiffs must still plead the events which they claim give rise to an inference of knowledge."  In re DDAVP Direct Purchaser Antitrust Litig., 585 F.3d 677, 695 (2d Cir. 2009); see also Fed. R. Civ. P. 9(b).  The Amended Complaint alleges that UPS knew that packages it was delivering contained unstamped cigarettes because, inter alia, UPS employees had observed and picked up those packages from smoke shops located on New York State Indian reservations, UPS's policy is to enmesh itself deeply in its customers' businesses, and UPS delivered cigarettes for businesses that have been the subject of federal criminal prosecution for trafficking in contraband cigarettes.  (E.g., Am. Compl. ¶¶ 30, 42-49.)  These allegations are sufficient to give rise to an inference of knowledge.

B.    CCTA

UPS argues that plaintiffs' CCTA claims fail because the Amended Complaint does not allege that UPS participated in any single transaction in which it shipped more than 10,000 unstamped cigarettes.  That argument conflicts with the plain language of the CCTA, which imposes no single transaction requirement, and, as UPS acknowledges, with every court in this district to have taken up the question.  City of New York v. FedEx Ground Package Sys., Inc., No. 13 Civ.

9173(ER), 2015 WL 1013386, at *5 (S.D.N.Y. Mar. 9, 2015); <u>City of New York v. Lasership, Inc.</u>, 33 F. Supp. 3d 303, 313 (S.D.N.Y. 2014); <u>City of New York v. Gordon</u>, 1 F. Supp. 3d 94, 105 (S.D.N.Y. 2013); <u>BB's Corner, Inc.</u>, 2012 WL 2402624, at *5.  In fact, no court in the Second Circuit has adopted the statutory construction for which UPS advocates.  Furthermore, UPS has not presented any compelling reason for this Court to deviate from the ample and well-reasoned decisions of courts within this Circuit allowing aggregation of multiple cigarette shipments to meet the CCTA's threshold quantity.  This Court declines to do so.[4]

　　　　C.　　<u>PACT Act</u>

　　　　The PACT Act explicitly exempts UPS from suit based on its AOD with the NYAG.  15 U.S.C. § 376a(e)(3)(B).  That exemption, however, only applies "if [the AOD] is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers."  <u>Id.</u> § 376a(e)(3)(B)(ii)(I).  The Amended Complaint alleges that UPS is not entitled to the exemption because "[i]t is self-evident from this complaint that UPS does not 'honor' its agreement."  (Am. Compl. ¶ 79.)  Plaintiffs argue that the "is honored" language refers to whether UPS—a signatory of the AOD—has complied with the terms of the AOD, and assert that this allegation means, in essence, that UPS has not "honored" it and is therefore not exempt.[5]  The Court disagrees.

_____

[4] UPS does not dispute that if separate shipments may be aggregated for purposes of calculating the 10,000 cigarette threshold, the allegations that UPS made more than 78,000 deliveries of unstamped cigarettes are sufficient at this stage.

[5] Initially, UPS similarly assumed that the "is honored" language relates to its compliance with the AOD and contested only the extent to which plaintiffs were required to prove its failure to "honor" or comply with the PACT Act before it would lose the benefit of the exemption.  In its supplemental

Based on a careful review of the statutory language and structure of § 376a(e)(3), and upon review of the PACT Act's legislative history and apparent purpose, see Abramski v. United States, 134 S. Ct. 2259, 2267 (2014) (stating that courts should look "to the statutory context, 'structure, history, and purpose'" when interpreting a statute (quoting Maracich v. Spears, 133 S. Ct. 2191, 2209 (2013)), the Court concludes that § 376a(e)(3)(B) is a definitional provision that merely defines the types of settlement agreements that qualify for exemption.  In other words, this provision does not purport to reach questions of compliance or non-compliance with obligations assumed under any particular agreement.  In accordance with that reading, UPS is deprived of its exemption if plaintiffs show that the AOD is not recognized throughout the United States.  Because the Amended Complaint fails to include such an allegation, plaintiffs' PACT Act claims must be dismissed.

The language and structure of § 376a(e)(3) show that the provision serves to define the types of agreements intended to confer exemptions of carriers.  Use of the word "includes" at the start of § 376a(e)(3)(B)(ii) signals that what follows is a list of that which is encompassed.  See Samantar v. Yousuf, 560 U.S. 305, 317 (2010) ("[U]se of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive.").  Section 376a(e)(3)(B)(ii)(I) enumerates three settlement agreements, including UPS's AOD with the NYAG, that exempt the

_____

brief filed in response to this Court's August 26, 2015 Order, UPS advocates for the interpretation adopted in this Opinion & Order.

common carrier parties to those agreements "if each of those agreements is honored throughout the United States . . . ." 15 U.S.C. § 376a(e)(3)(B)(ii)(I).

In the Court's view, § 376a(e)(3)(B)(ii)(I)'s conditional clause "if each of those agreements is honored throughout the United States" means that UPS is exempt from the PACT Act if the AOD has appropriate breadth. That is, if and only if the agreement has nationwide effect does a carrier obtain the benefit of the exemption. In this regard, the phrase "is honored throughout the United States" means "recognized by" all states in the nation. Put otherwise, "is honored" means "is recognized," and has nothing to do with a common carrier's compliance with the specific terms of any particular settlement agreement. See HONOR, Black's Law Dictionary (10th ed. 2014) (defining honor as "[t]o recognize" among other definitions). The statute's use of the passive voice in the conditional clause is consistent with that use of "honored."[6] As UPS points out in its supplemental brief, Congress has used the term "honored" in this sense before. See 25 U.S.C. § 1041b(b)(5) (providing that cooperative funding agreements between the Shawnee Tribe and the Cherokee Nation "shall be honored by Federal agencies").

---

[6] Although there are alternative definitions of "honor" that do not necessarily support the statutory reading adopted by the Court, see HONOR, Oxford English Dictionary (OED Third Ed., March 2014) (available at http://www.oed.com/view/Entry/88228?rskey=6pwt3c&result=2&isAdvanced=false#eid) (defining honor as"[t]o fulfill (a duty or obligation); to abide by the terms of (an agreement); to keep (one's word or promise)"); HONOR, Merriam Webster Dictionary (available at http://www.merriam-webster.com/dictionary/honor) (defining honor as "to live up to or fulfill the terms of" and "to accept as valid or conform to the request or demands of (an official document)"), those definitions do not accord with the context, structure or the aims sought to be achieved by the PACT Act. See King v. Burwell, 135 S. Ct. 2480, 2483 (2015) (Where a word is susceptible to more than one interpretation, "the Court must read the words in their context and with a view to their place in the overall statutory scheme." (quotation marks omitted)); see also Abramski, 134 S. Ct. at 2267.

The reading adopted by the Court is, moreover, supported by the language of § 376a(e)(3)(B)(ii)(II), which serves to identify the types of unenumerated agreements that qualify for exemption.  That provision is instructive because it acts in parallel to the provision under which UPS claims exemption here and it is also relevant under the noscitur a sociis canon of construction.  See Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995) ("[A] word is known by the company it keeps.").  Section 376a(e)(3)(B)(ii)(II) states that a qualifying agreement includes "any other active agreement between a common carrier and a State that operates throughout the United States to ensure that no deliveries of cigarettes or smokeless tobacco shall be made to consumers . . . without payment to the States . . . where the consumers are located of all taxes on the tobacco products."  15 U.S.C. § 376a(e)(3)(B)(ii)(II) (emphasis added).  The phrase "that operates throughout the United States," even more so than the phrase "is honored throughout the United States" at issue here, suggests that the language is directed at geographic breadth rather than the signatory's degree of compliance with the agreement.  Read in tandem, it seems clear that § 376a(e)(3)(B)(ii)(I) & (II) merely define the contours of a qualifying settlement agreement and that the exemption is not dependent on the extent to which a common carrier is actually in compliance.[7]

Plaintiffs' policy arguments are similarly unconvincing.  The Court rejects plaintiffs' characterization of a nationwide breadth requirement as "draconian."

---

[7] Section 376a(e)(3)(A)(ii), which addresses the circumstance in which a qualifying agreement is no longer operative, does not support plaintiffs' interpretation.  The fact that a carrier may keep its exemption by voluntarily adhering to the terms of an agreement even after that agreement has terminated or has otherwise become inactive does not mean that § 376a(e)(3)(B)(ii)(I) speaks to the degree of a carrier's compliance.

The Court also rejects plaintiffs' contention that the Court's reading is unsupportable because the statute lacks any description of a procedure or explanation as to how a state might honor such an agreement.  By requiring nationwide recognition, Congress merely sought to codify the status quo with respect to carriers who had already agreed to curb illegal cigarette deliveries.  The evidence before Congress was that the three settlement agreements enumerated in § 376a(e)(3)(B)(ii)(I) already had effect across the nation.[8]  Given that context, Congress need not have been concerned as to how a state might hypothetically "honor" an agreement.  Regardless, based on the lack of any allegation in the Amended Complaint that the AOD has not been recognized by states nationwide, the Court need not determine the precise procedure by which a state must honor an agreement.

Significantly, plaintiffs' proposed interpretation fares no better in creating a consistent, workable scheme.  For instance, plaintiffs' interpretation mixes both the type of agreement encompassed and a compliance component into the same provision.  The Court doubts that such an interpretation corresponds with Congressional intent and principles of statutory interpretation.  The concepts of

---

[8] See, e.g., Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing on H.R. 4081 & H.R. 5689 Before the Subcomm. on Crime, Terrorism, & Homeland Sec. of the H. Comm. on the Judiciary, 110th Cong. 79 (2008) ("2008 Hearing"), at 79 (Statement of David S. Lapp, Chief Counsel, Tobacco Enforcement Unit, Office of the Attorney Gen. of Md., testifying on behalf of NAAG) ("Along with other State attorneys general, we have attained agreements with . . . the major delivery companies, including UPS, FedEx and DHL, all to stop Internet sales of cigarettes."); 2008 Hearing at 124 (Statement of Eric Proshansky, Deputy Chief, Division of Affirmative Litigation, New York City Law Department) ("The states, acting through the [NAAG], and with the assistance of the Bureau of Alcohol, Tobacco, Firearms & Explosives, negotiated an unprecedented set of agreements with . . . common carriers in which members of those industries have pledged to end any participation in the Internet cigarette business.").

breadth and behavior are quite different.  Further, it would place a difficult burden

on a carrier seeking to invoke the exemption if such carrier would always (according

to plaintiffs' argument) be subject to suit under the PACT Act so long as a plaintiff

could include a plausible <u>allegation</u> of non-compliance in the complaint.  This

seemingly guts the exemption, which was created to prevent the imposition of

onerous burdens on those common carriers who had previously agreed to halt the

delivery of contraband cigarettes.  <u>See</u> 155 Cong. Rec. S5822-01, 2009 WL 1423723,

at *104 (May 21, 2009) (statement of Sen. Kohl, sponsor of Senate version of bill)

("It is important to point out that this bill has been carefully negotiated with the

common carriers, including UPS, to ensure that it does not place any unreasonable

burdens on these businesses.  In recognition of UPS and other common carriers'

agreements to not deliver cigarettes to individual consumers on a nationwide basis,

pursuant to agreements with the State of New York, we have exempted them from

the bill provided this agreement remains in effect.").[9]

  Even if the Court were to determine that § 376a(e)(3)(B)(ii)(I) is ambiguous

as between the interpretations advanced by the parties, the PACT Act's legislative

history strongly supports the reading adopted by the Court.  The legislative history

shows that in light of the commitments made by UPS, Federal Express and DHL

---

[9] Section 376a(e)(5)(C)(ii), which precludes a state from enforcing a law prohibiting the delivery of cigarettes to individual consumers "<u>without proof</u> that the common carrier is not exempt under paragraph (3) of this subsection," 15 U.S.C. § 376a(e)(5)(C)(ii) (emphasis added), is not inconsistent with the Court's understanding of the PACT ACT's chief aim.  This "proof" requirement suggests that Congress intended to confer on qualifying carriers broad exemption from legal obligations arising from outside of their nationwide settlement agreements.  Section 376a(e)(5)(C)(ii), which applies to both enumerated and unenumerated agreements as defined in § 376a(e)(3), imposes the burden on a plaintiff to show that the carrier has not entered into a settlement agreement that qualifies for one of the categories of exemption in § 376a(e)(3).

prior to the PACT Act's enactment, the statute was aimed primarily at eliminating deliveries of illegal, untaxed cigarettes by the U.S. Postal Service ("USPS"). See 2008 Hearing at 79 (statement of David S. Lapp) (explaining that states "have curbed deliveries by all the major carriers except one: the U.S. Postal Service, which asserts it has no legal authority to refuse cigarette shipments"); 156 Cong. Rec. H1526-01, 2010 WL 956208, at *27 (Mar. 17, 2010) (statement of Rep. Weiner, House sponsor of the PACT Act) ("There's only one common carrier that today still delivers tobacco through the mail—the United States Postal Service."); 2008 Hearing at 9 (testimony of Rep. Weiner) ("Right now, the only one that is carrying [untaxed cigarettes], ironically, is [USPS.  So the only one who would actually be covered by this in a real practical sense is [USPS].  Everyone else would already be following their status quo operations.").  Because the ill that Congress was attempting to correct was the USPS's refusal to halt the delivery of illegal cigarettes, the purpose of § 376a(e)(3) was to exempt from the PACT Act the common carriers who had already pledged to act in conformity with the PACT Act's goals.  See 15 U.S.C. § 376a(e)(3).

Finally, it is worth noting that the Court's reading does not leave state attorneys general without any remedy to prevent the unlawful delivery of cigarettes to individual consumers and personal residences.  The AOD contains its own remedies in the event of UPS's breach, providing a $1,000 stipulated penalty for each violation of its terms.  (AOD ¶ 42.)  The fact that plaintiffs will still be able to pursue remedies under the AOD means that plaintiffs are only barred from

obtaining duplicative recovery.[10]  In sum, because the Amended Complaint fails to allege that the AOD is not accepted nationwide, the PACT Act claims must be dismissed.

      D.     N.Y. PHL § 1399-ll

      As noted above, the PACT Act provides that "[n]o State may enforce against a common carrier a law prohibiting the delivery of cigarettes or other tobacco products to individual consumers or personal residences without proof that the common carrier is not exempt under [15 U.S.C. § 376a(e)(3)]."  15 U.S.C. § 376a(e)(5)(C)(ii).  UPS argues that because the AOD qualifies it for exemption from the PACT Act, and N.Y. PHL § 1399-ll is a state law "prohibiting the delivery of cigarettes . . . to individual consumers or personal residences," the PACT Act preempts enforcement of § 1399-ll against UPS.  The Court agrees.  The PACT Act provision referenced in § 376a(e)(5)(C)(ii) is the same as that discussed above, pursuant to which the Court has concluded that UPS is exempt from suit for violations of the PACT Act.  Because plaintiffs have not raised any argument disputing that N.Y. PHL § 1399-ll is preempted if UPS qualifies for exemption under the PACT Act, plaintiffs' § 1399-ll must be dismissed.[11]

---

[10] The Court finds no unfairness to plaintiffs in this result.  It is worth noting that Representative Anthony Weiner of New York sponsored the House version of the PACT Act and both of New York's Senators, Senators Schumer and Gillibrand, were co-sponsors of the Senate version, see 155 Cong. Rec. S6030-03.  One can assume that New York's Senators sought to promote, rather than inhibit, New York's interests in supporting the legislation.  See Wesberry v. Sanders, 376 U.S. 1, 13 (1964) (noting that Senators were intended to be considered "state emissaries" under the Constitutional design).

[11] Because the Court holds that the PACT Act exempts UPS from suit for violations of § 1399-ll, the Court does not address UPS's argument that plaintiffs lack standing to enforce § 1399-ll for the bulk of the time period at issue in the Amended Complaint.

IV.     CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is GRANTED as to plaintiffs' claims arising under the PACT Act and N.Y. PHL § 1399-ll and DENIED as to all other claims.

The Clerk of Court is directed to close the motion at ECF No. 21.

SO ORDERED.

Dated:       New York, New York
             September 16, 2015

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge