UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
THE STATE OF NEW YORK and THE CITY OF                        :
NEW YORK,                                                    :
                                                             :
                               Plaintiffs,                   :
                                                             :
                     -v-                                     :
                                                             :
UNITED PARCEL SERVICE, INC.,                                 :
                                                             :
                               Defendant.                    :
                                                             :
------------------------------------------------------------ X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____             │
│ DATE FILED: April 19, 2016          │
└─────────────────────────────────────┘
```

15-cv-1136 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

In this action, the State and City of New York (the "State" and "City," respectively) allege various federal and state law claims against defendant United Parcel Service, Inc. ("UPS") relating to UPS's alleged shipping of contraband cigarettes. (Third Am. Compl. ("TAC"), ECF No. 189.) Pending before the Court is UPS's motion for partial summary judgment seeking dismissal of the seventh through twelfth claims alleged in plaintiffs' Third Amended Complaint arising under the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C. § 375 et seq., and New York Public Health Law § 1399-ll ("PHL § 1399-ll"). (ECF No. 172.) The motion primarily concerns a question of statutory interpretation initially raised in UPS's motion to dismiss an earlier complaint pursuant to Rule 12(b)(6), and which the Court now must consider more fully based on the record developed by the parties in light of the Court's prior interpretation.

Specifically, UPS's motion turns on whether it has established its entitlement to judgment as a matter of law with respect to plaintiffs' PACT Act claims on the basis that it is exempt from liability pursuant to 15 U.S.C. §376a(e)(3); UPS's entitlement to judgment as a matter of law with respect to plaintiffs' PHL § 1399-ll claims similarly flows from that determination.  The particular exemption upon which UPS primarily relies states that UPS is exempt based on the Assurance of Discontinuance ("AOD") that it entered into with the New York State Attorney General ("NYAG") on October 21, 2005 "if [that] agreement[ ] is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers."  15 U.S.C. § 376a(e)(3)(B)(ii)(I).

As set forth more fully below, in initially dismissing plaintiffs' PACT Act claims as those claims were alleged in the then-operative Amended Complaint, the Court interpreted § 376a(e)(3)(B)(ii)(I) to mean that UPS is exempt if the AOD has appropriate breadth (i.e. nationwide effect), explaining that Congress merely sought to codify the status quo with respect to UPS and other common carriers who had already agreed to curb illegal cigarette deliveries by instituting nationwide policies. New York v. United Parcel Service, Inc. ("UPS I"), No. 15-cv-1136 (KBF), 2015 WL 5474067, at *7-9 (S.D.N.Y. Sept. 16, 2015).  In the absence of any allegations suggesting that any state did not honor the AOD, the Court left open the question of how a state may honor the AOD such that it has nationwide effect.  Id. at *8.  Now that plaintiffs have come forward with new allegations and supporting evidence that they argue is sufficient to show that the AOD is not honored nationwide, the

issue that the Court previously left unresolved is ripe for determination.  It is also necessary for the Court to further elaborate on its interpretation of the exemption.

The pertinent language in § 376a(e)(3)(B)(ii)(I) that is the subject of the parties' dispute is not a model of clarity.  The clause conditioning UPS's qualification for exemption on whether the AOD "is honored throughout the United States" does not clearly indicate what that phrase is supposed to connote, or who must do the "honoring."  The parties' positions in their motion papers diverge significantly with respect to these questions.  UPS primarily argues that § 376a(e)(3)(B)(ii)(I), which explicitly lists the AOD (and two analogous agreements respectively entered into by DHL Holdings USA, Inc. ("DHL") and Federal Express Corporation ("FedEx") and certain of their affiliates with the NYAG), rendered it and the other carriers exempt from the PACT Act's requirements as of the date of the statute's enactment.  UPS further argues that while it could lose its exemption if it no longer gives the AOD nationwide effect or the AOD's existence is no longer recognized by states nationwide, plaintiffs have failed to create a genuine issue of fact that either of those conditions is met.

Plaintiffs, in contrast, contend that § 376a(e)(3)(B)(ii)(I) did not exempt UPS when enacted, but rather provided only for the possibility of future exemption upon all fifty states affirmatively assenting to the AOD, a condition that plaintiffs assert UPS has never fulfilled.  Relying on evidence that UPS has shipped cigarettes to consumers despite a policy not to do so, and declarations from seven state attorneys general and a representative of the National Association of Attorneys General

("NAAG"), plaintiffs argue that UPS is not entitled to the exemption because the AOD has never been honored or recognized by all states in the nation.  In relation to UPS's motion to dismiss (in other words, before the Court rendered its initial interpretation of § 376a(e)(3)(B)(ii)(I)), plaintiffs had argued that the "is honored" language refers to whether UPS has itself complied with the terms of the AOD (e.g. interpreting the language as "UPS <u>has</u> honored") and that its mere allegation in the Amended Complaint of non-compliance was sufficient to defeat the exemption at the Rule 12(b)(6) stage.

The legislative history and overall structure of the statutory scheme support that Congress intended that UPS be exempt from PACT Act claims as of the date of statutory enactment and based on facts then in existence; the Court also determines that with respect to this motion, plaintiffs would need to raise a triable issue on the question of whether the factual basis for the exemption has changed, thereby altering UPS's entitlement to the exemption.  Plaintiffs' alternative readings would render § 376a(e)(3)(B)(ii)(I) essentially meaningless by imposing requirements that could never plausibly be fulfilled even if UPS was fully effective in preventing the shipment of contraband cigarettes.

In the factual materials that plaintiffs submitted in opposition to the pending motion, plaintiffs have not raised a triable issue of fact as to whether the basis for UPS's exemption has changed.  In other words, on the record currently presented to it, the Court would grant UPS's motion.  However, the Court understands that plaintiffs have set forth only a portion of their evidence supporting the claim that

UPS does not actually maintain nationwide policies as required by the AOD.  In light of the fact that the Court has modified its interpretation of § 376a(e)(3)(B)(ii)(I) at this more advanced stage, the Court believes that plaintiffs should not be faulted to the extent they provided only exemplar evidence of UPS's non-compliance with the nationwide policies it adopted pursuant to the AOD.  Therefore, the Court will allow plaintiffs to make a further submission of evidentiary support—with limited additional argument by the parties relating solely to those submissions—as further set forth below before definitively resolving UPS's motion.

I.    BACKGROUND[1]

   A.    Factual Background

      1.    Background on the AOD

In 2004, the NYAG began investigating residential deliveries made by UPS, FedEx, and DHL in relation to alleged violations of N.Y. PHL § 1399-ll.  (UPS's 56.1 ¶ 1.)[2]  PHL § 1399-ll, which was first enacted in 2000, prohibits carriers from knowingly transporting cigarettes to any person in New York reasonably believed by such carrier to not be an authorized consignee.  UPS cooperated with the NYAG's investigation.  (UPS's 56.1 ¶ 1.)

---

[1] The Court here recounts only that background which is relevant to resolving UPS's pending motion.  The Court also incorporates its prior decisions in this action, including UPS's motion to dismiss and plaintiffs' motion to strike certain affirmative defenses, for further background on this litigation.  See UPS I, 2015 WL 5474067; State of New York v. United Parcel Serv., Inc. ("UPS II"), No. 15-cv-1136 (KBF), 2016 WL 502042 (S.D.N.Y. Feb. 8, 2016).

[2] The notation "UPS's 56.1" refers to UPS's statement of undisputed material facts, submitted under Local Rule 56.1.  (ECF No. 176.)  This decision relies only on those facts that plaintiffs did not dispute with citations to admissible evidence in their Rule 56.1 counterstatement (ECF No. 195) (referred to herein as "Pls.' 56.1 Cstmt.").  See Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

On February 23, 2005, NAAG[3] sent UPS a letter requesting that the company take appropriate steps to ensure that it does not facilitate violations of federal and state laws by means of the shipment and delivery of contraband tobacco products sold via the internet.  (UPS's 56.1 ¶ 2; McPherson Decl., Ex. 8, ECF No. 175-8.)  The letter, which was signed by 41 states and U.S. territories,[4] requested that UPS (along with other carriers and major credit card companies) attend a meeting scheduled for March 17, 2005 with attorneys general and their staff.  (UPS's 56.1 ¶ 2.)  UPS attended the March 17 meeting with representatives of other states to discuss the illegal sale of tobacco products on the internet and related issues. (UPS's 56.1 ¶ 3.)  The NAAG followed up the March 17 meeting with a letter, dated April 12, 2005, listing "Requested Actions for Carriers" that had been presented and discussed at the meeting  (UPS's 56.1 ¶ 3; McPherson Decl., Ex. 9, ECF No. 175-9.)

UPS ultimately agreed to alter its policies to prohibit the delivery of cigarettes to consumers nationwide, entering into an Assurance of Discontinuance (the "AOD") with the NYAG regarding its transportation of cigarettes on October 21, 2005.  (UPS's 56.1 ¶ 4; see Cook Decl., Ex. 1 ("AOD") ¶ 45, ECF No. 174-1.)  All of the procedures that the NAAG sought UPS and other carriers to implement were

---

[3] The National Association of Attorneys General is an organization whose members are the attorneys general of each of the fifty states, five territories and the District of Columbia that facilitates interaction among its members and assists them in fulfilling the responsibilities of their offices and delivering high quality legal services.  (Proshansky Decl., Ex. 8 ("Hering Decl.") ¶¶ 2, 4, ECF No. 194-8.)  "NAAG has no authority to in any manner legally bind its member attorneys general [as] it is a voluntary association of representatives of sovereign states and takes no actions that purport to represent the policies or legal positions of its members unless expressly authorized to do so."  (Hering Decl. ¶ 5.)

[4] The signatories to the letter included, inter alia, the NYAG and the attorneys general of the seven states that have submitted declarations in support of plaintiffs: California, Connecticut, Idaho, Maryland, New Mexico, Pennsylvania and Utah.  (UPS's 56.1 ¶ 2; McPherson Decl., Ex. 8.)

included in the AOD.  (UPS's 56.1 ¶ 5.)  The AOD obligated UPS to, inter alia: (1) implement and adhere to policies restricting the delivery of cigarettes to consumers on a nationwide basis, (2) investigate shippers that UPS believed to be cigarette retailers, (3) notify shippers believed to be cigarette retailers of UPS's policy restricting the delivery of cigarettes to consumers on a nationwide basis, (4) conduct audits of shippers upon a reasonable belief that the shippers may be delivering cigarettes to consumers, (5) maintain a database of shippers suspected of being cigarette retailers, (6) train employees about its policy of restricting the delivery of cigarettes to consumers on a nationwide basis, and (7) submit a report of its compliance with the terms of the AOD.  (UPS's 56.1 ¶ 5.)  UPS submitted the required report to the NYAG regarding its compliance with the AOD on December 20, 2005.  (UPS's 56.1 ¶ 6.)  The AOD explicitly preserved UPS's right to seek a ruling that PHL § 1399-ll is unconstitutional, preempted by federal law or otherwise unenforceable against UPS.  (AOD ¶ 45.)

    Three days after the execution of the AOD, on October 24, 2005, David Nocenti, then-Counsel to the NYAG, emailed Laura Kaplan, Deputy Attorney General in the California Attorney General's Office, stating that "we reached agreement with UPS regarding their shipments of cigarettes to consumers" and explaining that the "UPS agreement is similar to the DHL agreement, most notably because UPS has agreed to stop the direct shipment of cigarettes to consumers nationwide."  (UPS's 56.1 ¶ 10.)  Ms. Kaplan replied that same day, stating that she had "a few questions about the effect of the agreement on other states" and asking

whether "UPS agreed to institute a nationwide policy prohibiting the shipments of cigarettes to consumers[,] even to those states not a party to the [AOD] and which do not prohibit shipment of cigarettes to consumers?"  (UPS's 56.1 ¶ 11.)  Mr. Nocenti replied that same day, stating "Yes, like DHL, UPS has agreed to institute a nationwide policy prohibiting the shipment of cigarettes to consumers, even to those states not a party to the [AOD] and which do not prohibit shipment of cigarettes to consumers."  (UPS's 56.1 ¶ 12.)  Approximately three years later, on October 29, 2008, Ms. Kaplan forwarded Mr. Nocenti's email to Michael Hering (NAAG Tobacco Center Director and Chief Counsel), Bill Lieblich (NAAG Tobacco Center Deputy Chief Counsel), and Dana Biberman (Chief of the NYAG's Tobacco Compliance Bureau), stating "I have forwarded an e-mail from David Nocenti at the time the [AOD] was signed on the applicability of the agreement to the states. Clearly, it does apply to the states."  (UPS's 56.1 ¶ 13.)

It is undisputed that, as of the filing of UPS's motion, no state has notified UPS of a belief that the AOD does not have nationwide scope or that UPS does not honor the AOD nationwide.  (UPS's 56.1 ¶ 14.)  Beginning in December 2015, plaintiffs provided UPS's counsel with declarations from seven assistant attorneys general—including from California,[5] Idaho, Utah, Connecticut, New Mexico, Maryland and Pennsylvania—asserting that their states do not honor UPS's AOD. (UPS's 56.1 ¶ 15; Pls.' 56.1 Cstmt. ¶ 15.)  Although UPS asserts that, since entering into the AOD, it has continued to administer and enforce a nationwide policy

---

[5] The declarant from the California Attorney General's Office, Laura Kaplan, was the other participant in the above exchange with Mr. Nocenti.  (See UPS's 56.1 ¶ 15(a).)

prohibiting the shipment of cigarettes to consumers (UPS's 56.1 ¶ 8; Cook Decl. ¶ 6, ECF No. 174), plaintiffs counter that UPS has and does in fact deliver contraband cigarettes to customers (Pls.' 56.1 Cstmt. ¶ 8).[6]  The evidence that plaintiffs have proffered relating to UPS's non-adherence to its policies includes three declarations, excerpts from two depositions, and one chart produced in discovery showing deliveries that UPS made for one reservation seller to various states.  (Proshansky Decl., Exs. 1-5, 7, ECF No. 194.)  The three declarants—Jamie Harris-Bedell, Robert L. Oliver, Sr., and Philip D. Christ—owned or worked at reservation tobacco businesses for whom the declarants assert UPS employees knowingly and repeatedly made deliveries of contraband cigarettes.  Plaintiffs' transcript excerpts are from the depositions of Christ and Bradley J. Cook, UPS's Rule 30(b)(6) witness in this litigation.  The Court further describes these supporting factual materials when addressing whether plaintiffs' submissions have raised a genuine issue of material fact.

### 2.   Background on the PACT Act

The Prevent All Cigarette Trafficking Act ("PACT Act"), enacted on March 31, 2010 and effective as of June 29, 2010, "imposes strict restrictions on the delivery sale of cigarettes and smokeless tobacco."  Red Earth LLC v. United States, 657 F.3d 138, 141 (2d Cir. 2011) (quotation marks omitted).  The PACT Act mandates that delivery sellers comply with shipping and recordkeeping requirements, 15 U.S.C. § 376a(a)-(d), and requires the United States Attorney

---

[6] Although not at issue in this motion, the State alleges a claim against UPS for violation of the AOD.  (TAC ¶¶ 187-95.)

General to compile a list of delivery sellers of cigarettes or smokeless tobacco that have not registered with it or are otherwise not in compliance with the PACT Act, and share that list with state attorneys general, carriers and other delivery services, including the United States Postal Service ("USPS"), id. § 376a(e)(1)(A). The PACT Act further provides that "no person who delivers cigarettes or smokeless tobacco to consumers, shall knowingly complete, cause to be completed, or complete its portion of a delivery of any package for any person whose name and address are on the [above-referenced non-compliance] list." Id. § 376a(e)(2)(A).  The PACT Act confers standing on state attorneys general to bring actions against common carriers for civil penalties and other equitable relief for violations of the statute.  Id. §§ 377(b)(1)(B), 377(b)(2), 378(c)(1).

The PACT Act contains a number of provisions exempting certain entities from the otherwise applicable obligations and liabilities.  The exemptions for common carriers that are pertinent here state:

(3) Exemptions

(A) In general

Subsection (b)(2) and any requirements or restrictions placed directly on common carriers under this subsection, including subparagraphs (A) and (B) of paragraph (2), shall not apply to a common carrier that—

(i) is subject to a settlement agreement described in subparagraph (B); or

(ii) if a settlement agreement described in subparagraph (B) to which the common carrier is a party is terminated or otherwise becomes inactive, is administering and enforcing policies and practices throughout the United States that are at least as stringent as the agreement.

(B) Settlement agreement

A settlement agreement described in this subparagraph—

(i) is a settlement agreement relating to tobacco product deliveries to consumers; and

(ii) includes—

(I) the Assurance of Discontinuance entered into by the Attorney General of New York and DHL Holdings USA, Inc. and DHL Express (USA), Inc. on or about July 1, 2005, the Assurance of Discontinuance entered into by the Attorney General of New York and United Parcel Service, Inc. on or about October 21, 2005, and the Assurance of Compliance entered into by the Attorney General of New York and Federal Express Corporation and FedEx Ground Package Systems, Inc. on or about February 3, 2006, if each of those agreements is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers; and

(II) any other active agreement between a common carrier and a State that operates throughout the United States to ensure that no deliveries of cigarettes or smokeless tobacco shall be made to consumers or illegally operating Internet or mail-order sellers and that any such deliveries to consumers shall not be made to minors or without payment to the States and localities where the consumers are located of all taxes on the tobacco products.

15 U.S.C. § 376a(e)(3).  Pursuant to these exemptions, any requirements or restrictions placed directly on common carriers by the statute do not apply to a common carrier that has entered into a qualifying settlement agreement.  UPS's AOD, which is explicitly named, qualifies "if [it] is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers."

Id. § 376a(e)(3)(B)(ii)(I).  The statute specifically enumerates two other qualifying settlement agreements, the Assurance of Discontinuance entered into by the NYAG and DHL on or about July 1, 2005, and the Assurance of Compliance entered into by the NYAG and FedEx on or about February 3, 2006; all three agreements are subject to the "is honored throughout the United States" conditional clause.  Id.[7]

The PACT Act also separately deals with the issue of preemption of state law.[8]  On the issue of preemption, the PACT Act provides that, except to the extent set forth in the subsequent clause, "nothing in the [PACT Act], the amendments made by that Act, or in any other Federal statute shall be construed to preempt, supersede, or otherwise limit or restrict State laws prohibiting the delivery sale, or the shipment or delivery pursuant to a delivery sale, of cigarettes or other tobacco products to individual consumers or personal residences."  15 U.S.C. § 376a(e)(5)(C)(i).  That provision is limited by the clause which follows, which provides that "[n]o State may enforce against a common carrier a law prohibiting the delivery of cigarettes or other tobacco products to individual consumers or personal residences without proof that the common carrier is not exempt under [§ 376a(e)(3)]."  Id. § 376a(e)(5)(C)(ii) (emphasis added).

_____

[7] Although UPS does not rely on it as a basis to claim exemption from the PACT Act, the statute also contains a separate exemption providing that a common carrier is not subject to civil penalties for violating § 376a(e) if it "has implemented and enforces effective policies and practices for complying with [§ 376a(e)]."  Id. § 377(b)(3)(B)(i) (emphasis added).

[8] In 2008, prior to the enactment of the PACT Act, the Supreme Court struck down a Maine law that (1) required state-licensed tobacco shippers to utilize delivery companies that provide recipient-verification services confirming that the buyer is of legal age and (2) imposed a presumption of carrier knowledge that a shipment contains unlicensed tobacco products in certain circumstances, on the ground that the law was preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1).  Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364, 372-73 (2008).  The PACT Act specifically addresses any potential conflict that any of its provisions may have with the FAAAA.  See 15 U.S.C. § 376a(e)(9)(C).

B.     Procedural History

On February 18, 2015, the State and City commenced this action by filing a complaint against UPS (ECF No. 1), and filed an Amended Complaint on May 1, 2015 (ECF No. 14).  The Amended Complaint alleged fourteen causes of action seeking various forms of relief under federal and New York law, including, in relevant part, under the PACT Act and N.Y. PHL § 1399-ll.

On May 22, 2015, UPS moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  (ECF No. 21.)  Among the arguments advanced in its motion, UPS contended that the claims brought under the PACT Act were subject to dismissal because that statute expressly exempts UPS from its requirements and plaintiffs failed to adequately allege that UPS was not entitled to the benefit of the exemption due to violations of the AOD.  (UPS's Mem. of Law in Support of Mot. to Dismiss the Am. Compl. at 17-18, ECF No. 22.)  UPS also argued that, as a result of its PACT Act exemption, plaintiffs' claims brought under PHL § 1399-ll were preempted by 15 U.S.C. § 376a(e)(5)(C)(ii), and therefore also subject to dismissal.  In their opposition briefs, plaintiffs countered that the Amended Complaint adequately alleged that the AOD was not honored throughout the United States based on allegations that UPS had breached the AOD, and therefore UPS was not exempt under § 376a(e)(3).  (ECF No. 28 at 8-9; ECF No. 29 at 12-13.)  On July 30, 2015, the Court held oral argument on plaintiffs' motion, during which the parties maintained the arguments regarding the PACT Act that they had raised in their briefing.  (Jul 30, 2015 Oral Arg. Tr. at 11-16, 39-40, ECF No. 33.)

Following oral argument, on August 26, 2015, the Court issued an Order informing the parties that it was considering a reading of § 376a(e)(3)(B)(ii)(I) that had not previously been advanced by either party.  (ECF No. 37.)  The Court explained that, under its proposed alternative reading, § 376a(e)(3)(B) is a definitional provision that merely defines the types of settlement agreements that qualify for exemption and does not purport to reach questions of compliance or non-compliance with obligations assumed under any particular agreement.  Because the parties had not addressed this statutory reading in their papers or at oral argument, the Court gave the parties an opportunity to submit supplemental briefing that did so.  The parties each filed supplemental briefs on September 9, 2015.  (ECF Nos. 44, 45.)  UPS's supplemental brief argued that the text and structure of the PACT Act compelled the Court's interpretation, and that it furthered Congressional intent.  (ECF No. 44.)  Plaintiffs' supplemental brief continued to advocate for the reading they had advanced in their earlier moving papers—that UPS is entitled to the exemption only if it has fully complied with the requirements imposed in the AOD and that the mere allegation in a complaint of a failure to comply is sufficient to vitiate the exemption.  (ECF No. 45.)

On September 16, 2015, this Court issued a decision that granted in part and denied in part UPS's motion, in relevant part dismissing plaintiffs' claims brought pursuant to the PACT Act and PHL § 1399-ll.  UPS I, 2015 WL 5474067.  The Court's dismissal of plaintiffs' PACT Act claims was premised on the interpretation of § 376a(e)(3)(B) that the Court had advanced in its August 26 Order—namely,

that § 376a(e)(3)(B) "is a definitional provision that merely defines the types of settlement agreements that qualify for exemption" and "does not purport to reach questions of compliance or noncompliance with obligations assumed under any particular agreement." Id. at *7.  The Court concluded that, inter alia, because the Amended Complaint failed to allege that the AOD has not been recognized by states nationwide, there was no need for the Court to "determine the precise procedure by which a state must honor an agreement" to resolve UPS's motion. Id. at *8.  The Court dismissed plaintiffs' PHL § 1399-ll claims on the ground that they were preempted pursuant to 15 U.S.C. § 376a(e)(5)(C)(ii). Id. at *9.

On October 21, 2015, plaintiffs moved for leave to file a Second Amended Complaint, seeking to add back the previously dismissed claims brought under the PACT Act and PHL § 1399-ll.  (ECF No. 68.)  The basis for the motion was that plaintiffs had not anticipated the Court's interpretation of the PACT Act, and as a result had not previously had an opportunity to plead these claims in light of that interpretation.  On November 23, 2015, the Court granted plaintiffs' motion (ECF No. 85), and plaintiffs filed their Second Amended Complaint on November 30, 2015 (ECF No. 86).

On January 25, 2016, plaintiffs moved for leave to file a Third Amended Complaint for the purpose of broadening the allegations supporting certain of their existing claims based on information that plaintiffs had obtained during discovery.  (ECF No. 149.)  On February 18, 2016, the parties filed a joint stipulation in which UPS consented to plaintiffs' motion (ECF No. 183); the Court so ordered the

stipulation on February 22, 2016 (ECF No. 185).  Plaintiffs filed the Third Amended Complaint, which is now operative, on February 24, 2016.  (TAC, ECF No. 189.) Claims seven, eight, nine and ten of the Third Amended Complaint seek civil damages and penalties under the PACT Act; claims eleven and twelve seek civil penalties pursuant to PHL § 1399-ll.  (Third Am. Compl. ¶¶ 148-86.)  UPS answered the Third Amended Complaint on March 16, 2016.  (ECF No. 199.)

On February 2, 2016, UPS filed the pending motion for partial summary judgment, seeking dismissal of plaintiffs' claims under the PACT Act and PHL § 1399-ll.  (ECF No. 172.)[9]  Plaintiffs opposed the motion on March 2, 2016.  (ECF No. 196.)  UPS filed its reply brief, and the motion became fully briefed, on March 16, 2016.  (ECF No. 200.)

## II.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Hicks v. Baines,

---

[9] Although the pending motion was filed prior to plaintiffs' filing of the Third Amended Complaint, the newly added allegations do not bear on the issues raised in this motion.

593 F.3d 159, 166 (2d Cir. 2010) (quoting <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir. 1995)).  "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995) (citations omitted).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)) (internal quotation mark omitted).

## III.  DISCUSSION

Resolution of the pending motion turns on whether UPS has shown its entitlement to rely on the exemption set forth in 15 U.S.C. § 376a(e)(3)(B)(ii)(I) as a defense to plaintiffs' PACT Act and PHL § 1399-<u>ll</u> claims.[10]  To determine whether UPS is entitled to judgment as a matter of law on these claims, the Court must first fully set forth its interpretation of the relevant portions of § 376a(e)(3).  The Court next addresses whether UPS has met its burden of showing that plaintiffs have failed to raise a genuine issue of material fact as to UPS's qualification for exemption in light of the Court's interpretation.  For the reasons set forth below, the Court concludes that UPS has done so on the current record, but will, as explained below, allow plaintiffs an opportunity to present additional supporting evidence of

---

[10] Plaintiffs do not dispute that, to the extent that UPS is exempt from the PACT Act under § 376a(e)(3), it is also entitled to dismissal of plaintiffs' PHL § 1399-<u>ll</u> claims pursuant to § 376a(e)(5)(C)(ii).

UPS's non-adherence to its nationwide policies to curb the delivery of contraband cigarettes.

    A.    <u>PACT ACT</u>

        1.    <u>The Court's Interpretation of 15 U.S.C. § 376a(e)(3)(B)(ii)(I)</u>

Section 376a(e)(3)(B)(ii)(I) explicitly enumerates the AOD as being one of three agreements that qualify a carrier for exemption from the PACT Act's requirements "if [it] is honored throughout the United States to block illegal deliveries of cigarettes or smokeless tobacco to consumers."  15 U.S.C. § 376a(e)(3)(B)(ii)(I).  The threshold interpretive dispute between the parties is the role that the phrase "is honored throughout the United States" plays in the exemption and the means by which a suing state may provide proof that a settlement agreement is not honored or how a carrier may show that it is honored.

While the Court's starting point in interpreting § 376a(e)(3)(B) is the plain language of the statute, <u>United States v. Dauray</u>, 215 F.3d 257, 260 (2d Cir. 2000), as the Court previously explained in its decision on UPS's motion to dismiss, the phrase "is honored throughout the United States" in § 376a(e)(3)(B)(ii)(I), standing alone, does not provide a satisfactory answer as to what is required.  While the Court believes that "is honored" most plausibly means "is recognized," <u>see</u> HONOR, Black's Law Dictionary (10th ed. 2014) (defining honor as "[t]o recognize" among other definitions), "honor" could also mean, <u>inter alia</u>, to "fulfill (a duty or obligation)" or "abide by the terms of (an agreement)."[11]  That is, "is honored" could

---

[11] HONOR, Oxford English Dictionary (OED Third Ed., March 2014) (available at http://www.oed.com/view/Entry/88228?rskey=6pwt3c&result= 2&isAdvanced= false#eid).

mean "is honored [by states nationwide]," or "is honored [by UPS nationwide]," or both. The immediately surrounding language of this conditional clause does not allow a clear and unambiguous meaning to jump off the page. The lack of clarity as to the "is honored" conditional clause is magnified because the provision, which uses the passive voice, does not identify <u>who</u> must "honor" the settlement agreement or <u>how</u> that fact is communicated. The pivotal language of this exemption is, in other words, hard to decipher. Although the Court believes that the interpretation it adopts below is as well-supported by the plain text of the statute as any proposed alternative, the Court also relies on "the statutory context, 'structure, history, and purpose'" of the statute to make a definitive determination. <u>Abramski v. United States</u>, 134 S. Ct. 2259, 2267 (2014) (quoting <u>Maracich v. Spears</u>, 133 S. Ct. 2191, 2209 (2013)); <u>see also</u> <u>King v. Burwell</u>, 135 S. Ct. 2480, 2483 (2015) (Where a word is susceptible to more than one interpretation, "the Court must read the words in their context and with a view to their place in the overall statutory scheme." (quotation marks omitted)).

Based on the plain language of the relevant provisions and the statutory context, structure, legislative history and purpose of the PACT Act (and, specifically, the purpose of § 376a(e)(3)(B)(ii)(I))—which the Court lays out below—the Court essentially adheres to the interpretation set forth in its decision in relation of UPS's motion to dismiss, but with further elaboration made necessary at this later stage on a more fully developed record. In granting in part UPS's motion to dismiss, the Court previously stated that UPS is entitled to the exemption if the

AOD has appropriate breadth and that the phrase "is honored" means "is recognized" by all states in the nation.  UPS I, 2015 WL 5474067, at *7.  Based on the parties' more fulsome arguments in relation to the pending motion, and the evidence that plaintiffs have developed to support their effort to revive their PACT Act claims, the Court has come to the conclusion that "is honored" also requires that UPS give the AOD nationwide breadth.  Thus, it is necessary for the Court to further explain its interpretation of § 376a(e)(3)(B)(ii)(I) and understanding of how the exemption functions.

The Court now concludes, as it did in its Opinion & Order of September 16, 2015, that § 376a(e)(3)(B) is a definitional provision that serves to define the types of settlement agreements that qualify for exemption.  In defining a sub-category of enumerated qualifying agreements in § 376a(e)(3)(B)(ii)(I), the PACT Act sought to preserve the status quo as to UPS and two other carriers by exempting them from the PACT Act's requirements as of the date of enactment.  The Court further continues to believe that § 376a(e)(3)(B) does not itself reach questions of compliance or non-compliance with obligations assumed under any particular agreement.  Put another way, this provision does not mean that if the AOD is, on a shipment-by-shipment (or incident-based) review, not fully and always in fact complied with, that UPS loses its exemption.

Whatever the provision means, it is clear that as of the date of enactment, UPS was viewed by the NAAG and Congress as entitled to its protections.  That being said, the fact that UPS (and the other enumerated carriers) was exempt from

the date of enactment does not necessarily mean that UPS (or these other carriers) remains exempt in perpetuity.  As plaintiffs argue, if that was Congress's intention, the PACT Act would not have gone to the trouble of imposing any condition on exemption, and instead would have merely identified UPS and the other carriers as exempt, plain and simple.  The Court is persuaded that the bargain struck by the statute is, rather, that the carrier retains its exempt status—that is, it fits within the definitional provisions of § 376a(e)(3)(B)—only so long as it continues to give nationwide effect to the applicable settlement agreement and so long as there is no material change in states' recognition of the existence of the AOD and its nationwide scope.  Those conditions explain how Congress sought to preserve the status quo by granting qualifying carriers an exemption at the time of passage, but not to grant an exemption in perpetuity.

As the Court stated in its prior decision, § 376a(e)(3)(B)(ii)(I) was intended to—and is properly interpreted as—codifying the status quo as to UPS and the other carriers who had entered into agreements of nationwide scope and effect with the NYAG prior to the PACT Act's enactment.  The statute, therefore, provided UPS with an exemption from the time that the PACT Act was enacted.  It follows that the conditions in existence at the time the statute was passed were sufficient to make UPS exempt; by saying that "'is honored throughout the United States' means 'is recognized' by all states in the nation," UPS I, 2015 WL 5474067, at *7, the Court meant that UPS was exempt as long as the AOD's existence was recognized nationwide and that the obligations imposed in the AOD are given nationwide

effect—a factual predicate that Congress understood existed at the time of enactment.

As stated above, however, although UPS had met the requirements to entitle it to exemption at the time the PACT Act was enacted, the Court expands upon its interpretation by explaining that the statute does not provide a necessarily perpetual exemption.  Instead, UPS could lose its exemption based on a material change in circumstances, either by UPS no longer giving nationwide effect to the AOD or states no longer recognizing its active existence.  Thus, the Court clarifies that it is both UPS <u>and</u> the states that each, in a general sense, must honor and recognize the AOD and its nationwide effect.  The statute does not, in contrast, require that all fifty states affirmatively assent to the settlement agreement as having preclusive effect of its ability to seek remedies under the PACT Act and/or state law against UPS.[12]  To hold otherwise would be inconsistent with the Court's view that the exemption was meant to preserve the status quo vis-à-vis UPS and the other two carriers who had already entered into settlement agreements and would render the enumerated exemptions a nullity, an outcome that cuts against what indicia exists as to Congress's intention.  Below, the Court sets forth its support for the above interpretation.

---

[12] To the extent that plaintiffs argue that the Court previously determined that UPS loses its exemption if plaintiffs provide evidence that even one state does not honor the AOD (see Proshansky Decl., Ex. 9, ECF No. 194-9), the Court rejects the notion that its statement at the January 12, 2016 conference, without the benefit of briefing on the pending motion, represented the Court's definitive interpretation of § 376a(e)(3)(B)(ii)(I).  In any event, as explained below, plaintiffs have failed to show that any state does not honor the AOD in the sense that the Court deems relevant.

First, the Court's interpretation is well-supported by the plain text.  As the Court stated when ruling on UPS's motion to dismiss, use of the word "includes" at the start of § 376a(e)(3)(B)(ii) signals that what follows is a list of that which is encompassed, see Samantar v. Yousuf, 560 U.S. 305, 317 (2010) ("[U]se of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."), supporting the view that § 376a(e)(3)(B) serves as a definitional section, rather than as one that imports questions of compliance.  As this Court has observed, the "concepts of breadth and behavior are quite different."  UPS I, 2015 WL 5474067, at *8.  Section 376a(e)(3)(B)(ii)(I), in turn, defines a qualifying "settlement agreement" to include the AOD, as well as the analogous agreements entered into by DHL and Federal Express, "if each of those agreements is honored throughout the United States."  15 U.S.C. § 376a(e)(3)(B)(ii)(I).  The use of the phrase "is honored"—rather than "becomes honored"—is consistent with an understanding that the AOD exempted UPS from the time the PACT Act was enacted, not only upon the occurrence of some future contingency.

In adopting this reading of § 376a(e)(3)(B)(ii)(I), the Court observes that it would indeed be odd for Congress to explicitly identify three settlement agreements that notably had already been in effect for several years at the time of the PACT Act's enactment but intend that those settlement agreements only qualify for exemption if all states—including those several who had not participated in the March 2005 NAAG meeting—subsequently affirmatively assented to those agreements by a mechanism or procedure not explained anywhere in the statute nor

mentioned in the legislative history.  Such a requirement makes little sense as Congress undoubtedly would have been aware that it could pose an insurmountable obstacle for UPS (or the other carriers) to get every state to affirmatively assent to an agreement between UPS and the NYAG in lieu of seeking penalties under the PACT Act or state law.  Congress knew that the three enumerated settlement agreements provided no right of enforcement to any state other than New York. That plaintiffs have not offered any indication that UPS or any other carrier sought affirmative assent to their respective agreements by any state after the enactment of the PACT Act is strong evidence that no such arrangement was ever contemplated.

Second, the Court's interpretation is also informed and supported by the overall structure of § 376a(e)(3) and the text surrounding the exemptions arising from the enumerated agreements.  K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").  In addition to § 376a(e)(3)(B)(ii)(I), which enumerates the AOD and the two analogous settlement agreements entered into by DHL and FedEx, § 376a(e)(3) separately provides for two other sets of circumstances that could qualify a carrier for PACT Act exemption: §§ 376a(e)(3)(B)(ii)(II) and 376a(e)(3)(A)(ii).  The Court looks at each in turn.

Section 376a(e)(3)(B)(ii)(II) identifies a category of unenumerated agreements that qualify for exemption.  As the Court explained in its decision on UPS's motion

24

to dismiss, that provision is particularly instructive because it acts in parallel to §
376a(e)(3)(B)(ii)(I) and is also relevant under the <u>noscitur a sociis</u> canon of
construction.  <u>See</u> <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 575 (1995) ("[A] word is
known by the company it keeps.").  Section 376a(e)(3)(B)(ii)(II) states that a
qualifying agreement includes "any other active agreement between a common
carrier and a State <u>that operates throughout the United States</u> to ensure that no
deliveries of cigarettes or smokeless tobacco shall be made to consumers . . . without
payment to the States . . . where the consumers are located of all taxes on the
tobacco products."  15 U.S.C. § 376a(e)(3)(B)(ii)(II) (emphasis added).  The phrase
"that operates throughout the United States," even more so than the phrase "is
honored throughout the United States," suggests that the conditional clause is
directed at geographic breadth rather than the signatory's degree of compliance
with the agreement.

Section 376a(e)(3)(A)(ii) accounts for the circumstance in which a once
qualifying agreement (i.e. an agreement described in § 376a(e)(3)(B)(ii)) is no longer
operative.  That provision provides that a carrier which was a party to a qualifying
settlement agreement that is "terminated or otherwise becomes inactive" may
retain the exemption if it is "administering and enforcing policies and practices
<u>throughout the United States</u> that are at least as stringent as the agreement."  15
U.S.C. § 376a(e)(3)(A)(ii) (emphasis added).  This provision is supportive of the
Court's interpretation because it shows that the statute contemplates that a carrier
may retain the exemption without the acquiescence or consent of all fifty states as

long as it continues to have nationwide policies and practices that impose obligations on the carrier as stringent as the settlement agreements—such as the AOD—of which Congress was aware.  Notably, this exemption does not preface "policies and practices" with the word "effective."  Again, based on the inference that Congress sought the exemptions to be read consistently with one another, use of the language "administering and enforcing policies and practices throughout the United States" in this exemption supports the view that "is honored throughout the United States" refers to geographic breadth and means that the carrier must give the settlement agreement nationwide effect.  It would make no sense for a carrier with an active qualifying settlement agreement with one state to retain its exemption only if all fifty states continue to affirmatively assent to the agreement having preclusive effect, but that a carrier whose agreement becomes inactive or is terminated would not need the continued assent of all fifty states to retain its exemption.  Nat. Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir. 2001) ("[A]bsurd results are to be avoided and internal inconsistencies in the statute must be dealt with.").[13]

Third, the context in which the PACT Act—and, specifically, the exemption provision at issue—was passed also supports the Court's interpretation over plaintiffs' interpretation.  That context entails consideration of the development of

---

[13] Plaintiffs, citing to draft language and legislative history relating to the 2007 version of the PACT Act, argue that the Court should essentially import the word "effectively" into the phrase "administering and enforcing policies and practices."  (Pls.' Mem. of Law in Opp. to UPS's Mot. for Partial Summ. J. ("Pls.' Opp. Br.") at 15-16, ECF No. 196.)  The Court rejects this argument because plaintiffs' evidence, relating to a prior version of the bill, is inapposite.  No form of the word "effective" was included in the adopted version of § 376a(e)(3), but was used in the separate exemption provided for elsewhere in the statute in § 377(b)(3)(B)(i).

regulation of the direct shipment of cigarettes to consumers, the legislative history of the PACT Act, and the statute's purpose (which is, of course, informed by the legislative history).  See Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for S. California, 508 U.S. 602, 627 (1993) (stating that in the "usual case of textual ambiguity" a court should turn to "the legislative purpose as revealed by the history of the statute"); see also Puello v. Bureau of Citizenship & Immigration Servs., 511 F.3d 324, 327 (2d Cir. 2007) (when considering legislative history, a court must "construct an interpretation that comports with the statute's primary purpose and does not lead to anomalous or unreasonable results").

Although just one piece of the legislative puzzle, the context in which the AOD came about and contemporaneous beliefs as to what it sought to and did accomplish (including those of the NYAG and representatives of other states), inform the Court's view as to what the status quo was and what expectations would have been at the time the PACT Act was enacted.  As recited above, UPS and the NYAG entered into the AOD a few months after UPS and other carriers participated in a meeting convened by the NAAG regarding, inter alia, the illegal sale of tobacco products on the internet.  (UPS's 56.1 ¶¶ 3-4.)  Although plaintiffs dispute that other states worked with the NYAG to reach an agreement with UPS (Pls.' 56.1 Cstmt. ¶ 2), the AOD provided for all of the procedures that the NAAG had sought UPS to implement (UPS's 56.1 ¶ 5), suggesting that there was a consensus or at least some input provided by other states.

The involvement and/or acquiescence of other states and an understanding that the AOD had nationwide scope and effect is further supported by events occurring immediately following the parties' agreement to the AOD.  Shortly after executing the AOD, David Nocenti, counsel to the NYAG, sent emails to Laura Kaplan, Deputy Attorney General of California, confirming that in the AOD UPS had agreed to "stop the direct shipment of cigarettes to consumers nationwide" and "institute a nationwide policy prohibiting the shipment of cigarettes to consumers." (UPS's 56.1 ¶¶ 10-11.)  In an email that Ms. Kaplan sent three years later to individuals at the NAAG and NYAG—around when the PACT Act was under consideration—she expressed the view that that the AOD "[c]learly . . . does apply to the states."  (UPS's 56.1 ¶ 13.)  These communications support the conclusion that the AOD was perceived to have nationwide effect, and to be operating throughout the United States, from the time it was entered into and up through the time of the PACT Act's enactment.  Plaintiffs, in contrast, have presented no communications indicating that anyone perceived the AOD as not having nationwide effect or being honored throughout the United States at any point prior to this litigation.

Next, the legislative history of the PACT Act itself also supports the Court's interpretation that the agreements enumerated in § 376a(e)(3)(B)(ii)(I) were understood to have met the exemption requirements at the time of the law's enactment.  At the outset, the evidence before Congress was that UPS, DHL and FedEx had all already entered into agreements that the carriers were giving

nationwide effect.  See, e.g., Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing on H.R. 4081 & H.R. 3689 Before the Subcomm. on Crime, Terrorism, & Homeland Sec. of the H. Comm. on the Judiciary, 110th Cong. (May 1, 2008) ("2008 Hearing"), at 79 (Statement of David S. Lapp, Chief Counsel, Tobacco Enforcement Unit, Office of the Attorney Gen. of Md., testifying on behalf of NAAG) ("Along with other State attorneys general, we have attained agreements with . . . the major delivery companies, including UPS, FedEx and DHL, all to stop Internet sales of cigarettes."); 2008 Hearing at 124 (Statement of Eric Proshansky, Deputy Chief, Division of Affirmative Litigation, New York City Law Department) ("The states, acting through the [NAAG], and with the assistance of the Bureau of Alcohol, Tobacco, Firearms & Explosives, negotiated an unprecedented set of agreements with . . . common carriers in which members of those industries have pledged to end any participation in the Internet cigarette business.").

Furthermore, much of the legislative history identified by UPS, which relates to the final bill that contained the exemption, supports the notion that § 376a(e)(3)(B)(ii)(I) was included to prevent the imposition of onerous requirements on carriers who had already entered into agreements to halt the delivery of contraband cigarettes and to preserve the status quo for those carriers.  See 155 Cong. Rec. S5822-01, 2009 WL 1423723, at *104 (May 21, 2009) (statement of Sen. Kohl, sponsor of Senate version of bill) ("It is important to point out that this bill has been carefully negotiated with the common carriers, including UPS, to ensure

that it does not place any unreasonable burdens on these businesses.  In recognition

of UPS and other common carriers' agreements to not deliver cigarettes to

individual consumers on a nationwide basis, pursuant to agreements with the State

of New York, we have exempted them from the bill provided this agreement

remains in effect.").  This statement by Senator Kohl, a sponsor of the PACT Act, is

indicative of Congress's intent for UPS, DHL and FedEx to obtain the benefit of the

exemption from the date of enactment.  A 2008 House Report discussing the

proposed exemptions also contains additional evidence that Congress understood

that the carriers already subject to settlement agreements would not have to fulfill

any additional conditions to render the exemption applicable.  See H.R. Rep. No.

110-836, at 24 (Sept. 9, 2008) ("Finally, the subsection provides a limited exception

from these requirements for a common carrier with an active settlement agreement

with a State, honored nationwide, to block deliveries of cigarettes and smokeless

tobacco or shipments where applicable taxes have not been paid.  The three major

common carriers—United Parcel Service, FedEx, and DHL—all have such

agreements with the New York State Attorney General's office." (emphasis added)).

 Additional legislative history shows that exempting UPS and the other

carriers at the time of enactment does not undermine the statutory purpose,

because that history shows that the statute was aimed primarily at eliminating

deliveries of illegal, untaxed cigarettes by the U.S. Postal Service and making

cigarettes non-mailable material, rather than at targeting other carriers.  See 2008

Hearing at 79 (statement of David S. Lapp) (explaining that states "have curbed

deliveries by all the major carriers except one: the U.S. Postal Service, which asserts it has no legal authority to refuse cigarette shipments"); 156 Cong. Rec. H1526-01, 2010 WL 956208, at *27 (Mar. 17, 2010) (statement of Rep. Weiner, House sponsor of the PACT Act) ("There's only one common carrier that today still delivers tobacco through the mail—the United States Postal Service."); 2008 Hearing at 9 (testimony of Rep. Weiner) ("Right now, the only one that is carrying [untaxed cigarettes], ironically, is [USPS].  So the only one who would actually be covered by this in a real practical sense is [USPS].  Everyone else would already be following their status quo operations.").[14]  Plaintiffs' argument that the Court's reading guts the PACT Act and undermines the scheme it creates is belied by the fact that Congress was not primarily concerned with UPS and the other major carriers, but rather with USPS.  Although the Court does recognize that application of the exemption has the effect of rendering the forty-nine states other than New York unable to pursue penalties from UPS for illegal shipment of cigarettes, that is true only to the extent that UPS continues to honor the AOD nationwide as set forth above.[15]

---

[14] The record indicates that the NYAG itself understood that the Postal Service was responsible for the bulk of cigarette deliveries.  (See McPherson Decl., Ex. 7, ECF No. 175-7 (October 24, 2005 email from David Nocenti to Laura Kaplan stating "The vast majority of cigarette deliveries, of course, are made by the Postal Service, and this simply highlights the need for enactment of Congressional legislation.").)

[15] Plaintiffs argue that UPS cannot rely on its "unilateral (and uncommunicated) belief in an exemption from the PACT Act" from the time of enactment, stating that there is no authority for the view that "each state should have inferred UPS's belief in a purported PACT Act exemption and spontaneously notified UPS of the state's contrary belief."  (Pls.' Opp. Br. at 19.)  This argument is inapposite to the Court's interpretation, which focuses on Congress's intent to confer an exemption from the time of enactment, not on UPS's belief in its entitlement to such an exemption.

Plaintiffs, for their part, also cite legislative history in their opposition brief that they contend is contrary to the Court's interpretation.  (See Pls.' Opp. Br. at 2-7.)  When considered in its proper context, however, this legislative history actually supports, rather than detracts from, the Court's interpretation.  In support of their view that the PACT Act was intended to significantly broaden the burdens imposed on major carriers like UPS, plaintiffs cite Congressional reports addressing an earlier, materially different draft version of the bill, which ultimately was not passed.  See, e.g., Sen. Rep. No. 110-153 (2007).[16]  Significantly, the then-operative versions of the legislation did not exempt carriers subject to a settlement agreement from the PACT Act's requirements or from state laws prohibiting the delivery of cigarettes to individual consumers.  See PACT Act, S. 1027, 110th Cong. (2007) (as reported by the S. Comm. on the Judiciary, Sept. 11, 2007); PACT Act, H.R. 4081, 110th Cong. (2007) (as reported by the H. SubComm. on Crime, Terrorism and Homeland Security of the H. Comm. on the Judiciary, May 1, 2008).  The carrier exemptions at issue were not added until the legislation was subsequently

---

[16] Plaintiffs recognize that the House Report they primarily rely on addressed the PACT Act at the session of Congress that preceded the session in which the PACT Act was passed, but assert that the "statutory language was not substantially unchanged between the two sessions." (Pls.' Opp. Br. at 3 n.2.)  To the extent that this statement should be read literally, the Court agrees that the statute was in fact substantially changed in a material respect because the original version of the bill did not contain the exemption provision at issue here.  To the extent that plaintiffs' brief includes a typographical error such that they actually meant that the statute was substantially the same, the Court disagrees with their characterization—the statute was changed in a highly material respect.

Plaintiffs do cite testimony from a House Report addressing a later version of the PACT Act that included the carrier exemptions at issue here.  (Pls.' Opp. Br. at 6 (citing H.R. Rep. No. 111-117, at 26 (2009).)  The legislative history they cite, however, is inapposite because it related to the exemption ultimately codified at 15 U.S.C. § 377(b)(3)(B)(i).  That exemption is in a different part of the statute, prefaces the phrase "policies and "practices" with the word "effective," and is not relied upon by UPS as a basis for exemption in the pending motion.  Congress could have, but did not, specifically impose a requirement of effective enforcement in § 376a(e)(3).

reintroduced.  See PACT Act, S. 1147, 111th Cong. (as introduced in the Senate on
May 21, 2009).  Thus, the legislative history that plaintiffs cite does not reflect the
compromise that was ultimately struck in the enacted version of the legislation and
has little bearing on what Congress intended the subsequently added exemption
provisions to mean.  See United States v. Howe, 736 F.3d 1, 4 (1st Cir. 2013)
(placing little weight on legislative history that "concerned an earlier draft of the
statute with different language than the version ultimately enacted").  Plaintiffs'
acknowledgment that carriers vigorously objected to the initial version of the PACT
Act (Pls.' Opp. Br. at 7) supports the view that the exemptions were added as a
compromise to the industry to allow carriers who had already made efforts to reduce
the shipment of contraband cigarettes to avoid the burdensome requirements
imposed by the PACT Act.

Finally, the Court's interpretation is consistent with the need to interpret the
statute to promote a workable and sensible scheme, far more so than any
alternative reading offered by plaintiffs in their opposition papers (or the other
alternatives proposed by UPS).  See Yerdon v. Henry, 91 F.3d 370, 376 (2d Cir.
1996) ("Where an examination of the statute as a whole demonstrates that a party's
interpretation would lead to 'absurd or futile results . . . plainly at variance with the
policy of the legislation as a whole,' that interpretation should be rejected." (quoting
EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 120 (1988))); Merck v. Treat,
174 F. 388, 390 (2d Cir. 1909) ("[T]he interpretation which we place upon the
statute provides a simple, fair and workable plan which preserves the rights of both

parties."); <u>United States v. Mejias</u>, 417 F. Supp. 579, 583 (S.D.N.Y. 1976) ("This Act, like any other statute, must be read in such a way as to render it a sensible and workable whole.").  As explained below, plaintiffs have not suggested any alternative interpretation that would provide a reasonable, workable means to accomplish the end Congress sought to achieve in creating the exemption.

Under plaintiffs' proposed interpretation, a carrier may obtain an exemption under § 376a(e)(3)(B)(ii)(I) only if all fifty states affirmatively assent in some unidentified manner to the AOD, meaning that each state recognizes the agreement as preclusive of the remedies they would otherwise be able to pursue under the PACT Act or state law.[17]  This reading is unreasonable and, ultimately, unworkable for several reasons.  For instance, § 376a(e)(3)(B)(ii)(I) does not explain the mechanism by which a carrier could obtain a state's affirmative assent and ensure that each state continues, at any given point in time, to assent to a settlement agreement for which it is not a signatory and has no right of enforcement. Plaintiffs' reading, moreover, would render it impossible in a practical sense for any carrier to obtain an exemption, and would beg the question why Congress bothered to add these exemptions in the first place.  Plaintiffs' position that all fifty states must formally acknowledge not only the existence of the AOD, but also its effect (i.e. that it precludes their ability to pursue remedies against UPS under the PACT Act and/or state law), creates a burden that is far more stringent than that contemplated by the other PACT Act exemptions.  As plaintiffs themselves

---

[17] The Court's understanding that plaintiffs believe the exemption essentially requires each state to affirmatively assent to waiver of its right to utilize the PACT Act is based, in part, on the facts asserted in the declarations that plaintiffs have offered from seven other state attorneys general.

repeatedly point out, no other state was or is currently a party to the AOD, no other state was or is bound by the AOD under its terms, and no state other than New York affirmatively and officially endorsed it.  (Pls.' Opp. Br. at 19.)  Plaintiffs do not explain why, under such circumstances, any state, much less all fifty states, would recognize the AOD in the manner they suggest even if UPS has fully effective, fool-proof policies and practices.  No state—much less every state—has any incentive to affirmatively act to restrict its ability to pursue enforcement remedies.  Plaintiffs contend that in spite of these facts—all of which were in existence at the time of the PACT Act's passage and of which Congress undoubtedly was aware—Congress explicitly enumerated the AOD (and stated that it was an agreement entered into only between UPS and the NYAG) as an agreement capable of conferring an exemption.  Considered in this context, plaintiffs present an entirely unworkable view of the prerequisites necessary to obtain to an exemption, as they would render the exemption a nullity.

As the Court previously explained in relation to UPS's motion to dismiss, plaintiffs' original interpretation of the exemption fares no better in creating a workable scheme.  Plaintiffs previously argued that the mere allegation in a complaint that a carrier was not in compliance with its settlement agreement is sufficient to defeat the carrier's exemption.  Such a reading is nonsensical because, again, it would render the exemption a nullity—the PACT Act's carefully delineated exemptions would be meaningless.  Plaintiffs' reading would gut the exemption by making it exceedingly difficult, if not impossible, for a carrier to successfully invoke

35

the exemption.  The statutory language and the legislative history do not indicate that Congress intended to deprive an otherwise qualifying carrier of exemption based on an imperfect, but bona fide, effort to maintain the nationwide policies agreed to in the AOD.

### 2.    Application of the Court's Interpretation

Having concluded that § 376a(e)(3)(B)(ii)(I) conferred an exemption from the PACT Act's requirements on UPS at the time that the statute was enacted, the Court must determine whether plaintiffs have created a genuine issue of material fact as to whether UPS has lost its entitlement to that exemption.  As explained below, plaintiffs have not, on the current record, done so.

In support of the pending motion, UPS states, based on the declaration of Bradley J. Cook, UPS's Rule 30(b)(6) witness and Director of Dangerous Goods and Head of its Package Solutions Group, that it "continues to administer and enforce a nationwide policy prohibiting the shipment of cigarettes to consumers," listing several specific policies and practices that it has adopted to achieve that end. (UPS's 56.1 ¶ 8; Cook Decl. ¶ 6.)  Mr. Cook further avers that "UPS has never renounced the AOD or limited its policies and practices designed to curtail cigarette deliveries to consumers by eliminating certain states or jurisdictions from the scope of UPS's policies and practices."  (UPS's 56.1 ¶ 9; Cook Decl. ¶ 7.)[18]  It is also undisputed that no state, as of the filing of the pending motion, notified UPS of a

---

[18] Plaintiffs' evidence purporting to counter this fact—that UPS renounced its policies by asserting affirmative defenses to the validity of the AOD (which are no longer live in this case) and that it has made nationwide deliveries of cigarettes to consumers for Native Wholesale Supply—does not undermine the relevant factual assertions advanced by UPS.  (See Pls.' 56.1 Cstmt. ¶ 9.)

belief that the AOD does not have nationwide scope or that UPS does not honor the AOD nationwide.  (UPS's 56.1 ¶ 14.)

Plaintiffs primarily seek to defeat UPS's motion with two categories of factual support: (1) declarations from other state attorneys general representing that their states do not recognize the effect of the AOD, and (2) evidence that UPS has in fact delivered contraband cigarettes and therefore failed to adhere to its nationwide policies to curb such deliveries.[19]  Plaintiffs thus seek to attack the exemption under two distinct theories, by showing that neither the states, nor UPS, honor the AOD. While neither category of evidence is sufficient to raise a genuine issue of material fact on the record presented here, below the Court explains why it will allow plaintiffs an opportunity to supplement their evidence relating to whether UPS honors the AOD nationwide, and what plaintiffs would need to show to raise a triable issue.

As to their first category of factual support, plaintiffs seek to raise a genuine issue of material fact by pointing to declarations of representatives of seven state attorneys general stating that their states do not recognize the AOD, as well as a declaration from Michael G. Hering submitted on behalf of the NAAG.  (See McPherson Decl., Exs. 1-5, ECF No. 175; Proshansky Decl., Exs. 6, 8, ECF No. 194.)

---

[19] Plaintiffs also contend that a genuine issue of material fact remains at this stage because UPS raised several affirmative defenses in its Answer challenging the validity of the AOD that, if successful, would undermine the notion that the AOD is or ever was an active agreement.  (Pls.' Opp. Br. at 25.)  This argument is meritless because the Court has already granted plaintiffs' motion to strike UPS's three affirmative defenses challenging the validity of the AOD at the time of formation. See UPS II, 2016 WL 502042, at *17-19.  Whatever inconsistency would otherwise exist on UPS's part has been resolved by the Court's decision on plaintiffs' motion to strike those affirmative defenses.

The seven state attorneys general declarations are from California, Idaho, Utah, Connecticut, New Mexico, Maryland and Pennsylvania; several are essentially identical (except for the state on whose behalf they were submitted).  Below, the Court uses the declaration of Laura W. Kaplan, Deputy Attorney General of the State of California, as an illustrative example of the declarations that plaintiffs have put forward to support their position.  (McPherson Decl., Ex. 1 ("Kaplan Decl."), ECF No. 175-1.)[20]

Ms. Kaplan states that California's understanding of the PACT Act is that the AOD is a settlement agreement "eligible" to make UPS exempt from the statute's liability provisions.  (Kaplan Decl. ¶ 5.)  Ms. Kaplan further states that "California is not a party to the AOD" and the "AOD does not appear to grant California any rights against UPS . . . such as the recovery of penalties, damages or injunctive relief," but rather New York is the only state that can do so.  (Id. ¶ 6.)  Ms. Kaplan states that "[i]t defies common sense and logic for California to recognize and assent to an agreement to which it is not a party and to which California has no legal rights" and, for those reasons, "California would not utilize the AOD . . . as a means to block illegal deliveries of cigarettes or smokeless tobacco to consumers."  (Id. ¶ 7 (quotation marks omitted).)[21]  Ms. Kaplan goes on to say

---

[20] The Idaho and Utah declarations are nearly identical to Ms. Kaplan's.  (See McPherson Decl., Exs. 2-3, ECF Nos. 175-2, 175-3.)  Although the Court notes that the declarations submitted on behalf of other state attorneys general contain minor variations in language, the remaining declarations contain the same facts in all material respects.  The Court does, however, identify particular distinctions in certain of the declarations below.

[21] The New Mexico declaration states that "[b]ecause the AOD does not provide New Mexico with any enforcement rights or any relief, New Mexico <u>cannot recognize, 'honor' or assent</u> to the AOD." (McPherson Decl., Ex. 4 ¶ 7, ECF No. 175-4 (emphasis added).)  The Pennsylvania declaration states that Pennsylvania "has not, and <u>could not</u> rely on the AOD as a means to 'block illegal deliveries of

that, instead, "California would use the PACT Act as an enforcement mechanism against UPS for illegal cigarette deliveries to consumers in California because the PACT Act provides California with a cause of action for civil penalties and other equitable relief whereas the AOD does not." (Id. ¶ 8.)[22]

As stated above, plaintiffs have also provided a declaration by Michael G. Hering, Director and Chief Counsel of the Center for Tobacco and Public Health at the NAAG. (Hering Decl. ¶ 1.) Mr. Hering states that "NAAG has no authority to in any manner legally bind its member attorneys general . . . and takes no actions that purport to represent the policies or legal positions of its members unless expressly authorized to do so." (Id. ¶ 5.) Mr. Hering further states that "the NAAG Center for Tobacco and Public Health has no general authorization from any state to endorse particular programs or initiatives on behalf of that state" and, "if called upon to do so, NAAG would be unable to take any position on whether or not [the AOD] is honored nationwide." (Id. ¶¶ 6-7.)

Even when viewed in its entirety and construed in the light most favorable to plaintiffs, this evidence is insufficient to raise a genuine issue of material fact as to UPS's entitlement to exemption from liability under the PACT Act pursuant to §

cigarettes or smokeless tobacco to consumers' as it is not a party to the AOD." (Proshansky Decl., Ex. 6 ¶ 7, ECF No. 194-6 (emphasis added).) The assertions that these states cannot recognize the AOD further supports the Court's view that no carrier could ever obtain an exemption under plaintiffs' proposed reading.

[22] Connecticut's declaration states that Connecticut could use Conn. Gen. Stat. § 12-285c as an enforcement mechanism against UPS for illegal cigarette deliveries to consumers, but that it could not use the AOD because that agreement does not provide Connecticut with any enforcement capabilities against UPS. (McPherson Decl., Ex. 3 ¶¶ 10-13, ECF No. 175-3.) Maryland's declaration similarly states that Maryland would also use Md. Bus. Reg. § 16-223(b) to block cigarette shipments to consumers, rather than the AOD. (McPherson Decl., Ex. 5 ¶ 6, ECF No. 175-5.)

376a(e)(3)(B)(ii)(I).  In short, the declarations from the state attorneys general do not raise a genuine issue of material fact because none demonstrate that these states do not recognize the existence of the AOD or that UPS no longer gives nationwide effect to it.  The declarations also do not suggest in any way that between the date that the AOD was signed and the PACT Act was implemented, there had been a change in the status quo vis-à-vis any state's position with respect to the AOD, or in UPS's policy of giving nationwide effect to the obligations imposed by it.  Although each state attorney general's declaration posits that his or her respective state does not recognize or assent to the AOD because it provides no right of enforcement, none of the declarants assert that his or her state does not recognize the AOD's existence or that UPS does not maintain a policy of giving nationwide effect to the requirements imposed in the AOD.[23]

As the Court explained above, § 376a(e)(3)(B)(ii)(I) was intended to exempt UPS and the other two carriers who are parties to enumerated agreements from the PACT Act's requirements from the time of the law's enactment.  The factual predicate necessary for the AOD to be "honored throughout the United States" was therefore present at the time of enactment.  As a result, a state's position that it has never and could never recognize the AOD because the state is not a party to it and the agreement provides no remedies or enforcement mechanism for the state to

---

[23] Even if plaintiffs were correct that a carrier's exemption under § 376a(e)(3)(B)(ii)(I) could be vitiated by a single state's affirmative statement that it does not recognize the AOD as preclusive of other remedies—a view that upon a full review of the parties' arguments and the statutory scheme is, in any event, inconsistent with the Court's reading of the statute—the Court notes that legitimate due process concerns are raised by an interpretation that would allow a state to lift the exemption with respect to alleged violations occurring <u>prior to</u> the state's expression of non-recognition of an otherwise qualifying settlement agreement.

pursue is not a sufficient basis to find that the AOD is not honored or recognized throughout the United States. All that is required is that the AOD's existence is recognized throughout the United States and that UPS continue to give the AOD nationwide effect. That individual states would rather that UPS not be exempt such that they can potentially pursue remedies against it pursuant to the PACT Act and state law is immaterial and inconsistent with the bargain that Congress ultimately struck in the final version of the statute. If the assertions made in these declarations were deemed sufficient to vitiate UPS's exemption, it is unclear how UPS, DHL or FedEx could ever obtain an exemption under § 376a(e)(3)(B)(ii)(I). As discussed above, it is hard to fathom that any state (much less every state) would ever be willing to forego the ability to obtain penalties under federal or state law in favor of a settlement agreement entered into by another state that provides it no enforcement mechanism.[24]

Mr. Hering's declaration on behalf of the NAAG does not help plaintiffs' attempt to create a genuine issue of material fact. That the NAAG may not legally bind its members through actions taken on their behalf is irrelevant. The information presented to Congress was that UPS had entered into the AOD, that it was giving the AOD nationwide effect, and that this was recognized nationally.

---

[24] Again, the surrounding statutory language shows that a requirement of affirmative assent by all fifty states to a settlement agreement in lieu of the possibility of pursuing other penalties is not what Congress contemplated. Section 376a(e)(3)(B)(ii)(II) states that an unenumerated agreement "between a common carrier and a State"—in other words, a single state, not all states or even multiple states—qualifies for exemption if it "operates throughout the United States." 15 U.S.C. § 376a(e)(3)(B)(ii)(II). As explained above, because § 376a(e)(3)(B)(ii)(I) and § 376a(e)(3)(B)(ii)(II) should be read in parallel, it makes no sense to say that an enumerated agreement qualifies a carrier for exemption only upon the affirmative assent of all fifty states, whereas an unenumerated agreement needs only the assent of a single state as long as the agreement has nationwide breadth.

Nothing in Mr. Hering's declaration undermines or alters that understanding. Because § 376a(e)(3)(B)(ii)(I) does not require each state to affirmatively assent to the AOD, it follows that the NAAG need not have had the capacity to affirmatively assent on its members' behalf.  The fact that the NAAG did not and could not provide that assent is thus immaterial.  What is significant, however, is that the record shows that the AOD included all of the procedures that the NAAG had sought from UPS and other carriers, and that there was an understanding that, through the AOD, UPS had agreed to stop directly shipping cigarettes to consumers nationwide.  (UPS's 56.1 ¶¶ 5, 11-13.)  In light of this context, it is entirely reasonable to believe that Congress viewed the AOD as having nationwide effect and being the result of a national consensus at the time the PACT Act was enacted, regardless of any authority that the NAAG did or did not have to act on behalf of its members.

As to plaintiffs' second category of factual support with which they seek to defeat UPS's motion, plaintiffs have presented a closer question by submitting evidence that UPS has in fact delivered contraband cigarettes to consumers.  (See Pls.' 56.1 Cstmt. ¶¶ 7-8; Proshansky Decl., Exs. 1-5, 7.)  As stated above, plaintiffs' evidence includes declarations from three individuals: (1) Jamie Harris-Bedell— who has owned, operated and worked at retail convenience store shops located on the Poospatuck Reservation that sell unstamped cigarettes, (2) Robert L. Oliver, Sr.—who was a partner in a reservation tobacco business on the Akwesasne Reservation, and (3) Philip D. Christ—who was employed by and/or consulted for

42

various mail order cigarette businesses on the Seneca Reservation.  Plaintiffs'

evidence also includes excerpts from the depositions of Christ, and UPS's Rule

30(b)(6) witness, Bradley J. Cook (who also submitted a declaration on behalf of

UPS, as discussed above).[25]  Finally, plaintiffs also provide an excerpt of a chart

showing deliveries that Native Wholesale Supply made to various states between

February 2007 and June 2007 (in other words, after UPS entered into the AOD, but

prior to the PACT Act's enactment).  Below, the Court summarizes plaintiffs'

strongest factual support for their contention that UPS does not in fact maintain

nationwide policies to curb the delivery of contraband cigarettes.

In his declaration, Harris-Bedell asserts that UPS made deliveries of

packages of contraband cigarettes to the smoke shop he worked at, that the

contents of these packages were visible to UPS drivers while they were making

deliveries, and that UPS drivers have purchased cigarettes from his smoke shop.

(Proshansky Decl., Ex. 1 ("Harris-Bedell Decl.") ¶¶ 5-13.)  Oliver's declaration states

that when a UPS employee came to his store to open his UPS account, he told the

employee that the packages to be shipped contained cigarettes, but the UPS

employee responded that he didn't want to hear that and proceeded to open the

account.  (Proshansky Decl., Ex. 2 ("Oliver Decl.") ¶¶ 5-6.)  Oliver's declaration

further states that UPS drivers who regularly picked up packages at his shop knew

---

[25] The Court notes that although plaintiffs cite to various pages of Mr. Cook's deposition transcript in their Rule 56.1 counterstatement, the sealed copy submitted to the Court contains only a limited subset of these pages—namely, pages 67 and 71.  (See Proshansky Decl., Ex. 5.) The Court, therefore, does not rely on any other pages in considering the pending motion.  As to plaintiffs' excerpt of the chart of deliveries made by Native Wholesale Supply, the entries appear to pre-date plaintiffs' claims and the enactment of the PACT Act.  (See Proshansky Decl., Ex. 7.)  As a result, the excerpt is of limited significance in regards to this motion.

that the packages contained cigarettes because the packages sometimes had brand names on them.  (Id. ¶¶ 7-8.)  Christ's declaration, in turn, states that UPS shipped contraband cigarettes for the various mail order businesses with which he was affiliated, and that UPS drivers knew the packages contained cigarettes because they had identifying labels and the drivers on occasion bought cigarettes from these locations.  (Proshansky Decl., Ex. 3 ("Christ Decl.") ¶¶ 6-10.)  In his deposition, Christ further states that UPS daily delivered 35 to 75 packages containing cigarettes from the smoke shop at which he was employed.  (Proshansky Decl., Ex. 4 ("Christ Dep. Tr.") at 30:6-32:2.)

While plaintiffs' evidence at least raises questions regarding the extent of UPS's compliance with its policies prohibiting the shipment of cigarettes to consumers in practice, and the efficacy of those policies in preventing the shipment of cigarettes to consumers, this evidence alone is insufficient to create a triable issue of fact as to whether UPS maintains nationwide policies.  Plaintiffs' evidence is insufficient because § 376a(e)(3)(B)(ii)(I) does not require that a carrier's policies be 100% effective at preventing the shipment of cigarettes to consumers.  A view to the contrary would, as explained above, import a compliance requirement into a definitional section and make it doubtful that a carrier could ever successfully invoke the exemption at any stage prior to trial.  That being said, the Court agrees with plaintiffs that UPS may not retain the exemption simply by maintaining the requisite policies nationwide in name only.  Put otherwise, if plaintiffs could present evidence creating an inference that the effectiveness of UPS's policies is so

compromised that these policies are not in fact in place, that would be sufficient to raise a genuine issue of fact for trial.  Plaintiffs' limited factual submissions regarding UPS's non-adherence to its policies—which the Court believes represent only a fraction of the supporting evidence that plaintiffs have garnered during discovery—is insufficient to meet that standard.  Plaintiffs' evidence does not support the inference that UPS's purported non-compliance is so severe that UPS no longer "honors" the AOD throughout the United States as that term is used in § 376a(e)(3)(B)(ii)(I).

That being said, while plaintiffs made a choice to not include all of their factual support for UPS's non-adherence to its policies in opposing UPS's pending motion, the Court also believes that, in the interest of fairness, it is appropriate to allow plaintiffs an opportunity to make a supplemental factual submission in light of the fact that the Court has modified its interpretation of § 376a(e)(3)(B)(ii)(I). While the Court cannot determine in the abstract precisely how much evidence of non-adherence is necessary to raise a genuine issue as to whether UPS maintains a nationwide policy in name only, the Court believes that plaintiffs could raise a genuine issue of fact by presenting a combination of two sorts of evidence.  First, plaintiffs could present evidence of a sufficiently large number of instances of shipments of contraband cigarettes that it suggests that UPS is, overall, turning a blind eye towards such unlawful shipments.  Second, plaintiffs could present a triable issue by submitting evidence showing that UPS policymakers have in fact turned a blind eye to shipments of contraband cigarettes.

In light of the foregoing, further submissions on this issue shall be as follows. Plaintiffs may submit a Rule 56.1 statement regarding UPS's non-adherence to its nationwide policies to curb shipments of contraband cigarettes **not to exceed ten pages** (not including the underlying factual materials, which plaintiffs should also submit), and a memorandum of law, **not to exceed five pages**, explaining why those facts are sufficient to defeat UPS's motion not later than **May 3, 2016**.  UPS shall file any opposition memorandum of law **not to exceed five pages** not later than **May 10, 2016**.  There shall be no replies.  The Court notes that it does not consider this additional opportunity to be a matter of right—this allowance is not an invitation to the parties to argue for additional discovery or an extension of other deadlines.  The Court does not intend to grant such a request.  The Court will reach resolution on UPS's motion as soon as possible after reviewing the parties' submissions.

B.     <u>N.Y. PHL § 1399-ll</u>

UPS argues that, to the extent it is entitled to summary judgment with respect to plaintiffs' PACT Act claims, the Court must also grant it summary judgment as to plaintiffs' claims brought pursuant to PHL § 1399-<u>ll</u> because such claims are expressly preempted by the PACT Act.  The Court agrees.  However, because the Court's resolution of UPS's PACT Act exemption awaits its receipt of the parties' further submissions discussed above, the Court reserves decision on these claims.

46

IV.     CONCLUSION

For the reasons set forth above, the Court concludes that plaintiffs have failed, at this time, to raise a genuine issue of material fact as to their PACT Act and PHL § 1399-ll claims.  However, in light of the Court's further clarification of its interpretation of 15 U.S.C. § 376a(e)(3)(B)(ii)(I), the Court will allow plaintiffs one further opportunity to present additional evidence of the severity of UPS's non-adherence to its nationwide policies to curb the delivery of contraband cigarettes, as further set forth in this Opinion & Order.

SO ORDERED.

Dated:      New York, New York
            April 19, 2016

_____
            KATHERINE B. FORREST
            United States District Judge