UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- x

THE STATE OF NEW YORK and THE CITY OF NEW YORK,

                        Plaintiffs,

-against-

UNITED PARCEL SERVICE, INC.,

                        Defendant.

----------------------------------------------------------------------- X

Case No. 15-cv-1136-KBF

**PLAINTIFFS' SECOND RULE 56.1 STATEMENT OF <u>MATERIAL UNDISPUTED FACTS</u>**

Pursuant to Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York, in support of its motion for partial summary judgment on UPS's Seventh Defense dated July 22, 2016, plaintiffs The State of New York and The City of New York provide this Second Rule 56.1 Statement of Material Undisputed Facts.

**UNDISPUTED FACTS**

**The Seneca Complaint**

1.     On or about August 17, 2010, the Seneca Nation of Indians filed a complaint against, *inter alia*, the State of New York (the "Seneca Complaint") in Case No. 1:10-cv-00687-RJA (W.D.N.Y.). The complaint, ECF No. 1, is annexed as **Exhibit 1** hereto.

2.     The complaint ("Seneca Complaint") sought declaratory and injunctive relief against "[r]ecently enacted and promulgated New York State cigarette tax laws and regulations." Ex. 1, ¶ 1.

3.     The Seneca Complaint stated that it was brought to restrain New York "from implementing and enforcing these statutes and regulations *as applied to the Nation, its*

*members, and its Nation-licensed tobacco retailers and stamping agents.*" Ex. 1, ¶ 2 (emphasis

added).

    4.      According to the Seneca Complaint, the laws and regulations,

> include no allocation provisions to ensure that Nation members may exercise their federally protected right to purchase non-New York taxed cigarettes *throughout the Nation's territories* or to ensure that the approximately 140 Nation-licensed businesses may exercise their right to participate in non-New York taxed commerce *with Nation members*.

Ex. 1, ¶1 (emphasis added).

    5.      The Seneca Complaint further alleged that the laws and regulations

> deny Nation-licensed businesses the ability to sell tax-free cigarettes in interstate commerce *to tax-exempt out-of-state residents*.

Ex. 1, ¶ 1 (emphasis added).

    6.      The Seneca Complaint further alleged that

> the Nation and its members enjoy immunity from state taxation and possess the right to purchase non-New York taxed cigarettes *on the Nation's Territories*.

Ex. 1, ¶ 54 (emphasis added).

    7.      The Seneca Complaint further alleged that

> Nation-licensed businesses possess the right to engage in tax-free commerce *with Nation members*.

Ex. 1, ¶ 55 (emphasis added).

    8.      The Seneca Complaint further alleged that

> The Indian tax exemption coupon system, prior approval system, and Emergency Rule include no allocation or other provisions to ensure access to non-New York taxed cigarettes by all Nation-licensed businesses and members.

Ex. 1, ¶ 56.

> 9.     The Seneca Complaint further alleged that
>
> Defendants' implementation and enforcement of the Indian tax exemption coupon system, prior approval system, and Emergency Rule as applied to the Nation and its members unlawfully denies and interferes with *the right of Nation members to purchase non-New York taxed cigarettes from retailers throughout the Territories and the right of Nation licensed businesses to engage in tax free commerce with Nation members on the Territories in violation of federal law.*

Ex. 1, ¶ 57 (emphasis added).

> 10.     The Seneca Complaint further alleged that
>
> The Indian tax exemption coupon and prior approval systems provide no mechanism by which to ensure that *a Seneca retailer operating on the Seneca Territories* may exercise its federal right to sell, and *a qualified Seneca member* may exercise her federal right to buy, non-New York stamped cigarettes in the event that the retailer has been excluded from or has not otherwise received a sufficient portion of the tax-exemption coupon or prior-approval quota.

Ex. 1, ¶ 28 (emphasis added).

> 11.     The Seneca Complaint further alleged that
>
> The Indian tax exemption coupon and prior approval systems provide no means by which Seneca-licensed retailers operating in the Seneca Territories may obtain tax-free cigarettes *for purposes of sale to tax-exempt out-of-state residents*.

Ex. 1, ¶ 29 (emphasis added).

> 12.     The Seneca Complaint further alleged that
>
> Defendants' implementation and enforcement of N.Y. Tax Law §§ 471 and 471e and the Emergency Regulations as applied to the Tribe and its members unlawfully deny and interfere with the right of tribal members to purchase non-New York taxed cigarettes *from retailers on the Tribe's reservation* and the right of tribally-licensed businesses *to engage in tax free commerce with tribal members on the reservation* in violation of federal law.

Ex. 1, ¶ 43 (emphasis added).

> 13.    The relief sought by the Seneca Complaint was to
>
> … enjoin Defendants from implementing and enforcing the Indian tax exemption coupon and prior approval systems (N.Y. Tax Law §§ 471(1), 471(5), 471-e) and the Emergency Rule (N.Y. Comp. Codes R. & Regs. tit. 20, § 74.6) against the Nation, its government instrumentalities, its members, Nation-licensed businesses, and state-licensed stamping agents and wholesale dealers *vis-à-vis their distribution and sale of cigarettes to the Nation's Territories*.
>
> and to
>
> … enjoin Defendants from restricting the possession, distribution, transportation, purchase, and sale of non-New York stamped cigarettes by the Nation, its government instrumentalities, its members, Nation-licensed businesses, and state-licensed stamping agents and wholesaler dealers *vis-à-vis the Nation's Territories*.

Ex. 1, *Prayer For Relief*, H, I (emphasis added).

### The St. Regis Complaint

14.    On or about August 24, 2010, the St. Regis Mohawk Tribe filed a complaint against, *inter alia*, the State of New York (the "St. Regis Complaint") in Case No. 1:10-cv-00811-RJA (W.D.N.Y.). That complaint, ECF. No. 1, is annexed as **Exhibit 2** hereto.

15.    The St. Regis Complaint broadly summarized the issues it was directed at as follows:

> This action challenges the State's newly adopted statutory and regulatory cigarette tax scheme, which is intended to serve as the method by which the State will collect sales and use taxes on cigarettes purchased by non-Indians on reservations throughout New York. This scheme is fatally flawed since it violates the Tribe's right to self-government in violation of federal law, *and denies to tribal members the right to purchase cigarettes without paying the state tax. It does so by imposing what it claims are two options by which tax-exempt products may be sold to reservation retailers—the Indian tax coupon system or the prior approval system.*

Ex. 2, ¶ 1 (emphasis added).

16.    The St. Regis Complaint further stated

Defendants' implementation and enforcement of N.Y. Tax Law §§ 471 and 471e and the Emergency Regulations as applied to the Tribe and its members *unlawfully deny and interfere with the right of tribal members to purchase non-New York taxed cigarettes from retailers on the Tribe's reservation* and the right of tribally-licensed businesses to engage in tax free commerce *with tribal members on the reservation* in violation of federal law.

Ex. 2, ¶ 43 (emphasis added).

17.    The relief sought by the St. Regis Complaint was

A declaration that N.Y. Tax Law §§ 471 and 471e and the Emergency Regulations unlawfully require pre-collection of the tax *on cigarettes to be sold to tribal members in tax-exempt on-reservation transactions*, in violation of federal law.

and

A preliminary and permanent injunction prohibiting the Defendants from *enforcing either the Indian tax coupon system or the prior approval system* until such time as the State revises its system to address the concerns of tribal self-government.

Ex. 2, Prayer for Relief, E and F (emphasis added).

### The Unkechauge Complaint

18.    On or about August 27, 2010, the Unkechauge Tribe (often referred to as the Poospatuck Tribe) filed a complaint against, *inter alia*, the State of New York (the "Unkechauge Complaint") in Case No. 1:10-cv-00711-RJA (W.D.N.Y.). That complaint, ECF No. 1, is annexed as **Exhibit 3** hereto.

19.    The Unkechauge Complaint stated that

The Indian tax exemption coupon and prior approval systems provide no mechanism by which to ensure that an Unkechauge retailer operating on the Poospatuck Reservation may exercise *its federal right to sell, and a qualified Unkechauge member may*

*exercise his or her federal right to buy, non-New York stamped cigarettes* in the event that the retailer has been excluded from or has not otherwise received a sufficient portion of the tax-exemption coupon or prior-approval quota.

Ex., 3 ¶ 34 (emphasis added).

> 20.    The Unkechauge Complaint further stated that
>
> The Indian tax exemption coupon and prior approval systems provide no means by which Unkechauge-licensed retailers operating in the Unkechauge Territories may obtain tax-free cigarettes *for purposes of sale to tax-exempt out-of-state residents*.

Ex. 3, ¶ 35 (emphasis added).

> 21.    The Unkechauge Complaint further stated that
>
> With respect to both the Indian tax exemption coupon and prior approval systems, the Emergency Rule provides no means by which Unkechauge-licensed retailers operating on the Unkechauge Territories may obtain tax-free cigarettes *for purposes of sale to tax-exempt out-of state residents*.

Ex. 3, ¶ 42 (emphasis added).

> 22.    The Unkechauge Complaint further stated that
>
> Defendants' implementation and enforcement of the Indian tax exemption coupon system, prior approval system, and Emergency Rule will adversely affect Nation members' right to purchase non-New York taxed cigarettes of the brand of their choosing *from Nation licensed retailers throughout the Nation's Territories* and will significantly impair *Nation licensed businesses' right to participate in tax-free commerce with Nation members*.

Ex. 3, ¶ 49 (emphasis added).

> 23.    The Unkechauge Complaint further stated that
>
> Defendants' implementation and enforcement of the Indian tax exemption coupon system, prior approval system, and Emergency Rule denies Nation-licensed retailers the ability to acquire non-New York stamped cigarettes for purposes of sale to tax-exempt *out-of-state residents*, including other Indian Nations with which the Unkechauge have agreements, and therefore denies Nation-licensed retailers the ability to engage in this *interstate commerce*

without collecting the New York cigarette tax from out-of-state residents, which must remit tax to their state of residence on the same cigarettes. The loss of this *interstate market* will lead to serious financial hardship and the closing of many Nation licensed retailers.

Ex. 3, ¶ 50 (emphasis added).

24.     The Unkechauge Complaint further stated that

As a matter of well-established federal and New York State law, the Nation and its members enjoy immunity from state taxation and *possess the right to purchase non-New York taxed cigarettes on the Nation's lands*.

Ex. 3, ¶ 62 (emphasis added).

25.     The Unkechauge Complaint further stated that

As a matter of well-established federal law, *Nation-licensed businesses possess the right to engage in tax-free commerce with Nation members.*

Ex. 3, ¶ 63 (emphasis added).

26.     The Unkechauge Complaint further stated that

Defendants' implementation and enforcement of the Indian tax exemption coupon system, prior approval system, and Emergency Rule as applied to the Nation and its members unlawfully denies and interferes with the right of Nation members to purchase non-New York taxed cigarettes from retailers throughout the Nation's lands and the right of Nation licensed businesses to engage in tax free commerce with Nation members on Nation lands in violation of federal law.

Ex. 3, ¶ 65.

27.     The Unkechauge Complaint further stated that

The Indian tax exemption coupon system, prior approval system, and Emergency Rule deny Nation-licensed businesses access to tax-free cigarettes for purposes of sale to out-of-state residents and thus compel Nation-licensed businesses to terminate their substantial interstate sales or to require the payment of New York tax by tax-exempt out -of-state residents.

Ex. 3, ¶ 77.

**Jacobs Tobacco a.k.a. Jacobs Manufacturing Shipments**





34.     During that time, UPS made deliveries from Jacobs Tobacco to Monique's/Smoke Warehouse at 108 Poospatuck Lane approximately three times a month. Ex. 8 ¶ 3.

35.     Additionally, on June 22, 2011, UPS had picked up 5 cases plus 10 more cartons of DisCOUNT brand cigarettes from Jacobs Tobacco. The cigarettes were to be delivered to the Rez Smoke Shop, on the Tonawanda Reservation. **Exhibit 10,** *June 22, 2011 ATF Report* ¶ 15.

### Mohawk Spring Water/NTC/Action Race Parts Shipments

<u>Mohawk Spring Water Shipments</u>

36.

37.

38.     According to prosecutors, UPS records establish that Oliver and Swamp shipped approximately 2,556 cases of cigarettes, each containing thirty (30) cartons of cigarettes, from Swamp's Frogtown Road property between November 2010 and June 2011. **Exhibit 12,** *Oliver Plea Agreement* **¶6 (c), ECF No. 4,** *United States v. Oliver***, 8:13-cr-00005-DNH (N.D.N.Y.).**

39.    UPS delivered packages to Flaming Arrow Smoke Shop on the Poospatuck Reservation between December 3, 2010 and March 29, 2011. The package shipper was Mohawk Spring Water, 263 Frogtown Road, Hogansburg, NY. **Exhibit 13,** *Bell Decl.* ¶ 4.

40.



41.

42.

43.

44.    On June 22, 2011, UPS Driver Donald Jarvis picked up from Mohawk Spring Water, 263 Frogtown Road, Hogansburg, NY 13665, 225 cases of "Smokin' Arrow" brand cigarettes. The cigarettes were to be delivered to Ronnie Bell of the Flying Arrow Smoke Shop, 130 Poospatuck Lane, Mastic NY. Each case contained 30 cartons of Smokin Arrow cigarettes. Ex. 10, ¶ 15.

45.    On June 22, 2011, UPS Driver Donald Jarvis picked up from Action Race Sports, 1552 State Route 37, Hogansburg, NY 13665, 40 cases of "Chiefs" brand cigarettes. The cigarettes were to be delivered by UPS to the Poospatuck Smoke Shop, 207 Poospatuck Lane, Mastic, NY.  Ex. 10, ¶ 15.

NTC/Native Tobacco Company Shipments

46.  ███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

47.  ███████████████████████████████████████

███████████████████████████████████████

48.  ███████████████████████████████████████

████████████████████

49.  ███████████████████████████████████████

████████████████████

50.  ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

Action Race Parts Shipments

51.  ███████████████████████████████████████

████████████████████

52.  ███████████████████████████████████████

████

53.  ███████████████████████████████████████

████████████████████████████████

- 12 -

54. ███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████

55. On June 23, 2011, UPS terminal manager Cecil Decoteau stated that there were fifty-one (51) parcels from Action Race Parts to be delivered to Harry Wallace, d/b/a The Poospatuck Smoke Shop, 207 Poospatuck Lane, Mastic, NY 11950. **Exhibit 19,** *June 27 ATF Report***,** ¶ 7.

████████████████████████████

56.  ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

Dated:      New York, New York
            July 22, 2016

                              ZACHARY W. CARTER
                              Corporation Counsel of the
                                City of New York
                              Attorney for Plaintiff the City of New York
                              100 Church Street, Room 20-99
                              New York, New York 10007
                              (212) 356-2032


                              By:    /s/ Eric Proshansky
                                     Eric Proshansky (EP 1777)
                                     Lilia Toson (LT 4727)
                                     Assistant Corporation Counsel

                              ERIC T. SCHNEIDERMAN
                              Attorney General of the State of New York
                              Attorney for Plaintiff the State of New York
                              120 Broadway, 3rd floor
                              New York, New York 10271
                              (212) 416-6699

                              By:    /s/ Dana Biberman
                                     Dana Biberman (DB 9878)
                                     Christopher Leung (CL 1688)
                                     John Oleske (JO 0995)
                                     Assistant Attorneys General