# Exhibit 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE STATE OF NEW YORK and THE CITY OF NEW YORK,

                Plaintiffs,

                -v-

UNITED PARCEL SERVICE, INC.,

                Defendant.

15 Civ. 1136 (KBF)

**ECF CASE**

---

**DECLARATION OF RICHARD DELBELLO**

I, Richard DelBello, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Richard DelBello. I live in Williamsville, New York, a suburb of Buffalo. I have personal knowledge of the facts set forth below, and I am submitting this declaration as my direct testimony in this case.

2. I have been employed by United Parcel Service, Inc. ("UPS") since 2008. Prior to joining UPS, while getting my MBA from the University of Buffalo, I worked as an investment broker at AG Edwards & Sons from 1984-1988. I then worked at a company called CF Air Freight, a transportation company. Two months after I joined the company, CF Air Freight purchased another company called Emery Worldwide. I worked at CF Air Freight/Emory Worldwide for two and a half years. After CF Airfreight, I became a sales representative at a company called TNT Skypack, where I worked for two years before I joined DHL. I worked at DHL for fifteen years during which I had many positions, but ended up as a national account executive.

3. I joined UPS in 2008 when DHL closed its domestic shipping business. I started my career at UPS as an Account Executive ("AE"), which is also referred to as an account manager.

4. Three months later I changed titles and became a freight specialist. As a freight specialist, I assisted representatives from the UPS package division sell freight shipping services to their customers. The UPS freight division handles packages that are larger than 150 pounds per individual piece. Freight shipments are typically transported on skids or pallets.

5. In 2010, I became an AE again, a position I still hold today. I am part of the Buffalo Sales Team. I participate in weekly meetings with the sales team approximately once per week. My main office is in UPS's Buffalo Center. I spend about two-thirds of my time on the road and the other one-third in the office.

6. I report to an Area Sales Manager, based in Buffalo. My current Area Sales Manager is Mike Zelasko. I started reporting to Mike Zelasko in late 2013. Before Mike Zelasko, I reported for a few months to Brian Weber. Before Brian Weber, I reported to Tricia Piccirilli, from 2010 to 2013.

7. As an AE, I manage UPS small package customer accounts and try to acquire new business for UPS.

8. I am responsible for all small package accounts in my "Patch of Land," or the territory for which I am responsible. From 2010 to 2011 my Patch of Land covered Lancaster, Depew, Clarence and Cheektowaga. In 2011, my Patch of Land expanded to include three UPS centers based in Buffalo, Batavia and Lockport, New York. After 2011, I was no longer responsible for Lancaster or Cheektowaga.

ny-1244081

9. My Patch of Land is a widely dispersed geographic area. I have a total of approximately 3000 active accounts in my territory, although that number naturally varies each year.

10. The Batavia center serves the Native American Reservation in Basom, New York. I understand that four of the former UPS customers located on the Basom Reservation are at issue in this case and one additional account is related to those accounts but is outside my Patch of Land.

11. As an AE, I earn an annual base salary, in addition to a discretionary bonus called a Sales Incentive Program or SIP. My performance for the SIP is based on multiple factors, one of which is comparison of revenue for my accounts to the business plan for those accounts. The business plan is created using a complex algorithm. For purposes of SIP, retaining accounts is more important than signing up new accounts. Thus, I do not want shippers in my plan that are likely to violate UPS policy and be terminated, because that would negatively affect my SIP. My primary interest, however, is to have accounts in which business is handled properly.

12. When I became an AE in 2008, I made it a practice to ask my customers about their business as well as what products they ship.

**UPS Policy**

13. I receive regular trainings at UPS on various products, services, and regulations. In those trainings I learned UPS's Tobacco Policy. I have reviewed UPS's Tobacco Products Transportation Procedures Manual, a copy of which is attached as Exhibit DX-009.

14. My supervisors, Mike Zelasko, and Tricia Piccirilli, periodically reinforced the training for me and other AEs on UPS's tobacco policy. In addition to sales-specific training, the drivers receive a Pre Work Communication (PCM) every morning and sometimes AEs attend

3

those PCMs. An example of a PCM regarding the tobacco policy that was distributed to both sales and UPS drivers in August of 2011 is attached as Exhibit DX-111.

15. UPS prohibits shippers from tendering packages containing cigarettes destined for residential consumers. Shippers are required to comply with all state and federal regulations related to shipping tobacco products.

16. UPS's tobacco policy prohibits the shipment of cigarettes to consumers nationwide.

17. UPS policy also requires that to ship tobacco other than cigarettes to a consumer, a shipper must sign a Tobacco Agreement. This Agreement states that UPS will not handle the shipment of cigarettes to consumers, and that shippers must comply with all laws, regulations, and constraints in the agreement. If a shipper failed to follow the policy, that shipper would be suspended or terminated.

**Arrowhawk Smoke Shop**

18. Arrowhawk Smoke Shop was a former account in my Patch of Land. The primary pick up address associated with the account was 852 Bloomingdale Road, Basom, NY. The Arrowhawk account was opened on January 12, 2012. I did not open the Arrowhawk account. Based on the timing of when the account was opened, I think that Inside Sales Representative Richard "Craig" Foster opened the account. The primary account number for Arrowhawk Smoke Shop was 71564Y.

19. A year later, in February 2013, Arrowhawk Smoke Shop changed its name and became Hillview Cigars.

**Seneca Cigars LLC**

20. Seneca Cigars LLC ("Seneca Cigars") was a former account in my Patch of Land. The primary pick up address associated with the account was 852 Bloomingdale Road, Basom, NY. This is the same addresses as the Arrowhawk Smoke Shop. I believe the accounts had overlapping ownership. The account was open from January 9, 2012 until September 13, 2013. Its primary account number was 71A514.

21. I did not set up the Seneca Cigars account. I believe Craig Foster opened the account.

22. I visited this account on March 9, 2012, at 852 Bloomingdale Road, in Basom New York. I recall that the location was a gas station and convenience store, called Arrowhawk Gas Mart. I met with Phil Christ, who introduced himself to me as a consultant for Seneca Cigars. A man and woman were also present, but I do not recall their names. To get the account registered as a known shipper, I completed a Customer Profile Update Form on March 9, 2012, a copy of which is attached as Exhibit DX-128. At that meeting Phil Christ and the owners of the business told me that Seneca Cigars would be shipping cigars, and we discussed that UPS policy forbids the shipment of cigarettes to consumers. A photograph of this location is below. Exhibit DX-490.



ny-1244081

23. A month earlier, in February 2012, I had spoken for the first time to Mr. Christ on the phone. He asked me on that call if he could use UPS services to ship cigarettes to consumers who lived outside of New York State. When I told him that we wouldn't ship cigarettes, he claimed that his lawyers had told him that it was legal. I found this phone call questionable and raised it with my supervisor Tricia Piccirilli, who confirmed my understanding that UPS's cigarette policy forbids the shipment of cigarettes to consumers nationwide, not just in New York State. Thereafter, I told Mr. Christ that it was a violation of UPS policy to ship cigarettes to consumers. In March 2012, when I met with Mr. Christ about the Seneca Cigars account, we again discussed the fact that UPS could not ship cigarettes to consumers and he told me that Seneca Cigars would be shipping cigars. I certainly did not have any reason to believe that Mr. Christ would be dishonest in March about what he was shipping, because he had previously been up front and asked me if he could ship cigarettes and I had told him he could not.

24. On March 12, 2012, I had an email conversation with Craig Foster in connection with the Customer Profile Update Form. He asked me to confirm that Seneca Cigars was a legitimate business, as he was aware that I had visited the entity to fill out the Customer Profile Update Form. I informed him that I had visited the company, that it was located on the Basom Reservation, and that they were conducting a legal business, and would be shipping cigars. It was mentioned that UPS would have tons of volume if it could ship cigarettes but of course it was UPS policy not to ship cigarettes to consumers. Smoke shops on the reservations could ship other items, like cigars, but were forbidden from shipping cigarettes. A copy of this email correspondence dated March 12, 2012 is attached as Exhibit DX-140.

25. The ISR for the account, Ryan Keith, handled the pricing bids and other paperwork for Seneca Cigars.

ny-1244081

26. I was not aware of any claims for lost or damages packages filed by Seneca Cigars. As an AE, I rarely receive information about claims that a customer reports to UPS; those are handled separately by a 1-800 number dedicated to the claims-handling process unless a customer complains about a denied claim. I have never received a call from a tobacco shipper about a denied claim.

**Hillview Cigars**

27. On February 12, 2013, I spoke with the owners of Arrowhawk Smoke Shop. I learned at that meeting that the business had been sold to Hillview Cigars and that Arrowhawk would no longer be operating. It was my understanding that shipments for the account would occur through a new account number being created for Hillview Cigars. I made notes about this meeting in the TEAMS database, a database that AEs and other sales employees at UPS use to record their visits and other contacts with UPS customers. A TEAMS entry from this visit is attached as Exhibit DX-513. The primary account number for Hillview Cigars was 715634, and the primary pick up address was 852 Bloomingdale Road, Basom, NY.

28. The next day I went to the address and no one was there. I spoke to Phil Christ on the phone and he said that he would follow up on the accounts. A TEAMS entry from this visit is attached as Exhibit DX-520 at line 28.

29. I believed that Hillview Cigars, like Seneca Cigars, was shipping cigars.

**Two Pine Enterprises**

30. Two Pine Enterprises was a former account in my Patch of Land. It was located at 7238 Meadville Road, Basom, NY, 14013 on the Basom Reservation. The account was open from July 9, 2013 until April 18, 2014. Its primary account number was YA5535. A photograph of this location is below. Exhibit DX-490.



31.     It is my understanding that the Two Pine Enterprises account was created after the owners of Seneca Cigars and Hillview Cigars purchased another company. As the volume for Two Pine Enterprises increased in July and August 2013, the volume for Seneca Cigars and Hillview Cigars decreased. It appeared to me that the entities decided to consolidate and move their shipping to Two Pine Enterprises.

32.     On October 22, 2013, I learned from Ryan Keith that we did not have a Tobacco Agreement on file for Two Pine Enterprises. An email discussing this conversation is attached as Ex DX-228. Ryan Keith informed me that he had reached out to Phil Christ to obtain a signed Tobacco Agreement, but Mr. Christ was unable to obtain a signature because, due to an ownership dispute, Phil Christ was no longer working with the owners of Two Pine Enterprises. Ryan Keith asked me to get in touch with the owner of Two Pine Enterprises regarding the Tobacco Agreement.

8

33. Two Pine Enterprises' pick up service was immediately temporarily suspended while we worked on getting a signed Tobacco Agreement.

34. I spoke to Dolores Uebelhoer, who agreed to sign the Two Pines Enterprises Tobacco Agreement. A copy of an email between me and Ms. Uebelhoer is attached as Exhibit DX-234. Two Pines signed the Tobacco Agreement on October 24, 2013 and I sent it to Ryan Keith. The Tobacco Agreement is attached as Exhibit DX-232.

35. Once the Tobacco Agreement was signed, the Two Pine Enterprises account was permitted to resume shipping legal tobacco products with UPS, which I understood to be cigars.

36. On March 19, 2014, I was informed that Two Pine Enterprises had been delivering packages to a UPS store located near the Buffalo UPS Center rather than having them picked up at the location associated with the account, 7238 Meadville Road. This is referred to as "drop-shipping" the packages. I immediately contacted Dolores Uebelhoer and explained that pursuant to the terms of her Tobacco Agreement, she was not permitted to drop-ship tobacco packages at the facility and that it would be a breach of her contract to drop-ship packages.

37. Ms. Uebelhoer told me that she was drop-shipping packages because the UPS pick up time was too early, which I questioned because UPS is flexible with its pick up times and because drop shipping itself took time. But Ms. Uebelhoer agreed to comply with the terms of her Tobacco Agreement. An email regarding this conversation with Ms. Uebelhoer is attached as Exhibit DX-529.

38. I learned that in April 2014, a package from Two Pine Enterprises broke open in a UPS facility and cigarettes were discovered. An audit was immediately conducted, and I understand that the audit revealed cigarettes in packages from Two Pine Enterprises.

9

39. On April 18, 2014, I told Dolores Uebelhoer that a UPS audit had been conducted and that it was discovered that the packages contained cigarettes, not the cigars they had informed me were being shipped. I told her that UPS would no longer handle her shipments. A TEAMS entry describing my conversation with Dolores is attached as Exhibit DX-511 at line 270.

40. Two Pine Enterprises was sent a letter terminating its UPS service on April 18, 2014. The termination letter is attached as Exhibit DX-299.

41. I asked my supervisor if there was any way to remove Two Pine Enterprises from my revenue plan given the cancellation but we were unable to do so because Two Pine Enterprises' revenues were such a small part of my revenue plan (less than half of one percent).

42. Prior to April 2014, I did not know that Two Pine Enterprises shipped cigarettes. I was surprised to learn that they had been caught shipping cigarettes because they had repeatedly told me they were shipping cigars. I recall telling my ISR at that time, right after the Two Pine Enterprises audit, to be hesitant about tobacco shippers because I just found out Phil Christ and Dolores Uebelhoer had lied to me.

43. I knew then that I could not trust Phil Christ and so I refused to do business with him. Two months after the Two Pine Enterprises audit, on June 26, 2014, I was forwarded a request by a man who identified himself as "Phil Christie" seeking to have the same pricing incentives as Seneca Cigars to ship tobacco. I believed this man to be Phil Christ. I immediately denied this request. A copy of the email discussing this request is attached as Exhibit DX-335.

**Native Gifts**

44. Native Gifts was a former account that was not in my Patch of Land but was associated with Two Pines Enterprises. It was located at 12305 Farnham Road, Irving, NY,

14081. The account was opened on September 24, 2013 and the last shipment that UPS made for Native Gifts was on July 3, 2014. Its primary account number was R17756.

45. On September 24, 2013, I learned from Ryan Keith, that Phil Christ asked to open a new account, called Native Gifts, because he said the location of the Two Pine Enterprises account had been damaged in a fire. I was confused why Phil Christ wanted to change the account name rather than continue to use the name Two Pine Enterprises, even if the account number and location would change. I assumed that Native Gifts was associated with Two Pine Enterprises, which was associated with Seneca Cigars and Hillview Cigars. While it was not unheard of for companies to change names, it seemed a bit odd to me that the company did so in a short time span. Also, I drove past the Two Pine Enterprises location at 7238 Meadville Road shortly after I learned about the fire and did not observe any visible fire damage. I remarked that the name changes seemed "fishy." I suspected that the name change might be because there was a disagreement between the owners, or with the ownership structure of the company. A copy of my email correspondence with Ryan Keith regarding Native Gifts is attached as Exhibit DX-215.

46. I told Ryan Keith, my inside sales representative, that every time a new account was set up with a different account number for a company shipping tobacco, the company had to sign a Tobacco Agreement.

47. On October 8, 2013, when my supervisor Tricia Piccirilli asked about the decreased shipping volume for Hillview Cigars, I explained the addition of Two Pine Enterprises and Native Gifts. I noted that the supposed fire and changing names of these accounts seemed odd to me. A copy of that email is attached as Exhibit DX-531.

48. At the time, I did not suspect that any of these entities was shipping illegal products. That is not what I meant when I characterized the situation as "odd" or "fishy." I

11

believed that Native Gifts, Two Pine Enterprises, Seneca Cigars, and Hillview Cigars were all shipping cigars. I just had questions about their ownership issues.

49. On October 25, 2013, I wrote to Gerry Fink, because Native Gifts was on his Patch of Land. I asked Inside Sales Representative Ryan Keith to send Gerry Fink the contact information for the account. Ryan Keith responded that his contact for the account was Phil Christ. A copy of that email correspondence is attached as Exhibit DX-534.

**Phil Christ**

50. I learned during my deposition in this case that Phil Christ pled guilty to charges of conspiring to traffic cigarettes. I did not know that Phil Christ would falsely claim to ship cigars when he was actually shipping cigarettes.

51. I met Phil Christ in person approximately once in 2012 and spoke to him on the phone approximately four to five times.

52. I did not learn that Phil Christ had been dishonest about what he was shipping until the audit of Two Pine Enterprises in April 2014. I refused to do business with Phil Christ after the Two Pine Enterprises audit.

53. I did not know that any of my shippers was violating UPS policy and shipping cigarettes to consumers.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Buffalo, New York
Dated: August 25, 2016

Richard DelBello