# Exhibit 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE STATE OF NEW YORK and THE CITY OF NEW YORK, <br><br> Plaintiffs, <br><br> -v- <br><br> UNITED PARCEL SERVICE, INC., <br><br> Defendant. | 15 Civ. 1136 (KBF) <br><br> ECF CASE |

# DECLARATION OF FARRELL DELMAN

I, FARRELL DELMAN, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. My name is Farrell Delman, and I am submitting this declaration as my direct testimony in this case.

2. I am the president of TMA, formerly known as the Tobacco Merchants Association, which is located in Princeton Junction, New Jersey.

**Background**

3. I have been president of TMA since 1981 and previously served as its Assistant Director from 1977 to 1981.

4. TMA was founded in 1915 and is a trade association that prepares and supplies to its members comprehensive factual information about the global tobacco and e-vapor industry. In addition to supplying its members with information, non-member users of TMA information include non-governmental organizations, such as the World Health Organization, and government agencies, such as the Food and Drug Administration and the United States Tax and Trade Bureau, State Revenue Departments, universities and certain research groups who may not qualify for membership. TMA members include many organizations and companies across the

supply chain in the tobacco and e-vapor industries, as well as securities analysts, law firms, and other consulting and research groups.

5. As President of TMA, I oversee all TMA activities, including its information management functions and products as well as its finances. I report to the chairman of TMA's board of directors.

6. I also serve as the principal author of a daily and weekly publication relating to cigarettes and their nicotine alternatives and have authored analyses on the economic impact of various regulatory policies, including the 1998 Master Settlement Agreement with the main tobacco manufacturers and the 2009 Family Smoking Prevention and Tobacco Control Act.

7. In addition, I oversee TMA's production of regular bulletins tracking tax, policy and market developments relating to tobacco products for all 50 states and over 180 countries. In particular, our U.S. Tobacco and e-vapor Tax Guide covers all aspects of tobacco and e-vapor tax law in all 50 states and other city and county taxing jurisdictions and is regularly reviewed by the tax authorities in each state.

8. Beyond my work for TMA, I have served as a consultant to the governments of China, Korea, France, and Spain on cigarette industry mergers and acquisitions, foreign direct investment and the privatization of state-owned manufacturing enterprises, as well as the effective application of technology for tobacco content management.

9. I am regularly also called upon by consulting firms such as Gerson Lehman Group and CognoLink (now called Guidepoint) to provide guidance to private equity and hedge funds looking to invest in the tobacco and e-vapor industries.

10. I hold a B.A. in Philosophy from Dartmouth College, an M.A. in Philosophy, and an M.S. in Economics from the University of Helsinki, Helsinki, Finland (technically called Licentiates under the European System). A copy of my C.V. is attached hereto as Ex. DX-463.

**My Assignment**

11. I was asked by counsel for UPS to opine, based on my extensive knowledge of and experience with the tobacco industry, on the effect of increased cigarette excise taxes on the demand for alternatives to taxed cigarettes, including little cigars.

12. In addition, I have been asked to explain how the Native American retailers in New York meet the demand for lower cost tobacco alternatives by selling many kinds of products.

13. For my services, TMA is being compensated at the rate of $800 per hour, or $5,000 per full day, for my work in this matter. My compensation in this matter is in no way contingent or based on the content of my opinion or the outcome of this or any other matter.

**Cigarette Tax Increases**

14. Federal and state excise taxes on cigarettes increased significantly during the 2000s, leading to an increase in the cost of cigarettes for consumers.

15. At the federal level, cigarette taxes increased several times during the 2000s. The federal excise tax on cigarettes increased from 24 cents per pack to 34 cents per pack on January 1, 2000, and then to 39 cents per pack on January 1, 2002.

16. Following passage of the Children's Health Insurance Program Reauthorization Act ("CHIPRA"), Pub. L. 111-3, in 2009, the federal excise tax on cigarettes increased from 39 cents per pack to $1.01 per pack effective April 1, 2009, which is where the tax remains today. *See* Pub. L. 111-3, Section 703(b).

17. At the state level, excise taxes on cigarettes also increased in most states throughout the 2000s, but nowhere more so than in New York.

18. On March 3, 2000, New York increased its cigarette tax to $1.11 per pack from 56 cents per pack.

19. On April 3, 2002, the State increased the excise tax on cigarettes again, this time to $1.50, where it remained until June 3, 2008, at which time it was increased to $2.75 per pack.

20. On July 1, 2010, the State's excise tax on cigarettes was raised to $4.35 per pack, where the tax remains today. *See* N.Y. Tax Law § 471. By way of comparison, the average cigarette excise tax for all states was $1.63 per pack in State fiscal year 2015, or $2.72 less than New York's tax.

21. New York City imposed an eight cents per pack tax on cigarettes until July 2002, at which time the city's excise tax was raised to $1.50 per pack, where the tax remains today. N.Y.C. Ad. Code § 11-1302(e).

22. Starting in July 2010, and counting the federal excise tax of $1.01 per pack, the combined taxes on a pack of cigarettes in New York were $5.36 and in New York City $6.86, a level that is $5.23 more than in the vast majority of locations across the United States, which have neither city nor county taxes. Only Chicago consumers have a higher tax rate.

23. Additionally, the Cigarette Marketing Standards Act ("CMSA"), N.Y. Tax Law §§ 483-489, mandates a minimum margin that wholesalers must charge retailers on top of the base price for cigarettes, amounting to 3.875% of the base price plus 20 cents per carton of 10 cigarette packs. The CMSA also mandates that cigarette retail prices be at least 7% above those wholesale prices.

3

**Little Cigars**

24. Often called the "poor man's smoke," little cigars are rolls of tobacco wrapped in leaf tobacco or any substance containing tobacco that resemble cigarettes in size, shape, packaging and an integrated filter. Little cigars are not considered to be "cigarettes" under New York law, because little cigars are not wrapped in paper.

25. Little cigars, which some public health researchers call "cigarettes in disguise," are sold 20 to a pack and 10 packs to a carton, in ways indistinguishable from cigarettes, except for labeling on the packs and cartons. Little cigars also are considerably cheaper than cigarettes, given their much lower manufacturer's cost of production and prices, and are sold by Native American tobacco retailers and other tobacco retailers as a cheaper alternative to cigarettes. Given their price advantage and similarity to cigarettes, little cigars are a substitute of choice for smokers who can no longer afford, or no longer wish to pay for, expensive cigarettes.

**Cigar Taxes**

26. Little cigars, the cartons and packs of which are practically indistinguishable from cartons and packs of cigarettes, are not subject to tax in New York City. Although little cigars are not subject to the minimum price requirements of the Cigarette Marketing Standards Act, New York City has mandated, since 2014, that little cigars be sold in packs containing at least 20 little cigars for a minimum price of at least $10.50 per pack.

27. In addition, while cigarette packs should contain a State tax stamp, little cigars are not required to bear tax stamps. The State tax on cigarettes is paid by a stamping agent who affixes tax stamps to the cigarette packs and then passes the tax on to each subsequent purchaser in the distribution chain and ultimately the consumer. (Third Am. Compl. ¶ 15.)

4

28. The tax on little cigars however is paid by distributors who report to the State Division of Taxation and Finance monthly based on the number of packs of little cigars sold and the tax owed, and who then pass the cost of the tax down the distribution chain to the consumer. No tax stamp is applied to packs of little cigars. Distributors do not have to pay the tax on packs they sell to Native American reservations; however, distributors do provide monthly tax reports to the New York Department of Taxation and Finance, on which they include the number of little cigars sold tax-free to Native American tobacco retailers.

29. To address these issues and the growing popularity of little cigars. In June 2009, New York Assemblywoman Barbara Lifton introduced a bill that would have effectively treated little cigars as cigarettes for tax purposes, because of their "appearance, the type of tobacco used in the filler, or [their] packaging and labeling, [] likely to be offered to, or purchased by, consumers as a cigarette." The Assembly's Memorandum in Support of Legislation for that proposed bill specifically acknowledged that "little cigars are practically indistinguishable from cigarettes and are often consumed as less expensive cigarette alternatives." A copy of this document, on which I relied in forming my expert opinion, is attached hereto as Exhibit DX-047.

30. This bill did not become law, but, as noted below, New York State did eventually enact a law to tax little cigars at the same rate as cigarettes, which manufacturers reacted to, in many cases, by making them slightly heavier to avoid the little cigar classification and tax rate.

31. The federal excise tax on little cigars weighing not more than three pounds per thousand was four cents a pack prior to 2009, but following the passage of CHIPRA, in 2009, the federal excise tax on little cigars weighing not more than three pounds per thousand was increased by 97 cents per pack to $1.01 per pack of little cigars, which is equivalent to the federal excise tax on cigarettes.

32.     Prior to July 2010, little cigars were taxed by the State at a rate of 46% of the wholesale price, which resulted in a tax that was significantly less than the State's $2.75 tax on cigarettes.  In July 2010, the State amended its tax laws to tax packs of little cigars weighing not more than four pounds per thousand or having a filter at the $4.35 per pack rate also charged to cigarette packs.

33.     New York does not tax cigars as heavily as little cigars and therefore manufacturers, including Native American brands, made their little cigars into "little big cigars," just a little heavier so they would be taxed as cigars.

34.     New York classifies products as little cigars if their wrappers contain some amount of tobacco, such as homogenized tobacco leaf, and they weigh four pounds or less per thousand little cigars.  But, if little cigars weigh even a tiny amount more than four pounds per thousand and lack a filter, the State classifies them as cigars for taxation purposes.  The tax on cigars is 75% of the wholesale price, which, because little cigars have a low manufacturer's base price, can make little cigars that are classified as cigars for tax purposes even cheaper than regular little cigars.  Similarly, at the federal level, little cigars are taxed as cigars if they weigh more than three pounds per thousand.

**Little Cigars are Cheaper than Cigarettes**

35.     In addition to tax differences, the average base price of little cigars is much lower than the average base price of cigarettes: $12 per carton of little cigars on average versus $33 per carton on average for discount/non-premium cigarettes and $55 per carton on average for premium brand cigarettes.  Because of this base price differential and the fact that little cigars are exempt from the minimum pricing statute, a carton of little cigars remains much less expensive

than a carton of cigarettes, even when they are taxed the same. And these average base prices do not even take into account the May 2016 price increase by cigarette manufacturers.

36.     For example, not counting State Sales Tax, the State-mandated minimum retail price of a carton of cigarettes purchased in the State, outside New York City, ranges from $69.10 for 4th tier deep discount cigarettes, such as Ace, to $110.34 for a carton of premium cigarettes, such as Lucky Strike, Carlton, More, or Now. Popular brands like Marlboro sell at the State-mandated minimum price of $95.66 a carton, while other popular brands like Camel Filter, Winston, Salem and Kool sell at the State-mandated minimum price of $95.63 per carton.

37.     The cigarette tax in New York City raises cigarette prices by an additional $15 per carton for cigarettes sold there. As a result, not counting State Sales Tax, the State-mandated minimum retail price of a carton of cigarettes purchased in New York City ranges from $85.77 for deep discount cigarettes to $127.01 for premium cigarettes.

38.     By contrast, the base price of a carton of little cigars, not including State Sales Tax, ranges from $8.82 to $38.40 for a high-end brand, such as Winchester. At retail, even if little cigars are subject to the higher State tobacco tax rate (but not counting Sales Tax), a carton of little cigars costs between $61.02 and $90.60. In New York City, little cigars do not carry an additional New York City excise tax, creating a further gap between the retail price of cigarettes and the retail price of little cigars.

39.     And, as I explained earlier, if little cigars slightly exceed the four pounds per thousand (State) or three pounds per thousand (federal) weight limits, they are taxed at the lower rate for regular cigars.

**Proliferation of Little Cigars**

40. Unsurprisingly, demand for less expensive little cigars grew throughout the 2000s as state taxes on cigarettes grew. According to one report by the U.S. Department of Agriculture, around 2.4 billion pounds of little cigars were produced in 2000 as compared to almost 6 billion pounds in 2007. U.S. Dep't of Agriculture, *Economics Research Service. Tobacco Outlook* (Oct 24, 2007), p. 11, Table 9 (available at: http://usda.mannlib.cornell.edu/usda/ers/TBS//2000s/2007/TBS-10-24-2007.pdf). A copy of this report, on which I relied in forming my expert opinion, is attached hereto as Exhibit DX-043.

41. Based on my knowledge and experience tracking both taxes on tobacco products and trends in the tobacco market, I have concluded that the availability of alternative tobacco products, such as little cigars, proliferated in the 2000s as consumers looked for less expensive alternatives to cigarettes.

42. A consumer who regularly uses cigarettes but who can no longer afford to purchase them at their fully taxed price can switch to little cigars (or little big cigars) and still satisfy their habit at a much lower price.

43. Several studies confirm the link between increased taxes and the increased availability of little cigars and other alternative tobacco products, even as cigarette consumption has declined. Copies of these articles, on which I relied in forming my expert opinion, are attached hereto as Exhibit DX-466 (Gammon, Doris et al., *Effect of Price Changes in Little Cigars and Cigarettes on Little Cigar Sales: USA, Q42011-Q4 2013*, Tobacco Control (2015)); Exhibit DX-456 (Delnevo, C., Hrywna, M., Foulds, J., Steinberg, M., *Cigar use before and after a cigarette excise tax increase in New Jersey*, Addictive Behavior (2004) 29, 1804-05)); and

8

Exhibit DX-428 (Delnevo, C., et al., *Close, but no cigar: certain cigars are pseudo-cigarettes designed to evade regulation*, Tobacco Control (2016)).

44. Further, the decision earlier this year by the Food and Drug Administration to bring cigars under the regulation of the Family Smoking Prevention and Tobacco Control Act by its Center for Tobacco Products on May 5, 2016, (formally published in the Federal Register of May 10, 2016), is due specifically to FDA's research and acknowledgment that various demographic groups have continued to use cigars even as there has been a broader migration away from cigarettes, especially during the period 2010-2014.  A copy of this FDA publication, on which I relied in forming my expert opinion, is attached hereto as Exhibit DX-425.

**Native American Retailers Respond to Demand for Little Cigars**

45. Based on my conversations with distributors and my own research visits to several Native American tobacco retailers in New York, I can conclude that Native American tobacco retailers in New York reacted to the increased demand by offering a wide range of alternative tobacco products, especially little cigars.

46. On April 10, 11 and 12, 2016, I traveled to several Native American tobacco retailers in western New York to observe first-hand the kinds of products these retailers sell. These visits were part of my independent research and helped me form the basis for my opinion.

47. On April 10, 2016, I visited Native American tobacco retailer Turtle Pit in Steamburg, New York.  On April 11, I visited Cloud & Co. in Salamanca, Iroquois Smoke Shop in Gowanda, and Native Pride and Big Buffalo in Irving.  On April 12, 2016, I visited Smokin' Joe's in Sanborn and The Rez in Basom.

48. Each of these locations sold little cigars, including brands such as Swisher Sweets, Phillies and Seneca Little Cigars, and most sold other alternative tobacco products, too. Copies of photographs that I took during my visits are attached hereto as Exhibit DX-489.

49. I also am generally aware that Native American tobacco retailers sell little cigars and other alternative tobacco products based on my work monitoring the tobacco industry and from speaking with tobacco product distributors in New York, including Mountain Service Distributors Inc. and a former employee of Harold Levinson Associates.

**Assumption That Native American Tobacco Retailers Must Have Shipped Cigarettes is Not Reasonable**

50. The Third Amended Complaint includes photos of a number of Native American tobacco retailers and implies that it can reasonably be assumed, based merely on the appearance of the stores and what is found on the shelves in these stores, that these tobacco retailers must have shipped cigarettes to consumers. (*See* Third Am. Compl. ¶¶ 45-47.) In my opinion, this is an unwarranted assumption.

51. Virtually all tobacco retailers, whether on a Native American reservation or not, tend to sell an array of tobacco and non-tobacco products, including not only cigarettes but also large cigars, little cigars, roll-your-own tobacco and, increasingly, e-vapor products, including liquids and devices.

52. The fact that a Native American tobacco retailer sells cigarettes on site at its store does not suggest to me that the Native American tobacco retailers violate the law by shipping unstamped cigarettes to consumers. In fact, the period of Plaintiffs' allegations in this case (2010 to 2015) occurred during a documented increase in the sales of little cigars, which are in my opinion the closest substitute to cigarettes, and other alternative tobacco and nicotine products.

53. Based on the appearance of these tobacco retailers and the stores I personally visited, it is not reasonable to conclude that the Native American tobacco retailers were necessarily shipping illegal cigarettes. To the contrary, given the extreme similarity of little cigars and cigarettes, the documented growing popularity of little cigars as the price of cigarettes rose and demand for cigarettes decreased, it is reasonable to assume Native American retailers were shipping little cigars.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

August 25, 2016
Princeton, New Jersey

FARRELL DELMAN

11