# Exhibit 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE STATE OF NEW YORK and THE CITY OF NEW YORK,<br><br>               Plaintiffs,<br><br>               -v-<br><br>UNITED PARCEL SERVICE, INC.,<br><br>               Defendant. | 15 Civ. 1136 (KBF)<br><br>ECF CASE |

**DECLARATION OF CARL H. LOEWENSON, JR.**

CARL H. LOEWENSON, JR., under penalty of perjury, declares as follows:

1. I am a partner at the law firm Morrison & Foerster LLP, counsel for defendant United Parcel Service, Inc. ("UPS"). I am a member of the Bar of the State of New York, and I am admitted to practice before this Court.

2. Before joining Morrison & Foerster in 1990, I served as an Assistant United States Attorney in the Southern District of New York for five years. While at Morrison & Foerster, I was also a member, from 2001-2007, of the New York State Ethics Commission, a body charged with interpreting and enforcing New York State's ethics in government statutes.

3. For many years, Morrison & Foerster LLP has represented UPS on issues arising out of states' efforts to regulate common carriers. Since 2003, I have been personally involved in the firm's representation of UPS on litigation and investigation matters involving New York's regulations governing carriers' transportation of packages containing cigarettes. Through that representation, I have personal knowledge of the facts set forth in this declaration, which I submit as my direct testimony in this case.

A.  **The New York Attorney General's 2004 Investigation of UPS.**

4.  On August 6, 2004, the New York Attorney General's Office served a subpoena upon UPS, seeking information concerning UPS's compliance with PHL § 1399-*ll*. In early 2005, the New York Attorney General's Office served upon UPS a subsequent subpoena as part of the same investigation.

5.  Morrison & Foerster represented UPS in the AG's investigation.

6.  UPS and the New York Attorney General resolved the investigation through the Assurance of Discontinuance dated October 21, 2005.

B.  **UPS's Cooperation with New York State Under the AOD.**

7.  With the exception of the demand letter that prompted this lawsuit, I am aware of only three instances in which the State notified UPS of a possible violation by a shipper of UPS's cigarette policy: two instances in February 2011 and February 2012, and the incident in the summer of 2011 involving the Potsdam Shippers.

    **1.  February 15, 2011 Incident**

8.  On February 15, 2011, Christopher Leung of the New York Attorney General's Office submitted a letter to UPS concerning the shipment of one package containing cigarettes to a New York residential address. The letter is attached as Exhibit DX-066.

9.  My partner Mark David McPherson detailed the results of our investigation into the shipment, in a letter to Mr. Leung, dated February 28, 2011, attached as Exhibit DX-069. Mr. McPherson informed the Attorney General's Office that the shipment was the result of a cigarette retailer shipping a package containing cigarettes through The UPS Store #1338 ("the Center"), located in Blasdell, NY. The retailer lied to the Center clerk, telling him that the package contained personalized mugs. After learning about the incident, UPS immediately terminated service to the cigarette retailer, whether he attempted to ship packages through UPS

directly or through the Center. UPS took other action to ensure that neither the retailer nor the Center nor any other The UPS Store in New York State would ship packages containing cigarettes in the future. On February 23, 2011, The UPS Store franchisees in New York State were informed that they may not provide service to the particular cigarette retailer, through a notation in an electronic database of shippers who have used the Center in the past. UPS, through its subsidiary Mail Boxes Etc., Inc. ("MBE"), discussed this violation with the owner and employees of the Center, learned how the violation occurred, re-emphasized UPS's policy prohibiting the shipment of cigarettes to consumers, and asked the Center employees to be alert for customers who may be attempting to violate UPS policy. UPS also audited the Center. None of the packages UPS audited contained cigarettes or other tobacco products.

      10.     We heard nothing further from the Attorney General about this incident.

      **2.**     **February 13, 2012 Incident**

      11.     On February 13, 2012, Dana Biberman of the New York Attorney General's Office wrote a letter to Norman Brothers, UPS's then in-house counsel, and alleged that UPS delivered a package containing cigarettes to a California resident on behalf of a shipper named Don Doctor. The letter is attached as Exhibit DX-133.

      12.     Mr. McPherson detailed the results of our investigation into the shipment, in a letter to Ms. Biberman on February 23, 2012, attached as Exhibit DX-138. Mr. McPherson informed the Attorney General's Office that the shipment referred to in Ms. Biberman's letter was delivered on May 17, 2011. Although the package showed a return address for an individual named Don Doctor (7 Lincoln Ave., Silver Creek, NY 14136), the package was shipped using the account number for Evans Emergency Equipment Inc. (8542 Erie Rd., Angola, NY 14006-9612). A UPS account executive verified that Evans Emergency Equipment is not in the business of shipping cigarettes or other tobacco products. Apparently, Mr. Doctor tendered the shipment

3

to Evans Emergency Equipment, which shipped the package using its own UPS account number. We understand that Evans Emergency Equipment did not know, and had no reason to know, that the package contained cigarettes. Nevertheless, UPS terminated service to Evans Emergency Equipment for violating UPS's Terms and Conditions of Service, which prohibit shippers from permitting third parties to use their UPS account number to ship packages.

13. We heard nothing further from the Attorney General about this incident.

**3. June 2011 Incident Involving the Potsdam Shippers**

14. On June 24, 2011, Ms. Biberman, on behalf of the New York Attorney General, wrote a letter to Mr. Brothers, concerning cigarettes seized by law enforcement at the UPS Potsdam and Farmingville facilities. UPS forwarded the letter to Morrison & Foerster, and asked us to meet with Ms. Biberman in response to the letter. I am attaching Ms. Biberman's letter as Exhibit DX-089 (NYS-057342).

15. On August 9, 2011, along with my colleagues Mr. McPherson and Natalie Fleming Nolen, I met with Ms. Biberman regarding the seizures.

16. At the August 9 meeting, my colleagues and I addressed UPS's commitment to cooperate with the State in its investigation of shippers Action Race Parts, Jacob's Manufacturing, Mohawk Spring Water and Mohawk Distribution, and explained why we believed no penalty was warranted under the AOD.

17. At the August 9 meeting, we explained, among other things, that UPS's investigation revealed that in April of 2011, UPS discovered that shippers were potentially shipping cigarettes from the four shippers referenced above; that Jim Terranova, a UPS security department employee, contacted New York State Trooper Al Nitti for guidance, even though UPS understood that at the time, shipments of cigarettes from wholesalers to reservation retailers were legal; that Trooper Nitti informed Terranova that there was an ongoing investigation over

these shippers and instructed UPS to continue picking up packages from the four shippers; and that UPS complied with Nitti's request.

18. At the August 9 meeting, we also requested that New York State continue to contact UPS any time the State had information suggesting that a shipper was violating UPS's cigarette policy by delivering cigarettes to unauthorized recipients in New York—a request we had made repeatedly ever since UPS signed the AOD with the New York Attorney General. We reiterated UPS's commitment to cooperate with the State (and other government regulators) in terminating service to any shipper that is found to be in violation of UPS's cigarette policy.

19. Following the meeting, on August 17, 2011, in a letter from Ms. Biberman to my colleagues and me, the Attorney General's Office requested delivery data regarding the four shippers beginning October 21, 2005. I am attaching a copy of that letter as Exhibit DX-109 (NYS-057525).

20. Mr. McPherson responded to Ms. Biberman's letter on August 23, 2011, via email, stating that we would provide the delivery data. I am attaching a copy of Mr. McPherson's email as Exhibit DX-110 (UPS00037131).

21. On September 29, 2011, Mr. McPherson provided the State with delivery data and billing information regarding the four shippers and with further information regarding Jim Terranova's contact with law enforcement regarding potential cigarette shipments. I am attaching a copy of Mr. McPherson's email forwarding the requested information, along with the information the State requested, as Exhibit DX-125 (NYS-000547).

22. The delivery information included all shipments from Action Race Parts, Jacob's Manufacturing, Mohawk Spring Water, and Mohawk Distribution to New York addresses from October 21, 2005, to August 31, 2011. (*See* Exhibit DX-126, at UPS00060894).

23. The delivery information spreadsheet contained 7,601 entries ranging between May 4, 2007 and July 11, 2011.

- For Action Race Parts, it contained 2,372 entries between June 18, 2009 and June 21, 2011.

- For Jacob's Manufacturing, it contained 817 entries between May 4, 2007 and June 16, 2011.

- For Mohawk Spring Water, it contained 4,410 entries between November 11, 2010 and July 1, 2011.

- And, for Mohawk Distribution, it contained 2 entries on November 24, 2010 and April 27, 2011.

(*See* Exhibit DX-126, at UPS00060894).

24. After Mr. McPherson's September 29, 2011 email to Ms. Biberman, the State did not request any further information from UPS, or contact UPS in any way, regarding the events described above. The State did not impose penalties or seek any other relief from UPS arising from Ms. Biberman's June 24, 2011 correspondence to UPS and ensuing meeting and correspondence.

25. The State did not seek penalties or any other relief under the AOD in relation to Action Race Parts, Jacob's Manufacturing, Mohawk Spring Water, or Mohawk Distribution, until the allegations regarding those shippers in plaintiffs' Amended Complaint, filed on May 1, 2015.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

6

sf-3681383

Dated: New York, NY  /s/
      August 26, 2016  Carl H. Loewenson, Jr.

7

sf-3681383