# EXHIBIT 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE STATE OF NEW YORK and THE CITY
OF NEW YORK,

                            Plaintiffs,

                  -v-

UNITED PARCEL SERVICE, INC.,

                            Defendant.

15 Civ. 1136 (KBF)

**ECF CASE**

## DECLARATION OF JEFFREY PALOMBARO

I, Jeffrey Palombaro, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.       My name is Jeffrey Palombaro. I live in Buffalo, New York. I have personal

knowledge of the facts set forth below, and I am submitting this declaration as my direct

testimony in this case.

2.       I have been employed by United Parcel Service, Inc. ("UPS") since April 29,

2002. My current title is Business Manager of the Potsdam and Plattsburgh centers.

3.       I earned a Bachelor of Business degree at Bryant & Stratton College in 2010.

4.       I started my career at UPS as a pre-loader in the Buffalo Center, and then I

became a supervisor overseeing the morning sort of packages in the Buffalo Center. I moved to

the Niagara Falls Center as a pre-load supervisor, then became a Package Center Supervisor at

the Buffalo Center. I then spent three months as a driver, to understand the role of a driver. I was

an on-car supervisor in Buffalo from 2010-2013.

5.       I became an on-car supervisor in the Batavia Center in January 2013. I oversaw

six part-time supervisors, twenty-three full time drivers and about fifteen casual drivers.

6.     I was at that position until July 2016, when I received my new position as a Business Manager.

7.     I received, or depending on my role, gave visual or verbal training to the drivers before every shift. Every day there is a Pre-Work Communication ("PCM") delivered to the UPS drivers. The topics of the PCMs vary, but are often related to safety and service, including policies and changes in policy. Drivers were instructed to report to me, or one of the other supervisors, if they had any suspicion that a shipper was not fully complying with UPS's policies.

8.     In these trainings UPS policies were discussed, including the tobacco policy. The tobacco policy was also explained on the communications board in addition to the placards in each center.

9.     I know UPS's tobacco policy and I understand the importance of enforcing it. UPS's tobacco policy prohibits the shipment of cigarettes to consumers nationwide. Shippers are required to comply with all state and federal regulations related to shipping tobacco products.

10.    It is my understanding that UPS policy requires that for a shipper to ship tobacco other than cigarettes to a consumer, the shipper must sign a Tobacco Agreement. If a shipper intends to ship tobacco products only to licensed business (not consumers), a Tobacco Agreement is not required.

11.    In March 2014, I realized that origin scans for an account in Batavia were missing. Origin scans are the first scans that occur when a package is scanned at a UPS location. We tracked the packages at issue and realized they were being dropped off at a UPS store and had origin scans at the Buffalo Center, rather than receiving an origin scan at the Batavia Center. This is referred to as "drop shipping."

2

12.     The account at issue was Two Pine Enterprises. The primary address associated with the account was 7238 Meadville Road, Basom, NY, 14013 on the Basom Reservation, and its primary account number was YA5535. I did not know if the account was a tobacco shipper.

13.     I immediately informed Jim Gallivan, the Business Manager for the Batavia center of the drop shipping. Jim Gallivan and I reached out to others at UPS including Rich DelBello, the Account Executive for the Two Pines account. Rich DelBello wrote an email to Jim Gallivan and me, as well as other UPS employees, informing us that he had explained to the owner of Two Pine Enterprises that under her Tobacco Agreement with UPS she was required to ship from the account address. He told us that she said she was drop shipping because the pick up time was too early but would go to an on-call pick up basis. The email chain regarding this communication is attached as Exhibit DX-529.

14.     In April, a couple weeks after this discussion, Vincent Guarino, a driver at the Batavia center, who was assigned to accounts on the Basom Reservation including Two Pine Enterprises, approached me and mentioned that he now had a daily pick up for Two Pine Enterprises.  He described the Two Pine Enterprises location as a residential address.  Pick-ups from residences are not unusual, particularly in upstate New York.

15.     Vincent Gaurino told me that the owner had been less friendly to him, and that he was getting an uneasy feeling.  He did not mention any specific concerns. He said that the shipper was pushing him for a later pick up time. I was not aware of any other concerns besides this timing issue, and it did not occur to me that the account might be shipping cigarettes (this was not a concern raised by Vince Guarino).

16.     I told Vincent Gaurino that I would look into this account to ensure they were shipping at the account pickup location and to resolve the pick-up time.

17.     Within a day or so of my conversation with Vincent Guarino, I got a call from Matt Szelagowski, telling me that a center clerk at the UPS air hub in Philadelphia had noticed cigarettes in a Two Pine Enterprises package when a package broke open in the facility. Matt Szelagowski instructed me to conduct an audit of Two Pine Enterprises.

18.     I had not done an audit before so I contacted a member of the security team, Bob Sluberski, who told me to lock the truck when it came into the building, open the packages and photograph the contents. I also received an email from Matt Szelagowski with instructions on how to conduct the audit, which is attached as Exhibit DX-291.

19.     I conducted the audit on April 17, 2014 and found cigarettes in the packages. I took photographs of the contents and sent them to Matt Szelagowski. I had to send five emails due to the number of photographs that were taken. Copies of the emails regarding the audit are attached as Exhibits DX-293, DX-294, DX-295, DX-296, DX-297.

20.     I was told by Matt Szelagowski that the Two Pine Enterprises account was terminated immediately. A copy of the email from Matt Szelagowski is attached as Exhibit DX-528. A copy of the termination letter, dated April 18, 2014, is attached as Exhibit DX-299.

21.     I told the driver, Vincent Guarino, that the account was terminated.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Plattsburgh, New York
Dated:  August 25, 2016                                         Jeffrey Palombaro

4

dc-842082