# EXHIBIT 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE STATE OF NEW YORK and THE CITY OF NEW YORK, <br><br> Plaintiffs, <br><br> -v- <br><br> UNITED PARCEL SERVICE, INC., <br><br> Defendant. | 15 Civ. 1136 (KBF) <br><br> ECF CASE |

**DECLARATION OF STEVEN TALBOT**

Steven Talbot, under penalty of perjury, declares as follows:

1. I am employed by United Parcel Service, Inc. ("UPS") as a full time dispatch/preload supervisor, at UPS's package center in Potsdam, New York (the "Potsdam center"). I have personal knowledge of the facts set forth below, and if called as a witness, I could and would testify under oath to the matters set forth in this declaration.

2. The Potsdam center is a UPS package center that picks up and delivers packages to customers within the area of the Potsdam center, and sends and receives (via feeder trailer) packages going to and from the UPS hub (centers feed into hubs, which are larger than centers) located in Syracuse, New York. The Potsdam center picks up and delivers to customers located in fifty different towns in portions of Franklin and St. Lawrence County, adjacent to the Canadian border.

3. I have been employed by UPS at the Potsdam facility since June 1981 (with a few exceptions for special assignments outside of Potsdam). I began as a part-time loader while I was in college, later became a driver, and was eventually promoted to a supervisor position. I have

1

held my position as full-time dispatch/pre-load supervisor in the Potsdam facility since 2000. As dispatch/pre-load supervisor, I am generally responsible for the night operation at the facility, including the return of package cars to the center in the afternoon from their pickup operations, dealing with inbound and outbound feeder trailers, sortation of packages for delivery the following day and planning the next day's package car routes (delivery and pick up). I supervise a total of approximately 65 employees, including 27 full-time drivers. I report to the manager of the Potsdam center, who also serves as the manager of the UPS Utica, New York center. Accordingly, I am (and have been since 2000) the senior-most UPS employee employed on a full-time basis at the Potsdam center.

4.     The area covered by the Potsdam center includes a large Indian reservation known as the Mohawk/St. Regis reservation. UPS picks up and delivers to addresses located on the reservation; in fact, two of the routes from the Potsdam center pick up and deliver to locations on the reservation. There are many businesses located on the reservation, including a casino and a variety of stores.

5.     Don Jarvis is a long-time driver in the Potsdam center.  I have known him for quite some time.  I hired him into his first position at UPS many years ago.  Drivers at UPS "bid" for their routes every two years on the basis of seniority with the union. In 2011, Don's route was one of the two routes that covered the reservation.  In about April 2011, Don came to me and reported that one or more of his customers located on the reservation was tendering large quantities of cigarettes for shipment by UPS.  I came to learn that these accounts included Mohawk Spring Water, Jacobs Manufacturing (as that account was known to UPS), Tarbells, and Mohawk Distribution. Before Don came to let me know around April 2011, I was not aware that these accounts were shipping cigarettes.  I was, however, aware of publicity in New York about

taxes and cigarettes, because the Indian tribes were in a legal dispute with the State over whether the State could tax their cigarette sales. Don told me that he had assumed that these shipments were legal because they were being sent to other Indian reservations in New York. But he was concerned by the volume of the shipments and wanted to make sure they were legal.

6. Immediately after my conversation with Don Jarvis about cigarettes at the reservation, I contacted the UPS account executive assigned to our area, Chryl Claflin. Attached as UPS Exhibit DX-074 is a true and correct copy of my April 26, 2011 e-mail to Ms. Claflin asking her to call me about this issue. I am certain that Ms. Claflin and I spoke after this e-mail, but I do not recall what she told me.

7. At about the same time that I contacted Ms. Claflin, I also contacted our UPS Security Department representative, Jim Terranova, to ask whether we should continue picking up from these shippers. Mr. Terranova was at that time based in Syracuse, New York, and was the UPS security supervisor assigned to the Potsdam center. Mr. Terranova told me that he knew someone who had responsibility for cigarette enforcement matters with New York State law enforcement, and that he would contact him to find out what to do.

8. Very soon after I spoke with Mr. Terranova, he called me back to let me know that he had spoken with his contact in New York State law enforcement, and that he was told by his contact that there was an ongoing investigation regarding the shipment of cigarettes from the reservation and that we should continue to pick up from these accounts in order not to jeopardize the ongoing investigation. After this second conversation with Mr. Terranova, I told Don Jarvis and other drivers in our center what we had been instructed to do by State law enforcement—continue picking up these accounts as usual until we were told otherwise by law enforcement.

This did not seem like an unusual request to me, since we are asked from time-to-time to cooperate with law enforcement when they are investigating suspicious activity in our network.

9. In accordance with the instructions that had been relayed to me from State law enforcement, we continued to make pick-ups from the accounts on the reservation that were tendering cigarettes for shipment. Whenever anyone in the Potsdam center questioned these shipments, I advised them that the matter was under investigation, and that we were awaiting further instructions from law enforcement.

10. At some point in June 2011, two representatives from State law enforcement came to the Potsdam center about the cigarette shipments made from the reservation. I told them that we had been waiting for them to show up, based on our prior contacts with law enforcement. They told me that in light of recent developments in the law, UPS should no longer accept unstamped cigarettes for shipment from manufacturers or distributors on the reservation. I told them that UPS had some packages from the reservation cigarette shippers at the Potsdam center that had been picked up earlier in the day, and that some additional packages would be picked up later in the day. The State representatives said that they could not seize the packages, but they asked us to hold the packages until they could be seized by the United States Bureau of Alcohol Tobacco and Firearms ("ATF"). We complied with this request and held the packages until ATF seized them. We also stopped providing service to each of the shippers that had been tendering cigarettes to us.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: Messina, New York  /s/ *Steven Talbot*
       August 26, 2016  Steven Talbot