UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE STATE OF NEW YORK and THE CITY
OF NEW YORK,

                    Plaintiffs,

           -v-

UNITED PARCEL SERVICE, INC.,

                  Defendant.

15 Civ. 1136 (KBF)

**ECF CASE**

---

## DEFENDANT UNITED PARCEL SERVICE, INC.'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Paul T. Friedman (Admitted *Pro Hac Vice*)
Ruth N. Borenstein (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
PFriedman@mofo.com
RBorenstein@mofo.com

Carrie H. Cohen
Jamie A. Levitt
Mark David McPherson
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
CCohen@mofo.com
JLevitt@mofo.com
MMcPherson@mofo.com

Gregory B. Koltun (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
GKoltun@mofo.com

Deanne E. Maynard (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006-1888
Telephone: (202) 887-1500
DMaynard@mofo.com

*Attorneys for Defendant*
United Parcel Service, Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   AS A MATTER OF LAW, THE AOD CANNOT BE CONSTRUED TO PROVIDE THE STATE THE REMEDY IT SEEKS. ...................................... 3

    A.   The AOD Must Be Construed According To Its Express Terms. ......................... 3

    B.   The State Cannot Recover The Remedy It Seeks For Alleged Breaches Of The Audit Provision. ........................................................................ 5

        1.   UPS Complied With The AOD's Audit Requirement, As Written. .............. 5

        2.   The State's Theory That It Is Entitled To An Every-Package Penalty For A Breach Of The Audit Provision Is Legally Incorrect. .................................. 7

    C.   UPS Complied With The AOD's Delivery Restrictions And Other Requirements. ........................................................................ 8

II.   PLAINTIFFS FAILED TO PROVE THE MOST BASIC ELEMENTS OF THEIR CLAIMS—(1) THAT THE PACKAGES UPS TRANSPORTED CONTAINED CIGARETTES, AND (2) THAT UPS KNEW AS MUCH. .................. 12

    A.   Plaintiffs Failed To Offer Any Evidence Of Package Contents For Virtually All Packages And Shippers. ........................................... 12

    B.   Plaintiffs Cannot Rely On Tobacco Market Data As Circumstantial Evidence To Prove Package Contents. ........................................ 15

    C.   Plaintiffs Failed To Prove That UPS Knowingly Delivered Any Packages Containing Cigarettes To Consumers. ......................................... 16

III.   UPS'S COMPLIANCE WITH THE AOD EXEMPTS UPS FROM CLAIMS UNDER THE PACT ACT AND N.Y. PHL § 1399-*ll*. .................................. 17

IV.   PLAINTIFFS FAILED TO PROVE THAT ANY MONETARY RELIEF IS APPROPRIATE. .................................................................. 17

    A.   Plaintiffs' Continued Shift In Damages And Penalties Theories Proves The Prejudice To UPS From Trial By Ambush. ................................ 17

    B.   Plaintiffs Cannot Blame UPS For Their Failure Of Proof. ............................ 19

    C.   UPS's Diversion Argument Is Relevant And Unrebutted. ............................ 20

    D.   The Health Issues Associated With Smoking Do Not Subject UPS To Penalties. ...................................................................... 21

**TABLE OF CONTENTS**
**(continued)**

Page

V.   PLAINTIFFS FAILED TO PROVE THAT ANY INJUNCTIVE RELIEF IS
     APPROPRIATE.................................................................................................. 21

CONCLUSION............................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ala. Legis. Black Caucus v. Alabama,*
    135 S. Ct. 1257 (2015) ............................................................................................12

*Am. Airlines, Inc. v. Wolens,*
    513 U.S. 219 (1995) ....................................................................................1, 4, 23

*Bank of N.Y. Tr. Co. v. Franklin Advisers, Inc.,*
    726 F.3d 269 (2d Cir. 2013) ......................................................................................3

*City of New York v. Golden Feather Smoke Shop, Inc.,*
    597 F.3d 115 (2d Cir. 2010) ....................................................................................22

*City of New York v. Mickalis Pawn Shop, LLC,*
    645 F.3d 114 (2d Cir. 2011) ....................................................................................24

*Deerskin Trading Post, Inc. v. United Parcel Service of Am., Inc.,*
    972 F. Supp. 665 (N.D. Ga. 1997) ..........................................................................22

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ................................................................................................22

*Goldberg v. Kelly,*
    397 U.S. 254 (1970) ................................................................................................18

*Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.,*
    467 U.S. 51 (1984) ....................................................................................................5

*Kramer v. Time Warner, Inc.,*
    937 F.2d 767 (2d Cir. 1991) ....................................................................................14

*Pordy v. Land O' Lakes, Inc.,*
    No. 01-0579, 2001 WL 1478808 (S.D.N.Y. Nov. 20, 2001) ..................................12

*R/S Assoc. v. New York Dev. Auth.,*
    98 N.Y.2d 29 (2002) ..................................................................................................5

*Rowe v. New Hampshire Motor Transp. Ass'n,*
    552 U.S. 364 (2008) ..................................................................................................4

*S.E.C. v. First Jersey Sec., Inc.,*
    101 F.3d 1450 (2d Cir. 1996) ..................................................................................22

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*S.E.C. v. Mgmt. Dynamics, Inc.*,
 515 F.2d 801 (2d Cir. 1975) ...................................................................... 22-23

*Schlaifer Nance & Co. v. Estate of Warhol*,
 119 F.3d 91 (2d Cir. 1997) ............................................................................. 5

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
 538 U.S. 408 (2003) ...................................................................................... 18

*State of New York v. United Parcel Serv., Inc.*,
 No. 15-1136, 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) ...................... 13, 20

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
 282 U.S. 555 (1931) ...................................................................................... 19

## STATUTES AND RULES

Fed. R. Civ. P. 53(a)(3) ...................................................................................... 23

Fed. R. Civ. P. 65(d) ......................................................................................... 23

Fed. R. Evid. 403 .............................................................................................. 18

Fed. R. Evid. 702 .............................................................................................. 18

Fed. R. Evid. 801 .............................................................................................. 18

Fed. R. Evid. 901 .............................................................................................. 18

Fed. R. Evid. 1006 ............................................................................................ 18

N.Y. Pub. Health L. § 1399-*ll* ............................................................. 1, 2, 4, 8, 16, 17

New York Executive Law § 63(12) .................................................................. 23

## PRELIMINARY STATEMENT

Plaintiffs' post-trial brief at last makes their theory of liability explicit: while repeatedly referring to the AOD as imposing "strict liability" on UPS (*see, e.g.*, ECF No. 491 § I(B)(1)(b) & ¶¶ 1014, 1023), plaintiffs contend that UPS has continuously violated the AOD just by accepting packages "tendered by obvious cigarette dealers" (*id.* at 2). But plaintiffs cannot point to a single contractual provision that provides for strict liability or that prohibits acceptance of shipments from "cigarette dealers." That is significant because the AOD is a comprehensive, reticulated, detailed arrangement governing UPS's shipment of cigarettes to consumers. As plaintiffs themselves note, it imposes 50-odd separate requirements on UPS. Not one of those, however, requires what plaintiffs seek to enforce. Indeed, their discussion of UPS's supposed failure to comply with the AOD is completely divorced from the specific AOD "requirements" they identify. (*Compare* ECF No. 491 ¶¶ 34-59, *with id.* ¶¶ 1024-46.) And their entire theory of relief under the AOD rests on a re-writing of both the audit provision and the penalty provision.

That is why plaintiffs devote an entire section of their post-trial brief to their vision of a "harmonious," "compensatory" construction of the AOD (*id.* ¶¶ 1003-1023)—which is nothing other than an impermissible request for this Court to rewrite the contract. Both bedrock contract law and the preemptive effect of federal law block this effort and "confine[]" the Court "to the parties' bargain, with no enlargement or enhancement." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228, 233 (1995). Moreover, the Due Process Clause requires advance notice of prohibited conduct before *punishment* can be imposed against UPS.

The truth is—and the trial evidence establishes—that UPS complied with each and every obligation actually imposed by the AOD. The AOD's plain language requires UPS to comply with N.Y. PHL § 1399-*ll*, but nowhere does it prohibit UPS from doing business with cigarette

dealers. To the contrary, the AOD balances competing policy directives—including UPS's duty to provide service without discrimination, which plaintiffs would replace with a duty to discriminate—by setting forth specific obligations to minimize (but not eliminate) the risk of unknowing shipments, with which UPS complied. Plaintiffs ask this Court to rewrite the AOD because they failed to meet their burden of proving any knowing shipment of cigarettes to individual consumers. On this record, the Court could not find that UPS breached any obligation actually imposed by the AOD or applicable state or federal law.

Plaintiffs also failed to prove any legal or factual basis on which this Court could possibly award any monetary remedy. With the exception of a tiny fraction of the packages on which they base their claims, they offered no evidence of the contents of the packages at all—much less evidence that UPS knew any such packages contained cigarettes. Their failure to do so defeats all of their claims, including their claim that UPS somehow lost its exemption to the PACT Act and N.Y. PHL § 1399-*ll* at some unspecified time, with no notice.

Plaintiffs' post-trial submission of new documents, new methodologies, and new calculations further demonstrates the unreliable nature of plaintiffs' constantly-shifting damages and penalties claim, and exacerbates the continuing prejudice to UPS from their utter failure to timely disclose this information. UPS has been deprived of the opportunity to subject either Court Exhibit 1 or Appendices A and B to the crucible of cross-examination, and neither of plaintiffs' (inconsistent) damages submissions constitutes evidence at all—much less legally sufficient evidence to support an award of the magnitude sought by plaintiffs.

Nor does the record provide a basis for the Court to award injunctive relief or appoint a special master. Plaintiffs failed to prove that UPS did not comply with any legally enforceable obligation in the past; *a fortiori*, they failed to prove any cognizable risk of future misconduct.

Even were the Court to accept plaintiffs' invitation to rewrite the AOD, plaintiffs offered no evidence that UPS would be unable or unwilling to comply with additional obligations. To the contrary, the record shows that UPS voluntarily enhanced its compliance program. Thus, neither injunctive relief nor a monitor would be justified.

Finally, plaintiffs' brief is full of mis-statements regarding the record. For example:

- Plaintiffs state that "UPS has failed to audit Seneca Promotions." (ECF No. 491 ¶ 906.) In fact, the audit occurred. (DX-600 ¶ 140; DX-363.)

- Plaintiffs state that "UPS resumed shipments for Indian Smokes after it was disciplined." (ECF No. 491 ¶¶ 453, 846.) In fact, UPS did not pick up a single package from Indian Smokes following the driver report. (DX-600 ¶ 75; DX-515; PX-162.)

- Plaintiffs state that driver Candice Sheridan spoke to a Potsdam Center Supervisor and Union Steward in the fall of 2010—before UPS was instructed to continue shipping. (ECF No. 491 ¶ 739.) In fact, Sheridan testified the conversation occurred in "[t]he spring of 2011." (Sheridan Tr. 42:2-46:5, 66:21-67:2.)

While UPS could fill this entire reply brief just by correcting errors and mischaracterizations such as these, UPS trusts the Court will rigorously scrutinize both parties' submissions in light of the citations that they have (and have not) provided.

## ARGUMENT

### I.   AS A MATTER OF LAW, THE AOD CANNOT BE CONSTRUED TO PROVIDE THE STATE THE REMEDY IT SEEKS.

#### A.   The AOD Must Be Construed According To Its Express Terms.

As plaintiffs concede, the AOD is a settlement agreement governed by ordinary contract construction principles. (ECF No. 491 ¶ 995.) Its construction is a matter of law, and it must be construed according to its "plain meaning," "to conform to the parties' reasonable expectations." *Bank of N.Y. Tr. Co. v. Franklin Advisers, Inc.*, 726 F.3d 269, 276, 279 (2d Cir. 2013).

The law of federal preemption compels the same result. The Court must enforce the AOD according to its terms, without any enlargement of agreement's provisions. The only claims that

survive FAAAA preemption are "routine" breach of contract claims that are "confine[d] . . . to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233 (interpreting identical preemption provision governing air carriers); *see Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364 (2008) (holding preempted under FAAAA state law regarding transportation of cigarettes). Thus, the FAAAA precludes this Court from imposing obligations and penalties not explicitly set forth in the AOD.

As UPS explained in its opening brief, the AOD includes none of the obligations and penalties the State seeks to impose after the fact:

- Paragraph 24 requires UPS to audit a "shipper"—not a package—and only when there is a reasonable basis to believe that the shipper is shipping cigarettes to consumers (ECF No. 492 COL, § I(E)(4).); it does not require UPS to audit every business on "*Indian reservations*," or even every tobacco business. (ECF No. 491 ¶ 1028 (emphasis by plaintiffs).)

- Paragraph 42 provides for the stipulated penalty only for a "violation" of the AOD, but the exceptions to the penalty must be read to limit the scope of a penalty-triggering "violation" in the first place: it applies only to violations of the delivery restrictions in Paragraph 17 of the AOD. Any other breach of the AOD, including a breach of the audit provision, is just that—a breach, not a violation. (ECF No. 492 COL, § I(A).)

- Neither Paragraph 42 nor Paragraph 24 provides that UPS is liable for an every-package penalty for a breach of the audit provision. (*Id*. COL, § I(E)(4), § X(E)(1).)

- Even were the Court to read into Paragraph 42 a penalty for a breach of the audit provision, because Paragraph 24 requires UPS to audit "shippers"—as opposed to packages—Paragraph 42 cannot be read to impose a per-package penalty, as opposed to a per-shipper penalty. (*Id*.) A failure to audit would be merely a failure to audit, resulting in at most a single penalty of $1,000 per shipper. (*See infra* at 8.)

- The words "compensation," "damages," "injuries"—or any other synonym for those concepts—are nowhere included in the AOD. (*Cf.* ECF No. 491 ¶ 1008 (contending that purpose of AOD was to "compensat[e] the State"). The sole paragraph that speaks at all to the AOD's purpose, which plaintiffs do not even cite, states that the intention of the AOD is to "promote further and ongoing

cooperation between UPS and the Attorney General concerning UPS's compliance with PHL § 1399-*ll*." (DX-23 at 5.)

Apparently recognizing that they seek to impose obligations found nowhere in the AOD, plaintiffs request this Court to construe it "harmoniously," giving effect to its provisions as a whole. (ECF No. 491 ¶ 1003.) That principle has no application here, where plaintiffs point to no two provisions that otherwise would nullify or conflict with one another. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 100 (2d Cir. 1997). Nor can plaintiffs take refuge in the adage that individuals "must turn square corners when they deal with the government." (ECF No. 491 ¶ 999.) That principle works both ways: "[i]t is no less good morals and good law that the Government should turn square corners in dealing with the people." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 61 (1984). The AOD thus must be construed "according to its terms." *R/S Assoc. v. New York Dev. Auth.*, 98 N.Y.2d 29, 32 (2002).

### B.     The State Cannot Recover The Remedy It Seeks For Alleged Breaches Of The Audit Provision.

#### 1.     UPS Complied With The AOD's Audit Requirement, As Written.

The State's entire monetary claim under the AOD depends on turning the audit provision into something never agreed to by the parties. (ECF No. 491 ¶ 1011.) The State argues that UPS is liable for a $1,000 penalty for each package UPS transported for a shipper that the State claims UPS should have audited. (ECF No. 491-1 (Appendix B) at 2.) Tellingly, plaintiffs never even quote the audit provision in full:

> UPS shall audit shippers where there is a reasonable basis to believe that such shippers may be tendering Cigarettes for delivery to Individual Consumers, in order to determine whether the shippers are in fact doing so.

(DX-23 ¶ 24.)

UPS complied with this obligation by auditing every shipper it should have. (ECF No.

492 FOF, § V(E), COL, § I(E).) The State's argument to the contrary is based on a shipper's presence on the PACT Act List, or in the Tobacco Watchdog Group letter, or claims/tracers, or supposed connections between accounts that the State contends UPS should have noticed. (*See, e.g.*, ECF No. 491 ¶¶ 321, 322, 328, 394, 429, 444.) UPS debunked all of these supposed audit triggers in its post-trial brief. (*See* ECF No. 492 FOF, § V(E), COL, § I(E).)

The State failed to prove *when* a shipper audit was required as to any particular shipper. The audit provision requires UPS to audit a shipper when "there is a reasonable basis to believe" that a shipper may be shipping cigarettes to consumers. The State never says at what specific point in time, and based on what evidence, UPS supposedly had such a "reasonable basis to believe" that each of the shippers identified in the State's damages calculations was shipping cigarettes to individual consumers, thus giving rise to the AOD's audit obligation.

Instead, the State simply assumes that UPS's audit obligation arose with the very first shipment they identify, for every single shipper at issue. The State's position, then, is that UPS had an obligation to audit every shipper based on nothing other than the fact that a shipper was a tobacco business, or (in the case of shippers like EExpress, which UPS did not even believe was shipping tobacco) was simply a business located on one of "*New York's Indian reservations*." (ECF No. 491 ¶ 1028 (emphasis by plaintiffs).) Aside from the concerns raised by such a blatant effort to require UPS to engage in racial profiling, the State's position ignores the facts about the shippers themselves: as the evidence at trial showed, all of the shippers sold products other than cigarettes; indeed, out of the 28 audits UPS conducted, UPS found no cigarettes at all in 22 audits. (ECF No. 492 ¶ 44.)

The text of the audit provision does not support the State's reading of it. Had the State meant to require UPS to audit every tobacco account, it could have written the audit provision to

6

say as much. Instead, the audit provision only requires UPS to audit a shipper that "there is a reasonable basis to believe" is shipping cigarettes to consumers (DX-23 ¶ 24), and UPS audited a shipper any time such a reasonable basis arose (*see supra* at 5-6).

> **2.      The State's Theory That It Is Entitled To An Every-Package Penalty For A Breach Of The Audit Provision Is Legally Incorrect.**

The State's theory that UPS is liable for an every-package penalty following a supposed failure to audit a shipper departs from the plain meaning of both the penalty provision and the audit provision.

First, the plain language of Paragraph 42 limits the AOD's $1,000 penalty to a "violation" of the AOD's delivery restrictions (unless excepted), not the other requirements of the AOD. (DX-23 ¶ 42.) Paragraph 42 only mentions a "violation" in the context of a violation of the delivery restrictions. It does so in the two exceptions to the $1,000 penalty for a "violation," both of which delineate circumstances in which a violation of the delivery restrictions does not trigger a penalty. (*Id.*) The two exceptions thus mirror the delivery restrictions in Paragraph 17, confirming that a "violation" is limited to a failure to comply with the delivery restrictions in Paragraph 17. (ECF No. 492 COL, § I(A).)

The State essentially concedes that not every breach of the AOD could be a "violation" triggering a penalty. The State identifies unanswerable questions about how Paragraph 42's penalty might apply to breaches of other requirements of the AOD. (ECF No. 491 ¶ 1016 (asking but not answering questions about how penalties apply to other breaches of the AOD).) That is equally true of the audit provision. The only difference is that the State imagines an answer to the questions in the context of the audit provision, claiming that the AOD's "metric" for a violation of the audit provision is every single package UPS accepts for a shipper it should have audited, regardless of package contents. (*See* ECF 492 ¶¶ 257-262, 307-331, 557-569.) That "metric" is

simply nowhere to be found in the AOD.

Second, the plain language of Paragraph 24 does not support the State's audit-penalty theory. Paragraph 24 does not provide that UPS must audit a shipper "every time" or "every day" after UPS first has a reasonable basis to believe the shipper is shipping cigarettes to consumers. But even assuming that the audit provision did require UPS to do so, Paragraph 24 does not provide that UPS subsequently must conduct a separate audit of each *package*, the basic "metric" for the State's audit-penalty theory. Paragraph 24 requires audits of "shippers," not of "packages." (DX-23 ¶ 24.)

Thus, even were the State's reading of what constitutes a "violation" accepted, the AOD cannot be read to mean that UPS commits a "violation" each time it accepts a package from a shipper it should have audited. At most, rather, UPS could be deemed to breach the audit provision each time it fails to audit a "shipper," thus limiting any penalties for a failure to audit to an absolute ceiling of $1,000 per failure to audit a shipper upon reasonable belief that it is shipping cigarettes to individual consumers. Nowhere does the penalty provision contemplate punishing UPS to the tune of $1,000 for every package accepted after some unspecified date when plaintiffs now claim, in hindsight, UPS should have audited the shipper.

### C.    UPS Complied With The AOD's Delivery Restrictions And Other Requirements.

UPS complied with the AOD's core "Restriction" in Paragraph 17, requiring UPS to "comply with PHL § 1399-*ll*(2), and adhere to the UPS Cigarette Policy described in Paragraph 15 prohibiting the shipment of Cigarettes to Individual Consumers in the United States." (DX-23 ¶ 17.) Section 1399-*ll* prohibits a carrier from knowingly delivering cigarettes to unauthorized recipients, and plaintiffs failed to prove that UPS ever did so. UPS's post-trial brief detailed plaintiffs' failure of proof that UPS knowingly delivered cigarettes to consumers. (ECF No. 492

FOF, § V(C), COL, § I(B), § II.) UPS picked up sealed packages from the shippers, and had no

reason to know that any packages contained cigarettes (if plaintiffs could even prove that any

packages did, *see infra*, at § II). Even for those shippers that sold cigarettes and other tobacco

products, the shippers assured UPS that they were shipping cigars or other legal tobacco

products, not cigarettes. Absent a reason to doubt a shipper's assurance, UPS had no reason to

audit; surely the State and City of New York do not mean to suggest that this Court should

decide the case based on a presumption that shippers on "*Indian reservations*" cannot be trusted.

Moreover, UPS's audits confirmed that the shippers' assurances were reasonable: out of 28

audits UPS conducted, 22 found no cigarettes. (ECF No. 492 ¶ 44.)

UPS also complied with the remainder of the AOD's requirements. The State's

allegations that UPS violated other provisions of the AOD all depend on reading the provisions

far beyond their plain terms.

Plaintiffs claim that "between [sic] it was first collected and prior to 2014, UPS never

updated the tobacco database with the information about suspected cigarette sellers." (ECF No.

491 ¶ 146.) But UPS did update the Tobacco Database on a continual basis, to the extent that it

now contains over 4,000 entries. (*See, e.g.*, DX-600 ¶¶ 63-64; DX-371, line 1528 (reflecting

cancellation of "[i]nternet Shipper discovered through Google search").) Plaintiffs have

identified no suspected cigarette shipper that was not logged that should have been.

Plaintiffs do not dispute that UPS provided drivers with the required training (in the form

of PCMs) on an annual basis, or that the UPS sales team received PCMs and business

development memos. That is all the AOD required. (*See* ECF No. 492 COL, § I(C).) Plaintiffs'

complaint about training includes picayune points such as: the PCMs lasted only three minutes

(the AOD does not require otherwise, *see* ECF No. 492 ¶ 275); some UPS employees, when

quizzed on UPS policy at their depositions, were not able to recite the policy perfectly (but they all confirmed they knew that UPS policy prohibits the shipment of cigarettes to consumers, *id*. ¶ 276); and UPS did not prominently display a red flags poster (but the AOD does not require that; the poster was developed as an enhanced compliance measure in 2014, *id*. ¶ 61 & ¶ 273 n.15).

Plaintiffs also fault UPS for not timely obtaining tobacco agreements for a handful of shippers. Again, this is not a breach of the AOD. As plaintiffs acknowledge, the AOD only requires UPS to incorporate the tobacco policy into "contracts signed by shippers who ship Cigarettes." (DX-35 ¶ 2; ECF No. 491 at ¶ 37.) The AOD does not require tobacco agreements for shippers who ship tobacco products other than cigarettes.

Plaintiffs complain that at the time of the AOD, Mr. Fink closed accounts of known tobacco shippers, and permitted shippers to open new accounts, if they agreed not to ship cigarettes to consumers and signed a tobacco agreement. (ECF No. 491 ¶¶ 120-128, 1029-1030; *compare* ECF No. 492 ¶¶ 103-104.) Even if true, this conduct does not contradict any requirement of the AOD. The only provision plaintiffs identify is the one requiring UPS to notify shippers of its new tobacco policy (ECF No. 491 ¶ 120 (citing DX-23 ¶¶ 15, 17-18)), and UPS did so, including for the shippers whose accounts Mr. Fink managed. (Trial Tr. 207:13-208:24.)

Plaintiffs point to only three shippers that were supposedly allowed to reopen accounts improperly: (1) Indian Smokes; (2) Seneca Ojibwas (Shipping Services); and (3) Rock Bottom Tobacco (Elliot Enterprises). (ECF No. 491 ¶¶ 127, 844-45.) Yet Indian Smokes, Seneca Ojibwas, and Rock Bottom Tobacco were each entered into the Tobacco Database in 2005. (DX-371, lines 14, 1324, 472.) Seneca Ojibwas and Rock Bottom Tobacco signed Tobacco Agreements. (DX-371, lines 472, 1324.) Not one of these accounts violated the Tobacco Policy,

10

and not one was ever disciplined. Thus, each would have been permitted to reopen under the AOD. (DX-371, lines 14, 1324, 472; DX-23 ¶¶ 21-23.)

Plaintiffs also argue that "[n]one of the information" for "several accounts that were predecessors to the Elliot Enterprises group of shippers" "was integrated into any separate tobacco database." (ECF No. 491 ¶¶ 281-282.) That is false. Rock Bottom Tobacco, DeerPathCigs, and Smoke Cignals are all in the Tobacco Database. (DX-371, lines 472, 261, 411.) And there is no evidence Smoke Signals or Oldshield Smokes were active accounts in 2005 when the database was created. (ECF No. 491 ¶¶ 305, 311.) Thus, these accounts would not have been entered under the terms of the AOD. (DX-23 ¶¶ 21-23, 25.)

For these reasons, nothing Mr. Fink did or failed to do in 2005 constituted a breach of the AOD—even if some of Mr. Fink's conduct (such as his failure to obtain a primary contact for Elliot Enterprises or to secure a tobacco agreement from it) may not have been consistent with UPS policy. Nevertheless, to the extent plaintiffs are arguing that Mr. Fink embarked on an "unsanctioned [and] unmonitored" "account-sanitizing plan" with the "obvious purpose" of enabling him to open accounts for shippers that would violate UPS policy (ECF No. 491 ¶¶ 123, 1029, 1030), their allegations would defeat any claim against UPS. Were the Court to accept plaintiffs' characterization of Mr. Fink's conduct, then there would be no basis for finding liability against UPS as a company. Even the decisions plaintiffs cite concerning corporate knowledge demonstrate that employees must be working within the scope of their duties to bind their employer. (ECF No. 491 at ¶ 980.) That would not include any UPS employee who knowingly violated UPS policy, was not acting within the scope of his employment, and was not acting for the benefit of UPS. (ECF No. 492 at COL, § IV.) Plaintiffs' allegations would put Mr. Fink squarely within that category of employees whose actions do not bind their employer.

Moreover, if UPS were aware that one of its employees was engaging in conduct of the type plaintiffs attribute to Mr. Fink, UPS would take corrective action against the employee.

## II.     PLAINTIFFS FAILED TO PROVE THE MOST BASIC ELEMENTS OF THEIR CLAIMS—(1) THAT THE PACKAGES UPS TRANSPORTED CONTAINED CIGARETTES, AND (2) THAT UPS KNEW AS MUCH.

The State's contortions of the AOD are necessary because of a basic failure of proof. With the exception of a tiny fraction, plaintiffs failed to prove that the packages at issue contained cigarettes. Independently, for that tiny fraction of packages, plaintiffs failed to prove that UPS knew the packages contained cigarettes. Their failure to prove these two separate, essential elements of their claims (*see* ECF No. 492 ¶¶ 333-336) precludes liability. *See Ala. Legis. Black Caucus v. Alabama*, 135 S. Ct. 1257, 1276 (2015).

### A.     Plaintiffs Failed To Offer Any Evidence Of Package Contents For Virtually All Packages And Shippers.

As to the three alleged largest volume shippers in the case—Shipping Services, Elliot Enterprises, and EExpress—plaintiffs offered *no* evidence of package contents across the tens of thousands of packages for which they seek recovery.

**Shipping Services:** Plaintiffs offered no shipper documentation (such as invoices) and no testimony from any witness connected to Shipping Services' operations, including its alleged owners Donald and Teresa Dean. (Plaintiffs indicated they intended to depose the Deans, but then never did so.) Nor did plaintiffs offer testimony from any of the thousands of New York residents that received packages from Shipping Services, even though they had the name and address of every individual who received Shipping Services products shipped via UPS. Plaintiffs bore the burden of proving any violation of the AOD (and of any relevant statute), yet made a conscious choice not to seek out evidence that might support their claims. *See Pordy v. Land O' Lakes, Inc.*, No. 01-0579, 2001 WL 1478808, at *2 (S.D.N.Y. Nov. 20, 2001) (dismissing case

where plaintiffs "fail[ed] to adduce any material competent evidence—as opposed to surmise and conjecture"). This is not surprising: virtually all available evidence suggests that Shipping Services shipped little cigars and other tobacco products, not cigarettes. (DX-499 at Tab 1 for Account 03E04E, lines 2-30 (referencing dozens of "cigars" and "little cigars").) The fact that UPS ultimately terminated Shipping Services for the shipment of two packages of cigarettes (DX-244) does not provide proof of the contents of the tens of thousands of packages plaintiffs claim were shipped.

**Elliot Enterprises and EExpress:** Plaintiffs ask the Court to find that Elliot Enterprises shipped cigarettes because it was listed on the PACT Act List. But whatever relevance the List may have to this case (*cf.* ECF No. 492 FOF, § V(E)(1), COL, §§ I(E)(2), VI(A)), it is not admissible evidence of what was contained in Elliot Enterprises' packages. The Court granted plaintiffs permission to call Aaron Elliot as a witness at trial, presumably to explain the contents of the packages. (*See* ECF No. 393.) But they did not, nor did they subpoena records from him.

Instead, plaintiffs identified a purported survey expert to try to prove the percentage of EExpress packages that contained cigarettes. The Court properly excluded him because his "training and experience fall well short of the basic requirements set forth in *Daubert*" and he "rendered opinions that [were] demonstrably unreliable."  *State of New York v. United Parcel Serv., Inc.*, No. 15-1136, 2016 WL 4735368, at *8 (S.D.N.Y. Sept. 10, 2016). The purported expert opinion was based on a survey conducted by State employees of EExpress customers. *Id.* at *5. Plaintiffs never attempted to obtain admissible evidence from any of these individuals, nor from any of the other consignees they contend purchased cigarettes from Elliot or EExpress. The end result again is that plaintiffs have completely failed to carry their burden of proving the contents of packages.

13

**Indian Smokes and Bearclaw Unlimited:** UPS introduced evidence that it terminated service to each of these shippers in September 2012 as a result of the shipment of cigarettes to consumers in violation of UPS's Tobacco Policy. Plaintiffs made no effort to prove that either shipper shipped any significant number of additional packages of cigarettes via UPS. To the contrary, the evidence shows that Indian Smokes shipped cigars, while Bearclaw shipped scented candles and other retail products. (DX-499 Tab 1, lines 87-89 and lines 152, 159, 166, 178.)

**Native Wholesale Supply and Seneca Promotions:** Plaintiffs rely on DX-41 as supposed proof of cigarette shipments (ECF No. 491 ¶¶ 522-526), but DX-41 does not reflect any shipments via UPS. Instead, it relates to a warehousing arrangement between Native Wholesale Supply and UPS's affiliate UPS Supply Chain Solutions, Inc., primarily over cases of cigars. Plaintiffs rely on a purported *freight* shipment to an entity known as HCI Distribution in Nebraska, and they ask the Court to take judicial notice of a website indicating that HCI is a "cigarette and tobacco distributor." (ECF No. 491 at 96 n.8.) But even if judicial notice would ever have been appropriate to prove the truth of the matter asserted in that website (which it would not have been), it clearly is too late now, after the close of evidence. Plaintiffs also try to rely on "facts" purportedly contained in a judgment and filings in other cases, but those documents would not have been admissible at trial to prove the truth of any fact contained in them. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (documents in other cases may be noticed "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings").

**Other Shippers:** Plaintiffs failed to introduce any evidence of cigarette shipments as to many of the other remaining shippers, including AJ's, Native Outlet, Sweet Seneca Smokes, and RJESS. Indeed, despite the fact that audits by UPS identified no cigarettes whatsoever from these

shippers, plaintiffs assume that each shipped *only* cigarettes via UPS. Plaintiffs take the same position as to shippers where they introduced no evidence at all of package contents, including Native Wholesale and Seneca Promotions.

Following discovery and a trial, plaintiffs were able to introduce evidence of cigarette shipments by only four accounts, comprising a tiny fraction of the packages and shippers at issue in this case:

- **Smokes & Spirits:** Plaintiffs called Bergal Mitchel to authenticate PX-55, a series of invoices for the shipment of 3,437 packages. But PX-55 does not include invoices for the thousands of shipments of little cigars and other tobacco products made via UPS to New York addresses that were also proven at trial. (PX-54.)

- **Seneca Cigars:** Plaintiffs called Philip Christ in an attempt to authenticate and lay foundation for PX8, which purports to include packing slips for UPS shipments to New York residents. The packing slips are still not in evidence. (*See* ECF No. 490.) But even if they were, they would only account for 2,085 packages.

- **Jacobs Tobacco:** Plaintiffs called Rosalie Jacobs who authenticated certain shipping records that suggest, at most, the shipment of 203 packages containing cigarettes. (*See* PX-87; PX-90; PX-92; PX-93; PX-96; Trial Tr. 1657:17-19.)

- **Mohawk Spring Water:** Plaintiffs submitted no invoices for this shipper, but only testimony from Robert Oliver, an individual who was not even affiliated with the shipper. Mr. Oliver testified that Mohawk Spring Water also shipped spring water and hay samples via UPS. He could not provide any estimate at all as to the percentage of packages containing cigarettes. (Trial Tr. 1132:3-4, 1142:23-25, 1168:14-15.)

### B. Plaintiffs Cannot Rely On Tobacco Market Data As Circumstantial Evidence To Prove Package Contents.

Because plaintiffs failed to adduce any actual proof of package contents as to virtually all shipments for which they seek a monetary remedy, they contend that the Court can simply assume package contents based on data about the tobacco market. They are mistaken.

The nationwide market for cigarettes as opposed to other tobacco products cannot support any permissible inference about the contents of the packages UPS transported. Plaintiffs' argument that it can is just an effort to gloss over their textbook example of selection bias: they

are presuming that because the four shippers for which they have package contents evidence shipped cigarettes, the remainder of the shippers must have done so, as well. Yet they ignore the thousands of other tobacco shippers for which there is no evidence whatsoever of cigarette shipments. Market data cannot solve plaintiffs' selection bias, as the data is theoretical at best; it says nothing about the *actual* contents of the *actual* packages shipped by the *actual* shippers at issue. And it ignores that actual evidence with respect to the population of shippers at issue here: of 28 audits UPS conducted, 22 found no cigarettes at all. (ECF No. 492 ¶ 44.)

Plaintiffs' description of the market is wrong, in any event. Even taking plaintiffs' allegation of 683,000 cartons for the entire period (ECF No. 189 ¶ 35)—and there is no reliable basis for that number, as UPS has repeatedly shown—the packages at issue here could contain 100% little cigars and that still would be a miniscule portion of the overall cigar market. (Trial Tr. 1609:24-1610:2 (65 million cartons of cigars consumed in 2014).)

### C.     Plaintiffs Failed To Prove That UPS Knowingly Delivered Any Packages Containing Cigarettes To Consumers.

For the few shipments for which plaintiffs did offer any evidence of package contents, they failed to prove the other essential elements of their burden (ECF No. 492 COL, § II): that UPS knew the packages contained cigarettes (in the case of Arrowhawk shippers and Smokes & Spirits, *see id*. ¶¶ 179-225), or that UPS had a reasonable belief that the Potsdam Shippers were shipping to unauthorized consumers (*id*. ¶¶ 81-96). UPS never saw any of the invoices on which plaintiffs rely to prove the contents of these few packages. (*Id*. ¶ 353(f).)

Recognizing that they have failed to prove knowledge, plaintiffs try to read the AOD as lowering the burden of proof "to a negligence standard imposing strict liability based on UPS's *constructive* knowledge." (ECF No. 491 ¶ 1023 (emphasis by plaintiffs).) None of those competing standards appear anywhere in the AOD, nor would UPS have agreed to such a

16

standard, especially given that it believed N.Y. PHL § 1399-*ll* was preempted by federal law at the time (as a unanimous Supreme Court later confirmed). As UPS has explained (ECF No. 492 COL, § I(B)(1)), the AOD incorporates by reference § 1399-*ll*'s knowledge standard.

### III. UPS'S COMPLIANCE WITH THE AOD EXEMPTS UPS FROM CLAIMS UNDER THE PACT ACT AND N.Y. PHL § 1399-*ll*.

As UPS has explained, the PACT Act exempts UPS from any claims under the PACT Act itself or state laws such as PHL § 1399-*ll* based solely on UPS's recognition of its obligations under the AOD. (ECF No. 492 COL, § V.) But even under the Court's interpretation of the PACT Act exemption, plaintiffs' failure to prove (1) package contents for the vast majority of the shippers, and (2) that UPS knowingly accepted cigarettes for delivery to any consumers (including for the tiny fraction of packages for which plaintiffs did offer evidence of package contents) demonstrates that UPS is entitled to the exemption. (*Id*. COL, § I(A).) Plaintiffs failed to produce "evidence of a sufficiently large number of instances of shipments of contraband cigarettes that . . . suggests that UPS is, overall, turning a blind eye towards such unlawful shipments"—the standard the Court set. (ECF No. 206 at 45.)

### IV. PLAINTIFFS FAILED TO PROVE THAT ANY MONETARY RELIEF IS APPROPRIATE.

Even if plaintiffs could prove a breach of the AOD (or even a "violation," as defined in the AOD), and even if plaintiffs could prove a violation of the federal and state statutes they invoke, they are entitled to no monetary relief whatsoever. Their failure of proof culminated in the absence of any proof of damages whatsoever and any basis for awarding penalties.

#### A. Plaintiffs' Continued Shift In Damages And Penalties Theories Proves The Prejudice To UPS From Trial By Ambush.

In their post-trial brief, plaintiffs ambushed UPS yet again with another version of their damages and penalties claims, methodology calculations, and shipment numbers and weights in

the form of summary charts (ECF No. 491 ¶¶ 911, 913; ECF No. 491-1 App'x B) and an

"appendix" full of new demonstratives (ECF No. 491-1 App'x A). As set forth in UPS's October

25, 2016 objection (ECF No. 494), none of this new information can be admitted, relied upon, or

countenanced. Admission of or reliance on Appendices A and B and paragraphs 909 to 913

would be tantamount to setting aside the rules of evidence—including Rule 403 (*see* ECF

No. 492 ¶ 481), Rule 702 (*see id*. ¶¶ 498-501), Rule 801 (the Appendices are out of court

statements "not ma[de] while testifying at the current trial" that plaintiffs are offering to "prove

the truth of the matter asserted"), Rule 901 (*see* ECF No. 492 ¶ 502), and Rule 1006 (*see id*.

¶¶ 488-491)—and would violate due process. UPS had a right to "receive fair notice . . . of the

severity of the penalty that a State may impose," *State Farm Mut. Auto. Ins. Co. v. Campbell*,

538 U.S. 408, 417 (2003) (citation omitted), which includes "an opportunity to confront and

cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). (*See also* ECF

492 ¶¶ 491-493.)

     The Court's preliminary questions regarding plaintiffs' monetary claims (*see* ECF

No. 498 at 4-6) are virtually all issues that UPS could and would have raised with an expert

witness (or other sponsor) if plaintiffs had actually attempted to introduce their damages

methodologies into evidence. The adversarial process requires pre-trial discovery, advance

disclosure, and vigorous cross-examination to ensure that the factfinder—here, the Court—has

an *evidentiary* basis on which to make the required findings. Plaintiffs' unprecedented,

unorthodox, and unconstitutional approach in this case deprived UPS—and, ultimately, the

Court—of these time-tested methods of arriving at the truth. Plaintiffs continue to vigorously

defend their approach (*see* ECF No. 497), but they never answer the more fundamental question

*why* they saw fit to depart from the way that every other civil litigant proves damages and

penalties in federal court. The obvious reason is that plaintiffs knew they could not prove their case in the usual way. But that is all the more reason to insist on following the rules, not breaking them.

### B.     Plaintiffs Cannot Blame UPS For Their Failure Of Proof.

Plaintiffs, with all the power of the government behind them, are seeking nearly a billion dollars in damages and penalties, based on alleged violations of various federal and state laws, as well as the State's AOD with UPS. Their effort to shift to UPS the burden of proving the damages and penalties they seek (ECF No. 491 ¶ 1133) is a concession that they failed to meet their own burden. The law does not permit them to recover the extraordinary monetary award they seek without satisfying their own burden of proof.

Plaintiffs' citation to *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931), is misleading at best. *Story Parchment* involved an antitrust conspiracy in which the Court found that where "damages are definitely attributable to the wrong" but "the tort is itself of such a nature as to preclude the ascertainment of the amount of damages with certainty," then the tortfeasor bears the risk of uncertainty.  282 U.S. at 562-65. Here, plaintiffs failed to prove that they suffered damages attributable to UPS's conduct, and their inability to prove damages with any certainty is not due to UPS's alleged conduct but because plaintiffs failed to take any discovery or retain an expert to determine damages.

Moreover, UPS has not caused any uncertainty, either through its actions or through the supposedly "voluminous, arcane documents, which UPS alone has the expertise to untangle." (ECF No. 491 ¶ 1133.) Plaintiffs' characterization of UPS's documents as "voluminous" and "arcane" cuts against their refrain that calculating damages and penalties is "just arithmetic" (Trial Tr. 76:4). Plaintiffs had every opportunity to question UPS witnesses about these documents so that they could better understand them, both at deposition and at trial, and chose

not to do so. There is also no proof that UPS had knowledge of the contents of the packages at issue, or better knowledge than plaintiffs.

### C.     UPS's Diversion Argument Is Relevant And Unrebutted.

Plaintiffs also failed to rebut the testimony of Dr. Nevo, who established that even if plaintiffs could have shown that UPS delivered packages containing unstamped cigarettes to consumers, only between zero and 5.4% of consumers of the cigarettes at issue would have purchased New York-taxed cigarettes in a but-for world where UPS did not ship the alleged cigarettes at issue. (ECF No. 491 ¶ 1177; DX-613 ¶ 63.) Thus, any recovery of actual damages must be limited to between zero and 5.4% of the tax losses plaintiffs allege.

Plaintiffs have resorted instead to distorting UPS's diversion argument and the law. But this Court has already rejected plaintiffs' legal arguments concerning Dr. Nevo's testimony. In denying their motion to exclude Dr. Nevo, the Court recognized: "It is certainly clear that the use of but-for worlds is commonplace in assessing damages in many different scenarios." *State of New York v. United Parcel Service, Inc.*, 2016 WL 4735368, at *10. The Court ruled that the "plaintiffs are not entitled to recoup windfalls," and concluded that "if defendants prove that had the cigarettes been stamped, plaintiffs would nevertheless not have collected as much taxable revenue as they now seek, [] this is certainly relevant to any ultimate damages recovery." *Id.* at *10-11. (*See also* ECF No. 351 at 7-14.)

Plaintiffs' criticism of Dr. Nevo's analysis (ECF No. 491 ¶¶ 949-951) likewise fails. As he explained, he did not need to know additional details about the actual consumers because he already knew the most important factor to predicting their future purchases: their "revealed preference" not to buy fully taxed cigarettes but rather to search for untaxed or low-taxed cigarettes or other cheaper products. (DX-613 ¶¶ 49-56; Trial Tr. 1794:18-20.)

### D.   The Health Issues Associated With Smoking Do Not Subject UPS To Penalties.

No penalties should be awarded against UPS at all. (ECF No. 492 ¶¶ 537-556.) At the very least, the Court should reject plaintiffs' request for maximum penalties based on the health consequences of consumers' decisions to smoke cigarettes. (ECF No. 491 ¶¶ 1139, 1143.) UPS has never questioned plaintiffs' stated policy of curbing tobacco use. But UPS also did not cause the health issues that plaintiffs cite, as it neither manufactured nor sold the cigarettes at issue, did not buy the cigarettes or make the consumers' decision to smoke, and, in fact, UPS did not even know or have reason to believe it was shipping cigarettes. (*See* ECF No. 492 ¶¶ 270-271; DX-613 ¶¶ 11, 63.)

## V.   PLAINTIFFS FAILED TO PROVE THAT ANY INJUNCTIVE RELIEF IS APPROPRIATE.

Just as plaintiffs failed to prove that any monetary relief is appropriate, they failed to offer any reason why the costly and intrusive remedy of injunctive relief is appropriate. Plaintiffs cite a litany of purported facts to argue that UPS is likely to violate a legal requirement governing cigarette shipments in the future. (ECF No. 491 ¶¶ 1244, 1250.) UPS could pick apart these various assertions individually. But for present purposes, it suffices to note the complete absence of any evidence of any illegal cigarette shipments via UPS since at least 2014.

This dearth of evidence reflects the enormous efforts UPS has undertaken—above and beyond any conceivable requirement of the AOD—to prevent illegal shipments in New York, including from Native American reservations. (*See* DX-601 ¶¶ 14-17.) These efforts include (1) corporate pre-clearance of *any* new New York tobacco accounts, (2) monthly nationwide data queries designed to identify any new tobacco shippers not previously identified, (3) weekly investigation of all new accounts opened in a zip code that includes a Native American reservation in New York, (4) weekly volume monitoring of accounts in each of 13 designed

21

"high risk" zip codes to identify unusual activity, and (5) annual in-person training and audit visits by corporate representatives to every UPS center in the State of New York that provides service to Native American reservation addresses.  (*See id.* ¶¶ 14-17.)  Plaintiffs have offered no reason to conclude that these measures are ineffective; nor have they suggested any further action that UPS could reasonably take that would provide greater assurance of compliance.

UPS's enhanced compliance measures confirm that UPS well understands the importance of its obligations under the AOD, and it is committed to complying with them. The enhanced compliance measures also undermine any possible showing that there is any likelihood of ongoing violations—a separate requirement for plaintiffs to prove to obtain the injunctive relief they seek. *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1477 (2d Cir. 1996).

There are other legal obstacles to plaintiffs' request for injunctive relief, as well. Plaintiffs cannot secure injunctive relief for any violations of the AOD alone, or a special master to oversee such an injunction. Because injunctive relief is an extraordinary remedy normally unavailable for contract claims, it is preempted. *See, e.g.*, *Deerskin Trading Post, Inc. v. United Parcel Service of Am., Inc.*, 972 F. Supp. 665, 672 (N.D. Ga. 1997).

Nor can plaintiffs justify injunctive relief with respect to UPS's purported statutory violations. Plaintiffs emphasize the Second Circuit's holding that a "presumption of irreparable harm" applies when certain plaintiffs seek injunctive relief pursuant to a statute authorizing such relief. *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120-21 (2d Cir. 2010). But the Supreme Court has refused to read statutes authorizing injunctive relief to trump the inherent equitable principles governing such relief. *E.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A mere "*presumption* of irreparable harm" does not obviate the need to weigh the equitable considerations, including the balance of the hardships. *See S.E.C. v.*

*Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). Based on UPS's enhanced compliance measures, among other reasons detailed in UPS's post-trial brief, the balance of hardships weigh heavily against the imposition of any injunction here.

New York Executive Law § 63(12) does not excuse plaintiffs from their inability to demonstrate UPS's likelihood of future violations. The decisions plaintiffs cite for that proposition are based on the expedited state court procedure that § 63(12) authorizes. (ECF No. 491 ¶ 1245 & n.59.) That procedure is irrelevant here. Whatever state courts may do in cases brought pursuant to Executive Law § 63(12), the statute does not alter the test applicable in federal court.

Finally, at the very least, plaintiffs' request that this Court appoint a special master to monitor any injunctive relief must be denied. A special master cannot be appointed to monitor compliance with the AOD itself: like the issuance of an injunction for AOD violations, that would far exceed the narrow exception for "routine breach-of-contract claims" that are saved from federal preemption. *Wolens*, 513 U.S. at 232. Moreover, as UPS explained previously (ECF No. 492 at ¶¶ 462-464), special masters are reserved for exceptional cases involving complex remedial orders and a party's documented refusal to comply with such an order—circumstances that might justify "imposing the likely expenses on the parties." Fed. R. Civ. P. 53(a)(3). No remedial order should require anything close to this degree of oversight. Indeed, were the Court to impose the sort of injunction that might require a special master—if, for example, the special master was charged with designing the sort of "compliance" measures plaintiffs have now declared the AOD should have provided—it would contravene both the Constitution and the dictates of Rule 65(d) of the Federal Rules of Civil Procedure. As the Second Circuit has emphasized, "[s]erious constitutional questions arise" when a master is charged with both

interpreting and enforcing a broadly framed injunction. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011). Furthermore, such "sweeping delegations of power" violate Rule 65(d)'s requirement that injunctions be framed "so that those who must obey them will know what the court intends to forbid." *Id.* (citation omitted). If any injunction here imposes only the sort of simple and clear directives consistent with Second Circuit precedent, no special master is necessary: plaintiffs can cooperate with UPS to ensure that whatever compliance measures are required are satisfied, seeking the Court's involvement only in the unlikely circumstance that intervention is necessary.

## **CONCLUSION**

In short, plaintiffs' case was a complete failure of proof on liability and remedies. Judgment should be entered for UPS on all of plaintiffs' claims.

Dated: New York, New York
      October 31, 2016

By: _Carrie H. Cohen_

Paul T. Friedman (Admitted *Pro Hac Vice*)
Ruth N. Borenstein (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
PFriedman@mofo.com
RBorenstein@mofo.com

Carrie H. Cohen
Jamie A. Levitt
Mark David McPherson
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
CCohen@mofo.com
JLevitt@mofo.com
MMcPherson@mofo.com

Gregory B. Koltun (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
GKoltun@mofo.com

Deanne E. Maynard (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006-1888
Telephone: (202) 887-1500
DMaynard@mofo.com

*Attorneys for Defendant United Parcel Service, Inc.*

sf-3708067