UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                :

THE STATE OF NEW YORK and THE CITY   :
OF NEW YORK,                                   :
                                                 :
                       Plaintiffs,          :

                      -v-                     :           15-cv-1136 (KBF)
                                                   :
UNITED PARCEL SERVICE, INC.,          :       OPINION & ORDER
                                                   :
                       Defendant.       :
                                                   :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 25, 2017

KATHERINE B. FORREST, District Judge:

        This case was tried to the bench on September 19, 2016, through
September 29, 2016. Following the trial, on March 24, 2017, the Court issued a
preliminary Opinion & Order setting forth, inter alia, its findings of fact and
conclusions of law, and on May 25, 2017, the Court issued a Corrected Opinion &
Order (the "Liability Opinion"). (See ECF Nos. 526, 534.) The Court found
defendant United Parcel Service, Inc. ("UPS") liable on each claim asserted against
it. Plaintiffs New York State and New York City are entitled to compensatory
damages and penalties. The sole remaining question is the quantum to be awarded.

        The preliminary Opinion & Order ordered the parties to submit certain
information to the Court not later than April 7, 2017. (Id.) Having received
submissions from the parties, (see ECF Nos. 530, 531), the Court now sets forth its
determination of compensatory damages and penalties awarded, as discussed below,
and directs that final judgment be entered against defendant UPS.

In this case, significant penalties are appropriate given the public harm specifically sought to be addressed by the statutes at issue and given the egregious and prolonged nature of UPS's conduct. The Court is also troubled by UPS's consistent unwillingness to acknowledge its errors; UPS has persisted in claiming it did nothing wrong. While it is of course UPS's right to take this position, the Court appropriately considers this in determining what quantum of damages and penalties are appropriate.

Furthermore, in light of all the relevant facts, significant penalties are needed to deter future conduct. The Court finds that only significant penalties will have a sufficient impact such that the highest levels of executives at UPS will understand the cost of UPS's conduct and take effective action to prevent such conduct in the future. The Court is convinced that modest penalties would not make a sufficient corporate impact on UPS as a whole. Given what this case has demonstrated about UPS's size, complexity, and lack of willingness to change unless compelled to do so, a very significant award is necessary. Deterrence is a significant consideration here.

In making its damages and penalties determination, the Court is mindful of the constitutional principles requiring proportionality, as discussed in the Liability Opinion. The Court carefully considered whether, in the aggregate, the damages and penalties awarded are grossly disproportionate to remediation or deterrence under the Eighth Amendment. The Court concludes that the measure of damages

and penalties awarded is fair and appropriate and comports with all applicable constitutional requirements, as discussed below.

I.    INTRODUCTION

As detailed in the Liability Opinion, the Court has found that plaintiffs have proven UPS's liability under the Assurance of Discontinuance ("AOD") and each statutory scheme at issue with respect to eighteen entities;[1] have proven UPS's liability under the AOD only with respect to three entities;[2] and have not proven any liability with respect to one entity.[3]  The preliminary Opinion & Order thus directed the parties to submit specific information—information regarding the numbers of "Packages" and "Cartons," as defined by the Court and according to the Court's findings and rulings—before the Court issued a final order as to damages and penalties.  The parties were required to submit such information not later than April 7, 2017.

Plaintiffs filed their submission on April 7, 2017.  (See ECF No. 530.)  Per the Court's order, plaintiffs provided their view of the number of Packages and Cartons for each of plaintiffs' respective claims brought under the (1) AOD; (2) Prevent All

_____

[1] These entities are: Elliot Enterprises; EExpress; Bearclaw; AFIA; Shipping Services; Seneca Ojibwas; Morningstar Crafts & Gifts; Indian Smokes; Smokes & Spirits; Arrowhawk; Seneva Cigars; Hillview Cigars; Two Pine Enterprises; Mohawk Spring Water; Jacobs Tobacco Group; Action Race Parts; Native Wholesale Supply; and Seneca Promotions.

[2] These entities are: Native Outlet; A.J.'s Cigars; and RJESS.

[3] This entity is Sweet Seneca Smokes.

Cigarette Trafficking Act ("PACT Act"); (3) New York Public Health Law Section 1399-ll ("PHL § 1399-ll"); and (4) Contraband Cigarette Trafficking Act ("CCTA").

Plaintiffs explained that their reported numbers of Packages and Cartons were the result of applying the relevant dates, definitions, and findings provided by the Court.[4]  Plaintiffs further detailed—for each shipper as to which they had proven liability—the specific exhibits admitted during trial that plaintiffs used to identify the Packages and Cartons figures that they submitted to the Court.  (ECF No. 530 at 3-4.)

Defendant also filed its submission on April 7, 2017.  (See ECF No. 531.)  In sharp contrast to plaintiffs' submission, defendant's submission demonstrates a lack of cooperation and, frankly, odd abrasiveness.  In an apparent reaction to this Court's liability decision against it, defendant refused to include a majority of the information requested by the Court.  Specifically, defendant provided its Packages count with regards to only three entities: Smokes & Spirits; Seneca Cigars; and Jacobs Tobacco.  (Id.)  Thus, this Court deems defendant to have waived arguments relating to the calculations submitted by plaintiffs.

Defendant made clear why it chose to provide information with regards to these three entities only: Defendant explained that it did so not because it was

---

[4] Plaintiffs also explained that in instances where only billed weight information was provided, they subtracted one pound from the billed weight of each Package to reach a conservative approximation of the Package's actual weight.  (ECF No. 520 at 2.)  The Court finds that this methodology is reasonable and appropriate.  As the Court explained in its Liability Opinion, "Billed weight was typically a number rounded up from actual weight.  Based upon UPS records, rounding occurred when any increment of a package's weight was above a whole number."  (Liability Opinion at 47-48.)

incapable of providing the information for the other entities as ordered by the Court—and as plaintiffs did—but because, according to defendant, these three entities were the only entities "that could potentially be considered in assessing damages or penalties because they are the only ones for which plaintiffs introduced evidence of shipments that UPS had an opportunity to test at trial." (Id. at 1-2.) In other words, UPS intentionally chose to ignore the Court's order and instead chose to reargue a point the Court already decided, as set forth in the Liability Opinion.[5] Accordingly, because defendant failed to comply with the Court's order, the Court calculates its determination of damages and penalties using the uncontested numbers of Packages and Cartons supplied by plaintiffs where appropriate.[6] This Court finds such conduct consistent with UPS's lack of acceptance of responsibility for their actions at issue in this case, as discussed in the Liability Opinion, and such conduct further informs the Court's views on the need for a significant award to deter future conduct. In all events, the Court's determination of penalties and damages is set forth below.

---

[5] Defendant's further explained that UPS also objects to being ordered to provide information that potentially will be used against it in assessing damages and penalties . . . ." (ECF No. 531 at 1.)

[6] As the Court noted, defendant provided information for only three entities. Even with regards to these entities, however, defendant (unlike plaintiffs) did not provide any explanation of how it calculated the figures provided. Therefore, the Court considers the figures provided by plaintiffs— even regarding these three entities—to be uncontested.

II.    DISCUSSION

    A.    <u>Legal Principles</u>

In the Liability Opinion, the Court provided a detailed discussion of the relevant legal principles concerning damages and penalties. The Court will not repeat those principles in full here. Nevertheless, the Court reiterates a few important considerations.

In general, civil penalties are designed in some measure "to punish culpable individuals" and not "simply to extract compensation or restore the status quo." <u>Tull v. United States</u>, 481 U.S. 412, 422 (1987); <u>accord</u> <u>Johnson v. SEC</u>, 87 F.3d 484, 492 (D.C. Cir. 1996). Penalties are also designed to "deter future violations" and to "prevent[] [the conduct's] recurrence." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167, 185-86, 188 (2000).

Furthermore, there is an "enormous range of penalties available to the district court in the usual civil penalty case." <u>United States v. J.B. Williams Co., Inc.</u>, 498 F.2d 414, 439 (2d Cir. 1974); <u>see also</u> <u>id.</u> at 438 (noting that a district court may properly consider "a number of factors" in determining the size of a civil penalty, "including the good or bad faith of the defendants, the injury to the public, and the defendants' ability to pay."). In <u>Laidlaw</u>, the Supreme Court reiterated the basic principle that a district court has wide discretion to fashion appropriate relief. <u>See</u> 528 U.S. at 192. It further stated that when choosing an appropriate penalty, a court "should aim to ensure 'the framing of relief no broader than required by the precise facts.'" <u>Id.</u> at 193 (citing <u>Schlesinger v. Reservists Comm. to Stop the War</u>,

418 U.S. 208, 222 (1974)). The Second Circuit has articulated the factors a court should consider as follows: (1) the level of the defendant's culpability, (2) the public harm caused by the violations, (3) the defendant's profits from the violations, and (4) the defendant's ability to pay a fine. Advance Pharm., Inc. v. United States, 391 F.3d 377, 399 (2d Cir. 2004).[7]

In addition to the principles noted above, the Court is mindful of the Eighth Amendment's requirement of proportionality. Supreme Court precedent instructs courts, in determining whether a fine is proper or normal, to look to any legislative pronouncement on the issue and to consider the amount of the fine compared to the gravity of the offense, a deeply factual question. See United States v. Bajakajian, 524 U.S. 321, 334-38 (1998). The Court must examine whether, in the aggregate, the penalties become grossly disproportionate to remediation or deterrence under the Eighth Amendment. (Id.)

In this case, the facts before this Court indicate that significant penalties are appropriate. First, the facts demonstrate a high level of culpability by UPS. Numerous separate acts by numerous UPS employees allowed vast quantities of unstamped cigarette shipments to be delivered to unauthorized recipients in New York. The New York Executive Branch and legislature, along with Congress, had specifically attempted to prevent this with the AOD, the PACT Act (which should

---

[7] Courts also have recognized that it is appropriate to consider the actions of plaintiffs when assessing penalties. See City of New York v. Milhelm Attea & Bros., Inc., No. 06-cv-3620, 2012 WL 3579568, at *33 (E.D.N.Y. Aug. 17, 2012); United States v. White-Sun Cleaners Corp., No. 09-cv-2484, 2011 WL 1322266, at *9 (E.D.N.Y. Mar. 9, 2011).

have incented compliance with the AOD), the CCTA, and PHL § 1399-<u>ll</u>. UPS largely relied on its size and weak internal procedures to excuse blatantly culpable conduct. As the Court found in its Liability Opinion, there were many, many people within UPS who consciously avoided the truth, for years. Even so, the Court also recognizes that UPS has now—since this lawsuit was filed—regained its footing. UPS now approaches compliance with the AOD and the various statutory schemes with renewed vigor and additional processes and procedures.

The second factor is the public harm caused by the conduct. The state and federal legislatures have deemed transport of cigarettes to be a public health issue, and the effects of cigarette usage are well known. However, it is also the case that UPS is not the cigarette manufacturer or seller—it is a transporter. Thus, it bears a lower level of culpability for the impact on public health than other entities. In addition, it is unclear whether, in the absence of UPS's transport of cigarettes, the same public health effects would still be felt. The Court cannot speculate as to this. The Court focuses UPS's unlawful enablement of a public health impact that the political branches have proscribed and the costs of which New Yorkers must bear.

The third factor—defendant's profits from the violations—suggests a low amount of penalties. UPS has focused on its limited revenues and profits from its transport of the shipments at issue. But these are not the only relevant metrics. It is also the case that maintaining customers helps UPS's overall competitive position; if there are many UPS routes in an area, it is reasonable to infer that this assists the acquisition of business through network effects and economies of scale.

Finally, the Court weighs UPS's ability to pay a fine.  UPS is a large

company with significant assets.  Its financial statements are a matter of public

record.  Not only can it handle a hefty fine, only a hefty fine will impact such a large

entity sufficiently to capture the attention of the highest executives in the

company—executives who then, in a rational economic move, will cause changes in

practice and procedures to be strictly maintained.  A fine in line with only the

profits and revenues associated with the conduct at issue would not have this

deterrent impact.

B.  Measure of Aggregate Damages and Penalties Appropriately Awarded

In accordance with the legal principles described above and in the Liability

Opinion, the Court sets forth below its final determination as to the measure of

aggregate damages and penalties appropriately awarded to plaintiffs New York

State and New York City under the AOD and under each statutory scheme at issue.

First, however, the Court sets forth a few additional points that have guided its

analysis.

As they acknowledge, plaintiffs cannot receive double compensatory

damages.  Accordingly, the Court awards plaintiffs compensatory damages under

the CCTA—and not the PACT Act—because plaintiffs are entitled to a greater

amount of compensatory damages under the CCTA.  With regards to penalties,

plaintiff New York State is entitled to a stipulated amount of AOD penalties; the

Court's calculation of the AOD penalties awarded is therefore straightforward.

Importantly, and in contrast with the AOD, the penalties provided by the PACT Act and PHL § 1399-ll are the <u>maximum</u> penalties that the Court may award. In addition, while the CCTA provides for penalties, it does so in an unspecified amount. As discussed in further detail below, the Court has decided to award plaintiffs 50% of the maximum PACT Act penalties to which they are entitled and 50% of the PHL § 1399-ll penalties to which they are entitled. The Court also awards plaintiffs nominal CCTA penalties.

The Court has thought long and hard about what measure of penalties is appropriate. The statutes at issue all undeniably seek to address the public harms caused by cigarette use and seek to regulate the unlawful transport of cigarettes that contributes to those harms. As the Court explained in the Liability Opinion, while the statutes have similar purposes, they are not entirely duplicative and target somewhat different (even if partially overlapping) conduct.

For example, the PACT Act seeks to prohibit shipments to those sellers that the Government has identified as sellers who have not registered with the Attorney General or are otherwise not in compliance with the PACT Act (i.e., those sellers on the Pact Act Non-Compliant Lists ("NCLs")). In enacting PHL 1399-ll, the state legislature "declare[d] the shipment of cigarettes sold via the internet or by telephone or by mail order to residents of [New York] state to be a serious threat to public health, safety, and welfare, to the funding of health care . . . , and to the economy of the state." 2000 Sess. Laws of N.Y., Ch. 262 (S.8177) § 1. Thus, PHL § 1399-ll prohibits shipments of cigarettes to a broad group of "unauthorized"

recipients and places the responsibility on carriers to determine whether a recipient is authorized to receive cigarettes.  It is clearly not coextensive with the PACT Act.

Given the overlapping purposes of the statutes at issue—while also recognizing that they are different and independent statutory schemes—the Court has decided to award plaintiffs 50% of the maximum PACT Act penalties to which they are entitled; 50% of the PHL § 1399-ll penalties to which they are entitled; and nominal CCTA damages.  The Court believes that awarding penalties in these proportions gives effect to each statute while also ensuring that the award in this case is not greater than necessary to punish UPS and deter future conduct.  The Court emphasizes that it has the statutory authority and could have awarded plaintiffs the maximum amounts provided by the PACT Act and PHL § 1399-ll (as well as a greater than nominal amount under the CCTA); the Court has chosen not to award the maximum amounts given all of the facts and circumstances.

     1.    <u>AOD</u>

As explained in the Liability Opinion, plaintiff New York State is entitled to a stipulated penalty of $1,000 for each UPS violation of the AOD because UPS failed—as required by the AOD—to audit shipments where there was "a reasonable basis to believe" that shippers "may be tendering cigarettes for delivery to Individual Consumers."  (Liability Opinion at 120-144, 213.)  As the Court noted in the Liability Opinion, plaintiffs sought the imposition of AOD penalties on a "per package" basis.  (<u>Id.</u> at 207.)  Furthermore, the Court did find that violations of the AOD are measured by each instance in which a Package (as the Court has defined

11

that term) was tendered to UPS following the start date specified by the Court. (Id. at 213.)  The Court defined a Package as follows:

> To determine what Packages are counted with regard to each shipper, the Court instructed the parties to utilize UPS's delivery spreadsheets, which were admitted into evidence. (Id. at 207-09.)  These spreadsheets were to be sorted by account number, duplications were to be eliminated, and packages were to be summed. (Id.)  Furthermore, the Court instructed the parties to apply a few additional important qualifications.  First, letter-sized envelopes were to be excluded; second, packages weighing less than a pound were also to be excluded. (Id.)  Lastly, only packages tendered by a shipper (as opposed to those that were shipped "to" the shipper), were to be included. (Id.)

In its findings of fact in the Liability Opinion, the Court specified, as to each shipper for which the Court found AOD liability, the date not later than which there was a reasonable basis to believe that the shipper was tendering cigarettes.  The Court explained that this is the "start date" for the imposition of penalties. (Id. at 213.)  The Court also specified that UPS remained under an audit obligation until an audit occurred or UPS terminated the account, i.e., the end date for AOD penalties.[8]  Accordingly, the Court ordered the parties to "jointly confer on the number of such Packages based on the date ranges set forth in the Court's findings"

---

[8] The Court provided the applicable dates in the Liability Opinion.

and to submit such information to the Court not later than April 7, 2017. (Id. at 213, 219.)

In their April 7, 2017, submission plaintiffs complied with the Court's instructions. Specifically, plaintiffs submitted to the Court a tally of Packages for each shipper liable under the AOD and specified the applicable start date plaintiffs used to calculated the tally (and provided page citations to the Liability Opinion from which the start date was taken).[9] (ECF No. 530 at 5.) As the Court has already noted, defendant failed to comply with the Court's Liability Opinion and did not submit the relevant Packages information ordered by the Court.

Accordingly, based on the Court's findings and the number of Packages supplied to the Court, the Court hereby finds that plaintiff New York State is entitled to AOD penalties in the amount of $80,468,000. The Liability Opinion explained that penalties imposed under the AOD are not duplicative of other penalties. (Id. at 211.) **Therefore, the Court awards plaintiff New York State AOD penalties in the amount of $80,468,000**.

2.    PACT Act

As detailed in the Liability Opinion, plaintiffs New York State and New York City are entitled to compensatory damages for UPS's violations of the PACT Act, which UPS violated by knowingly shipping for entities identified on the NCLs. (Liability Opinion at 159-63; 190-93.) The Court explained that these compensatory

_____

[9] As previously noted, plaintiffs' April 7, 2017, submission also listed the account number and admitted-exhibit number from which plaintiffs compiled the data in their submission.

damages are measured by plaintiffs' lost tax revenue attributable to the number of packs/cartons of cigarettes delivered by UPS on behalf of those "Liability Shippers" identified on the PACT Act NCLs, using a 50% diversion rate—the Court found that 50% is a reasonable percentage of unstamped cigarette cartons consumers would have purchased. (Id. at 193.) The Court noted that during the relevant time period, the New York State tax rate was $4.35 per pack of cigarettes ($43.5 per carton) and the New York City tax rate was $1.5 per pack of cigarettes ($15 per carton). (Id. at 169.) In addition, the Liability Opinion laid out the Court's findings regarding the reasonable approximation of Packages that contained cigarettes for each shipper, where applicable.

The Court provided its definition of a Carton of cigarettes as follows: A carton of cigarettes weighs approximately one pound. (Id. at 212.) The Court instructed that the parties calculate the actual weight of a Package based on information evident from the face of the delivery spreadsheets under the column "actual weight."[10] (Id.) The Court explained that any Packages weighing less than a pound should not be included because, according to the Court's factual determinations, such Packages could not have included cigarettes.[11] (Id.)

---

[10] As the Court has already noted in this Opinion & Order, it accepts plaintiffs' proposal to use the "billed weight" minus one pound in each instance in which UPS did not produce an "actual weight" figure. This is also explained in the Court's Corrected Opinion & Order.

[11] The Court's original opinion contained an incorrect instruction to divide the total weight of all Packages by the total number of Packages. The Court has corrected this in its Corrected Opinion & Order. The figures that plaintiffs submitted to the Court in their April 7, 2017, submission were based on the correct formula.

The Liability Opinion specified the dates on which the applicable Liability Shippers appeared on the PACT Act NCLs as well as the dates on which UPS's PACT Act obligations began for each applicable shipper (i.e. the start date for UPS's PACT Act compensatory damages and penalties). (See id. at 160-63.) The Court further noted that UPS regained its PACT Act exemption on February 19, 2015 (i.e. the end date for any PACT Act compensatory damages or penalties). (Id. at 144.)

In accordance with the Court's findings and rulings (summarized above), the Court ordered the parties to submit the applicable numbers of Packages and Cartons of cigarettes. (Id. at 9, 192.)

In their April 7, 2017, submission, plaintiffs complied with the Court's instructions. Specifically, plaintiffs submitted to the Court a tally of Packages and Cartons of cigarettes (based on the percentages specified by the Court) for each shipper for which the Court found PACT Act liability attached. (ECF No. 530 at 6, 9.) Plaintiffs also specified the applicable start date from which they calculated their tally (based on the dates stated by the Court in the Liability Opinion).[12] As the Court has already noted, defendants failed to comply with the Court's order and did not submit the information ordered by the Court.

Based on the Court's findings and the number of Packages and Cartons supplied to the Court, the Court hereby finds that plaintiff New York State is entitled to PACT Act compensatory damages in the amount of $2,767,600.50 and

---

[12] As previously noted, plaintiffs' April 7, 2017, submission also listed the account number and admitted-exhibit number from which plaintiffs compiled the data in their submission.

plaintiff New York City is entitled to PACT Act compensatory damages in the amount of $546,937.50.

However, as discussed below, plaintiffs New York State and New York City are also entitled to compensatory damages under the CCTA. Plaintiffs acknowledge that they "cannot recover compensatory damages for the same shippers under both [the PACT Act and CCTA]." (ECF No. 530 at 3 n.2.) Based on the Court's findings and the number of Cartons submitted to the Court, plaintiffs are entitled to a greater amount of CCTA compensatory damages than PACT Act compensatory damages (the Court discusses CCTA compensatory damages below).

Therefore, in order to avoid double counting, the Court does not award plaintiffs compensatory damages under the PACT Act, because the Court awards plaintiffs compensatory damages under the CCTA, as described below.

Nevertheless, plaintiffs New York State and New York City are entitled to penalties under the PACT Act because the Court found that UPS violated the PACT Act by knowingly delivering packages from sellers identified on the NCLs, which UPS received. (Liability Opinion at 159-63.) As the Court explained in the Liability Opinion, penalties under the PACT Act are "not to exceed" $2,500 for the first violation and $5,000 per subsequent violation. (Id. at 214.) Violations are measured by each Package UPS delivered to a Liability Shipper that UPS knew was identified on the NCLs. (Id. at 159-163.) As the Court has stated, however, while the PACT Act allows for the imposition of penalties on a per-violation basis, penalties need not be assessed on such a basis.

16

Based on the Court's findings and the number of Packages supplied to the Court—as PACT Act penalties may be imposed on a per-violation basis, but need not be—the Court finds that plaintiff New York State is entitled to receive a <u>maximum</u> of $70,517,500 in PACT Act penalties and plaintiff New York City is entitled to receive a <u>maximum</u> of $86,182,500 in PACT Act penalties. Again, these amounts are maximums; the Court need not, and does not, award plaintiffs PACT Act penalties in these amounts.

Having considered the totality of the facts and circumstances in this case and all of the relevant legal principles concerning damages and penalties, as detailed in the Liability Opinion and in this Opinion & Order, the Court awards plaintiffs 50% of the maximum PACT Act penalties to which they are entitled. **Accordingly, the Court hereby awards plaintiff New York State $35,258,750 in PACT Act penalties and awards plaintiff New York City $43,091,250 in PACT Act penalties**. The Court finds that these amounts are fair and not greater than necessary.

      3.    <u>PHL § 1399-ll</u>

As explained in the Liability Opinion, plaintiffs New York State and New York City are entitled to penalties under PHL § 1399-<u>ll</u> because of UPS's knowing shipment of cigarettes in violation of that statute (as well as UPS's separate contractual obligation in the AOD to comply with PHL § 1399-<u>ll</u>). (Liability Opinion at 163-66.) As the Court detailed, penalties under PHL § 1399-<u>ll</u> are "not to exceed" the greater of $5,000 per violation or $100 per pack of cigarettes shipped. (<u>Id.</u> at

17

214.)  Violations are measured by each Package containing unstamped cigarettes that UPS knowingly shipped on behalf of the Liability Shippers.  (Id. at 163-66.)

The Liability Opinion provided the applicable definition of Packages and Cartons, as the Court has explained above in this Opinion & Order.  In addition, the Liability Opinion laid out the Court's findings regarding the reasonable approximation of Packages that contained cigarettes for each Liability Shipper.  The Liability Opinion explained that the start date for UPS's liability under PHL § 1399-ll was no earlier than September 18, 2011, (id. at 158); where a later start date applied for a particular shipper, the Court specified such date.  The Court also noted that UPS is not required to pay PHL § 1399-ll penalties to both New York State and New York City for the same violation.  (Id. at 206.)

Accordingly, the Court ordered the parties to submit, using the Court's definition of Packages and Cartons as well as the applicable date ranges, the number of Packages that fall within those parameters.  (Id. at 9, 214.)

In their April 7, 2017, submission, plaintiffs complied with the Court's instructions.  Specifically, plaintiffs submitted to the Court a tally of Packages and Cartons of cigarettes (based on the percentages specified by the Court) for each shipper to which the Court found PHL § 1399-ll liability attached.  (ECF No. 530 at 7, 10-11.)  Plaintiffs also specified the applicable start date from which they calculated the tally (as provided in the Liability Opinion).[13]  As the Court has

---

[13] As previously noted, plaintiffs' April 7, 2017, submission also listed the account number and admitted-exhibit number from which plaintiffs compiled the data in their submission.

already noted, defendants failed to comply with the Court's order and did not submit the relevant information ordered by the Court.

Based on the Court's findings and the number of Packages and Cartons of cigarettes supplied to the Court, the Court finds that plaintiff New York State is entitled to receive a <u>maximum</u> of $82,820,000 in PHL § 1399-<u>ll</u> penalties and plaintiff New York City is entitled to receive a <u>maximum</u> of $74,690,000 in PHL § 1399-<u>ll</u> penalties. Again, these amounts are maximums, as PHL § 1399-<u>ll</u> penalties are "not to exceed" these amounts. The Court need not, and does not, award plaintiffs PACT Act penalties in these amounts, as discussed below.

Having considered the totality of the facts and circumstances in this case and all of the relevant legal principles concerning damages and penalties, as detailed in the Liability Opinion and in this Opinion & Order, the Court awards plaintiffs 50% of the maximum PHL § 1399-<u>ll</u> penalties to which they are entitled. **Accordingly, the Court hereby awards plaintiff New York State $41,410,000 in PHL § 1399-<u>ll</u> penalties and awards plaintiff New York City $37,345,000 in PHL § 1399-<u>ll</u> penalties**. The Court finds that these amounts are fair and not greater than necessary.

    4.    <u>CCTA</u>

As explained in the Liability Opinion, plaintiffs New York State and New York City are entitled to compensatory damages for UPS's violations of the CCTA because UPS knowingly shipped "contraband cigarettes." (Liability Opinion at 166-72, 190-93.) These compensatory damages are measured by plaintiffs' lost tax

revenue attributable to the number of packs/cartons of cigarettes UPS knowingly shipped to the Liability Shippers, using a 50% diversion rate—the Court found that 50% is a reasonable percentage of unstamped cigarette cartons consumers would have purchased. (Id. at 193.) Above, the Court has already reiterated how it defined a Carton of cigarettes in the Liability Opinion.

The Liability Opinion specified the date ranges during which the Court found UPS knowingly shipping cigarettes on behalf of the Liability Shippers. In addition, as explained above, the Liability Opinion laid out the Court's findings regarding the reasonable approximation of Packages that contained cigarettes for each Liability Shipper. The Court further noted that during the relevant time period, the New York State tax rate was $4.35 per pack of cigarettes ($43.50 per carton) and the New York City tax rate was $1.50 per pack of cigarettes ($15 per carton). (Id. at 169.)

Accordingly, the Court ordered that the parties submit to the Court the applicable numbers of Packages and Cartons of cigarettes in accordance with the findings and timeframes provided by the Court. (Id. at 9, 192.)

In their April 7, 2017, submission plaintiffs complied with the Court's instructions. Specifically, plaintiffs submitted to the Court a tally of Packages and Cartons of cigarettes (based on the percentages specified by the Court) for each shipper for which the Court found CCTA liability attached. (ECF No. 530 at 7-8, 11-12.) Plaintiffs also specified the applicable start date from which they calculated

their tally (using the dates provided by the Court in the Liability Opinion).[14]  As the Court has already noted, defendants failed to comply with the Court's order and did not submit the relevant information ordered by the Court.

Based on the Court's findings and the number of Cartons submitted to the Court, the Court finds that plaintiff New York State is entitled to receive CCTA compensatory damages in the amount of $8,679,729, and plaintiff New York City is entitled to receive CCTA compensatory damages in the amount of $720,885.

Accordingly, and because the Court does not award plaintiffs PACT Act compensatory damages (as noted above), **the Court hereby awards plaintiff New York State $8,679,729 in CCTA compensatory damages and awards plaintiff New York City $720,885 in CCTA compensatory damages.**

As explained in the Liability Opinion, plaintiffs New York State and New York City are also entitled to penalties under the CCTA.  (Liability Opinion at 166-72, 214-16.)  Penalties are mandatory under the statute, as violators "shall be fined," and are to be imposed for UPS's shipment of "contraband cigarettes."  (Id. at 166-72, 214-16.)  The Court explained in the Liability Opinion, however, that the CCTA does not define the amount of any such fines.[15]  (Id. at 215.)

The Court further explained that there does not seem to be any particular advantage to assessing a CCTA penalty based on a "per Package metric."  (Id.)  The

---

[14] As previously noted, plaintiffs' April 7, 2017, submission also listed the account number and admitted-exhibit number from which plaintiffs compiled the data in their submission.

[15] The Liability Opinion nonetheless provided the applicable definitions of Packages and Cartons, as well as the applicable date ranges, as noted above regarding CCTA compensatory damages.

Court noted that the number of Packages plays a role in the assessment of any penalties, but in connection with the CCTA, the Court considers both the mandatory requirement that some penalty be imposed, as well as the purpose of an additional penalty.  (Id. at 215-16)  The Court stated that when the parties submitted the requested information concerning the number of Packages and Cartons at issue under the AOD and various statutes, the Court would be able to assess the appropriate amount of a separate fine, if any, for UPS's violations of the CCTA.  (Id. at 216.)

Again, in their April 7, 2017, submission, plaintiffs submitted to the Court information that the Court could potentially use in its calculation of any CCTA penalties, i.e., the number of Packages and Cartons of cigarettes shipped by UPS during the timeframes specified by the Court.  Again, defendant did not submit any such information to the Court.

Having considered the totality of the facts and circumstances in this case and all of the relevant legal principles concerning damages and penalties, as detailed in the Liability Opinion and in this Opinion & Order, **the Court awards plaintiffs New York State and New York City $1,000 each in nominal penalties under the CCTA**.  The Court explained in the Liability Opinion that "[t]he CCTA more or less seeks to punish the same conduct, for the same reasons, as the other statutes." (Id. at 216.)  The Court determines that, given the measure of damages and penalties awarded under the AOD and other statutes at issue, further penalties under the CCTA would not serve a sufficient purpose (such as further deterrence).

III.    CONCLUSION

The Court has set forth its determination of damages and penalties above.  In total, plaintiff New York State is awarded **$165,817,479** and plaintiff New York City is awarded **$81,158,135**.[16]  The Clerk of Court is directed to enter final judgment against defendant UPS.

SO ORDERED.

Dated:      New York, New York
            May 25, 2017

_____
KATHERINE B. FORREST
United States District Judge

---

[16] The Court notes that these amounts combined are less than three times the amount that plaintiffs disclosed on March 3, 2017—well before trial—that they were seeking with regards to the "Arrowhawk Group" of shippers alone.  (See ECF No. 534 at 186-87.)